# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

CHRISTOPHER BERARDI,                     )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )          **Civil Action No. 05-2269 (JR)**
                                         )
UNITED STATES DEPARTMENT                 )
OF THE AIR FORCE                         )
                                         )
            Defendant.                   )
_____)

## DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

Defendant United States Department of the Air Force, by and through undersigned

counsel, respectfully move this Court to dismiss all claims in this case for mootness and failure

to state a claim on which relief may be granted.  Fed. R. Civ. P. 12(b)(1), 12(b)(6).  Alternatively,

defendant moves for summary judgment because there are no material issues of fact and

defendant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The grounds for this

motion is set forth in the accompanying memorandum in support.

A statement of material facts not genuinely in dispute and draft order are also filed

herewith.

Dated: February 22, 2006.

                              Respectfully submitted,

                              _____
                              KENNETH L. WAINSTEIN, D.C. BAR # 451058
                              United States Attorney

                              _____
                              R. CRAIG LAWRENCE, D.C. BAR # 171538
                              Assistant United States Attorney

_____
KAREN L. MELNIK, D.C. BAR # 436451
Assistant United States Attorney
555 4TH Street, N.W. - Room E4112
Washington, D.C.  20530
(202) 307-0338

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CHRISTOPHER W. BERARDI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-2269 (JR)** |
| | ) | |
| **UNTIED STATES DEPARTMENT** | ) | |
| **OF THE AIR FORCE** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

In this case, plaintiff is seeking the production of certain records pursuant to the Freedom of Information Act ("FOIA") relating to his disenrollment from the United States Air Force Academy ("Academy"). In addition, plaintiff requests declaratory relief pursuant to the Administrative Procedure Act ("APA") to enjoin the Air Force from withholding the requested records. Finally, plaintiff seeks damages pursuant to the Privacy Act based on the wrongful maintenance of his records, which allegedly resulted in lost pay and other expenses because of his disenrolllment.

Plaintiff's FOIA claims should be dismissed as moot because the United States Air Force provided plaintiff with all of the requested records on February 19, 2006. See Declaration of John Pellett ("Pellett Decl.") at ¶ 7.[1]   To the extent plaintiff challenges the adequacy of the search for documents, the defendant moves for summary judgement. The attached declarations document the extensive efforts of the Air Force involved to locate responsive documents for

---

[1] The only withholding from the records consists of social security numbers and birthdays of third parties, pursuant to Exemption 6. See Pellett Decl. at ¶ 7.

plaintiff--resulting in 556 pages of released materials. Accordingly, no genuine issue of material fact remains regarding the reasonable adequacy of the agency search and all responsive documents have been released; therefore, defendants are entitled to summary judgment as a matter of law. Plaintiff's APA claims should likewise be dismissed as the APA cannot be used to advance his FOIA claims.

Lastly, plaintiff argues, pursuant to the Privacy Act, that the Air Force's reliance on inaccurate records was the proximate cause of the Air Force's decision to disenroll him. See Complaint at ¶ 119. This assertion is without basis in fact. While the Air Force Board for Correction of Military Records ("AFBCMR") (herein after "the Board") concluded that there were "too many instances of errant or poorly justified *actions* in the overall disenrollment process," there is no evidence that inaccurately maintained records was the proximate cause of his disenrollment. See AFBCMR Decision (attached hereto as Exhibit 2) at 10.

In addition, plaintiff makes two erroneous assumptions with respect to his Privacy Act claims: (1) that had he not been disenrolled, he would have graduated "on time," and (2) that upon graduation he would be automatically appointed as a second lieutenant. Plaintiff can only speculate whether he would have completed all of his classes successfully. But, more importantly, Presidential Appointments are not automatic. Rather, they are controlled by the Appointments Clause of the United States Constitution which requires appointment by the President and confirmation by the Senate. Therefore, plaintiff cannot claim "lost pay" because he was never entitled to an appointment on an earlier date.

2

# I. FACTAUL BACKGROUND

Plaintiff enrolled in Academy in the fall of 2000.  See Complaint at ¶ 9.  "While serving his junior year at the Academy, the [plaintiff] was recommended for disenrollment by a Military Review Committee ("MRC") after receiving a current deficient Military Performance Average ("MPA"), receiving excessive demerits, and failing conduct and aptitude probation."  See Exhibit 2 at 3.  After a review of the case, including submissions by plaintiff, "the Academy Superintendent ("SUPT") forwarded the [plaintiff's] case to the Academy Board."  See id.  On March 14, 2003, the Academy SUPT "considered the facts and circumstances presented to the Academy Board regarding the recommendation for disenrollment of the [plaintiff] and placed him on involuntary excess leave pending the decision of the Secretary of the Air Force ("SECAF")."[2]  Plaintiff "appealed the decision of disenrollment and filed a formal IG complaint alleging mishandling of his case."[3]  See Exhibit 2 at 4.  Upon review, the IG "recommended that the Academy SUPT review the [plaintiff's] case one more time to consider reversal before sending the case to the SECAF."  See id.

On June 3, 2003, "the Academy SUPT recommended to the SECAF that the [plaintiff] be separated from cadet status and transferred to active duty for two years."  See id.  Plaintiff "disagreed with the recommendation and submitted additional matters for consideration by the

---

[2]  "Sometime after the Academy Board the SUPT was made aware of comments made by the [plaintiff's] Training Group Commander, which the [plaintiff] believed to have influenced the outcome of his case.  The SUPT stated that he would not have altered his decision to disenroll the [plaintiff] on that point alone."  See Exhibit 2 at 3-4.

[3]  One of plaintiff's contentions throughout the administrative process was that "he was assessed a total of 40 points (demerits) for an offense (losing one's ID card) that normally results in a total of 15 to 20 points."  See Exhibit 2 at 1.  Moreover, "the 40 points he was assessed were, allegedly, based on a new policy after 9-11, a policy that is not documented anywhere."  See id.

SECAF." See id.  On June 19, 2003, the Secretary of the Air Force Personnel Council

("SAFPC") reviewed the [plaintiff's] case and recommended that the [plaintiff] be disenrolled

and ordered to active duty in an enlisted status for a period of two years." See id.  On June 25,

2003, the SECAF approved the recommendation.

     On June 24, 2004, after receiving multiple submissions by both the plaintiff and the Air

Force,[4] the Board concluded that "while there may have been sufficient basis for the [plaintiff's]

disenrollment, the findings noted in the USAFA IG investigation call into question many of the

actions taken regarding with [plaintiff's] disenrollment." See Exhibit 2 at 10.  The Board stated

that it was "concerned that the [plaintiff's] attitude, and subsequent chain of events may have

been influenced by what appears to be an unfair assessment of demerits for the loss of his ID

card." See id.  The Board further noted "that the IG could not substantiate the existence of a

formal policy requiring such a large assessment of demerits," and that "punishment for this

particular offense was not meted out with any degree of consistency among the cadets." See id.

The Board further found that "there are too many instances of errant or poorly justified actions in

the overall disenrollment process, giving the *appearance* of injustice." See id. (emphasis added).

In light of the foregoing, the Board believed there was a "sufficient basis to give the [plaintiff]

the benefit of the doubt regarding the propriety of his disenrollment and to provide him an

opportunity to complete his training at the USAFA." See id.

     The Board recommended that pertinent military records of the Department of the Air

Force relating to plaintiff be corrected to show that (1) he was not disenrolled from the USAFA

---

[4]  The Air Force acknowledged that plaintiff's MRC package contained errors.  See
Exhibit 2 at 5.  "However, while regrettable, they were merely mistakes and not an effort to
ensure his disenrollment." See id.

on June 2, 2003, but was placed in an excess leave status; (2) documentation relating to the loss

of his ID card, conduct probation and disenrollment be declared void and removed from his

records;[5] and (3) effective July 14, 2004, plaintiff was re-enrolled in the USAFA as a cadet. See

Exhibit 2 at 11.[6]

     In connection with the administrative process outlined above, plaintiff made multiple

FOIA requests via email to the Academy on the following dates: January 18, 2004; February 27,

2004; January 25, 2005; June 27, 2005; July 6, 2005; and October 17, 2005. See Complaint at ¶¶

35, 15, 70, 56, 85, and 96 respectively. At the time plaintiff filed his Complaint in this case,

three administrative FOIA appeals, dated May 25 and May 26, 2004 and July 22, 2005, were

pending. See Pellett Decl. at ¶ 2. On February 10, 2006, the Air Force appellate authority acted

on the three appeals. See id.

     The appellate authority denied the May 25, 2004 appeal, which contested the adequacy of

the search for records responsive to plaintiff's February 27 and April 8, 2004 requests for "any

and all information in the possession of the [Air Force Academy] Superintendent's office

pertaining to [plaintiff's] case." See Pellett Decl. at ¶ 3. The appeal was denied because the files

likely to contain responsive records were searched and none were found. See id, and Declaration

of Wayne H. Kellenbence ("Kellenbence Decl.") (attached hereto as Exhibit 3) at ¶ 9.

     The appellate authority granted the May 26, 2004 appeal in full. The appellate authority

---

[5] Documentation relating to the remaining underlying disciplinary infractions remain in
plaintiff's cadet records in accordance with the governing instructions. See Exhibit 2 at 11.

[6] Plaintiff graduated from the Academy and subsequently was commissioned as a second
lieutenant in the Air Force on December 21, 2005. He is currently assigned to Goodfellow Air
Force Base, Texas. See Pellet Decl. at ¶ 8.

made a discretionary release of the two pages that had been withheld by the Initial Denial

Authority ("IDA") at Academy.  See Pellett Decl. at ¶ 4.

The appellate authority granted the July 22, 2005 appeal in part, releasing the records that

had been withheld by the Academy IDA.  The appellate authority released the records pursuant to

the Privacy Act, as they were from a System of Records and were retrieved using plaintiff's

name.  See Pellett Decl. at ¶ 5.  The records contained information that did not pertain to

plaintiff, specifically, the Social Security Numbers and birth dates of other individuals.  See id.

The appellate authority withheld this information pursuant to FOIA Exemption 6, so that there

would not be a clearly unwarranted invasion of the other individuals' privacy.  See id.

Officials at the Academy initially misunderstood plaintiff's FOIA request dated June 27,

2005 to be an appeal, and forwarded it to the Air Force General Litigation Division for action by

the appellate authority.  See Declaration of Thomas G. Philipkosky ("Philipkosky Decl.")

(attached hereto as Exhibit 4) at ¶ 5 and Pellett Decl. at ¶ 6.  After plaintiff wrote to the General

Litigation Division and explained that the June 27 communication was a new request and not an

appeal, the General Litigation Division closed the appeal file, returned the request to the

Academy for processing, and advised plaintiff of these actions.  See Pellett Decl. at ¶ 6.

On September 20, 2005, the Academy IDA acted on plaintiff's June 27, 2005 FOIA

request.  This request is described in plaintiff's third claim for relief in the Complaint.  In his June

27 request, plaintiff sought the documentation supporting a comment in a document released to

him with the June 13, 2005 response to his FOIA request dated January 25, 2005.  The comment

referred to three alcohol incidents in which plaintiff had been involved.  Asserting that he knew

of only one such incident, at the 2002 Notre Dame-Air Force football game, plaintiff asked for

the documents relating to the other two incidents.  In the September 20 response, the Academy
IDA advised plaintiff that all records that related to alcohol incidents already had been provided
to him with the June 13 response to his FOIA request dated January 25, 2005.  See Exhibit 4
(Philipkosky Decl.) at ¶¶ 5 and 6.

On January 20, 2006, the Academy IDA acted on two of plaintiff's FOIA requests dated
July 6 and October 17, 2005.  These requests are those described, respectively, in the allegations
of the fifth and sixth claims for relief in the Complaint.  After conferring with officials at the
Academy, Mr. Pellett forwarded to plaintiff's attorney, as a discretionary release, on February 19,
2006, 556 pages of the material that had been withheld pursuant to FOIA Exemption 5.  Mr.
Pellett redacted the Social Security Numbers and birth dates of other individuals from the copies
so that there would not be a clearly unwarranted invasion of the other individuals' privacy.  See
Pellett Decl. at ¶ 7.

## II.  LEGAL STANDARDS

### A.    <u>Motion to Dismiss.</u>

Defendant moves for dismissal under Rule 12(b)(1), as the Court now lacks jurisdiction
over the subject matter, and Rule 12(b)(6), as the plaintiffs fails to state a claim upon which relief
can be granted.  "In reviewing a motion to dismiss for lack of subject-matter jurisdiction under
Federal Rule of Civil Procedure 12(b)(1), the court must accept the complaint's well-pled factual
allegations as true and draw all reasonable inferences in the plaintiff's favor."  Thompson v.
Capitol Police Board, 120 F. Supp.2d 78, 81 (D.D.C. 2000) (citations omitted); see also Vanover
v. Hantman, 77 F. Supp.2d 91, 98 (D.D.C. 1999); aff'd , 38 Fed. Appx. 4 (D.C. Cir. 2002).  "The
court is not required, however, to accept inferences unsupported by the facts alleged or legal

7

conclusions that are cast as factual allegations." Rann v. Chao, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C. Cir. 2003), cert. denied, 125 S. Ct. 35 (2004).  In addition, "[on] a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence." Thompson, 120 F. Supp.2d at 81; Vanover, 77 F. Supp.2d at 98.

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in either of two ways.  First, the court may determine the motion based solely on the complaint.  Herbert, 974 F.2d at 197.  Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  See id.; Rann, 154 F. Supp. at 64.

Under Federal  Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if the "Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).  The Court must resolve all factual doubts in favor of the Plaintiff and allow the Plaintiff the benefit of all inferences.  See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

In reviewing a motion to dismiss, the Complaint's factual allegations must be presumed true and all reasonable inferences drawn in Plaintiff's favor.  Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  While plaintiff is entitled to all favorable inferences that can be drawn from those allegations, Warth v. Seldin, 422 U.S. 490, 501 (1975), the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint.  Kowal, 16 F.3d at 1276.  Further, while the court must accept plaintiff's

allegations of fact as true, the court is not required to accept as correct the conclusions plaintiff would draw from such facts. <u>Taylor v. Federal Deposit Insurance Corp.</u>, 132 F.3d 753, 762 (D.C. Cir. 1997); <u>National Treasury Employees Union v. United States</u>, 101 F.3d 1423, 1430 (D.C. Cir. 1996). Nor must a Court "accept legal conclusions cast in the form of factual allegations." <u>Kowal</u>, 16 F.3d at 1276; *see also* <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

### B.    <u>Summary Judgment</u>

In 1986, the Supreme Court issued three opinions that clarified the standards governing consideration of motions for summary judgment under Fed. R. Civ. P. 56. <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex</u> at 322; <u>Diamond v. Atwood</u>, 43 F.3d 1538, 1540 (D.C. Cir. 1995); <u>Molerio v. FBI</u>, 749 F.2d 815, 823 (D.C. Cir. 1984). Where no genuine dispute exists as to any material fact, summary judgment is required. <u>Anderson</u>, 477 U.S. 242 (1986).

A genuine issue of material fact is one that could change the outcome of the litigation. <u>Id</u>. at 247. The party moving for summary judgment need not prove the absence of an essential element of the nonmoving party's case. <u>Celotex</u>, at 325. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the (Court) – that there is an absence of evidence to support the non-moving party's case." <u>Id</u>. Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must proffer specific facts showing that a

genuine issue exists for trial.  Matsushita, 475 U.S. at 586.  Fed. R. Civ. P. 56 requires the party

opposing summary judgment go beyond the pleadings, and by affidavits, depositions, answers to

interrogatories or admissions set forth "specific facts showing that there is a genuine issue for

trial."  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Banks v. C & P Tel. Co., 802 F.2d 1416

(D.C. Cir. 1986).  To avoid summary judgment, the Plaintiff must state specific facts or present

some objective evidence that would enable the court to find an entitlement to relief.

In an opinion issued the same day as Celotex, the Supreme Court explained the

circumstances where summary judgment is appropriate: "if the evidence is merely colorable . . .

or is not sufficiently probative . . . summary judgment may be granted . . . (T)he mere existence

of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.

Unsupported speculation is not enough to defeat a summary judgment motion; the existence of

specific material evidentiary facts must be shown.  Fed. R. Civ. P. 56(e) (the nonmoving party

may not rest on mere allegations but "must come forward with 'specific facts showing there is a

genuine issue for trial.").  See also Hayes v. Shalala, 902 F.Supp. 259, 263 (D.D.C. 1995)

(opposition to summary judgment must consist of more than mere unsupported allegations or

denials); Johnson v. Digital Equip. Corp., 836 F.Supp. 14, 18 (D.D.C. 1993) (evidence that is

merely colorable or not sufficiently probative is insufficient to defeat summary judgment); Baton

v. Powell, 912 F.Supp. 565, 578 (D.D.C. 1996), aff'd, 203 F.3d 51 (D.C. Cir. 1999).

The mere existence of some factual dispute will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no genuine issue of

material fact.  See Anderson, 477 U.S. at 247-248.  Perhaps most significantly, the Court

authorized weighing the evidence at the summary judgment stage of litigation, stating that the "purpose of summary judgment is to 'pierce the pleadings, and to assess the proof in order to see whether there is a need for a trial.'" Id. (citation omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. at 249-250 (citations omitted). If the evidence is "merely colorable, or is not significantly probative," or the record taken as a whole could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." Id.; Matsushita, 475 U.S. at 587.

Thus, the non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," (Matsushita at 586), or with "conclusory allegations . . . unsubstantiated assertions, . . . or a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Importantly for this case, "[b]y pointing out the absence of evidence to support the nonmoving party's case, the moving party can demonstrate that there is no genuine issue as to any material fact, therefore entitling it to summary judgment." Shelborne v. Runyon, 1997 WL 527352 at **3, citing Celotex, 477 U.S. at 325.

In Celotex, the Supreme Court further instructed that the "(s)ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1). A court should grant summary judgment if the moving party submits affirmative evidence that negates an essential element of the nonmoving party's claims or by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. Celotex, 477 U.S. at 331.

11

## III.  ARGUMENT

**A.    Plaintiff's FOIA Claims Should Be Dismissed As Moot Because He Has Received All Requested Records**

Under Article III, section 2 of the Constitution, federal courts only have jurisdiction to hear and decide actual "cases" or "controversies." Allen v. Wright, 468 U.S. 737, 750 (1984); see National Black Police Association v. District of Columbia, 108 F.3d 346, 349 (D.C. Cir. 1997). This requirement prevents the issuance of advisory opinions, as it demands the existence of an actual dispute between adverse parties with a stake in the outcome.  See Richardson v. Ramirez, 418 U.S. 24, 36 (1974); see also City of Erie v. Pap's A.M., 529 U.S. 277, 305-06 (2000) (Scalia, J. concurring).  In fact, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases and controversies." Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 37 (1976) (citing Flast v. Cohen, 392 U.S. 83, 95 (1968)).

The case-or-controversy requirement subsists "through all stages of federal judicial proceedings." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990).  The effect of post-complaint changes in the facts or law on the continued existence of a particular controversy are assessed through the lens of mootness.  See Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22 (1997) (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980)).

As the Supreme Court has stated, "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)); National Black

12

Police Association, 108 F.3d at 349.  This inability of the federal judiciary "'to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" DeFunis, 416 U.S. at 316 (quoting Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3 (1964)); see also City of Houston v. Department of Housing and Urban Development, 24 F.3d 1421, 1426 (D.C. Cir. 1994) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies") (quoting Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983)).

"Article III, Section 2 of the Constitution permits federal courts to adjudicate only 'actual, ongoing controversies.'  If events outrun the controversy such that the court can grant no meaningful relief, the case should be dismissed as moot." McBryde v. Committee to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the United States, 264 F.3d 52, 55 (D.C. Cir. 2001) (citations omitted); see also Pharmachemie B.V. v. Barr Laboratories, Inc., 276 F.3d 627, 631 (D.C. Cir. 2002); Fraternal Order of Police v. Rubin, 134 F. Supp.2d 39, 41 (D.D.C. 2001) (further noting that no justiciable controversy is presented when the question to be adjudicated as been mooted by subsequent developments).  In other words, the controversy must exist at the outset of the litigation and continue throughout the existence of the suit.  See Columbian Rope Company v. West, 142 F.3d 1313, 1316 (D.C. Cir. 1998) (citing Arizonans for Official English, 520 U.S. 43).  As this Circuit has explained:

> [E]ven where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal Court to refrain from deciding it if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."

Columbian Rope, 142 F.3d at 1316 (quoting Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)).  See also Westmoreland v. National Transportation Safety Board, 833 F.2d 1461, 1462 (11th Cir. 1987) ("When effective relief cannot be granted because of later events, the appeal must be dismissed as moot.")  (citing Murphy v. Hunt, 455 U.S. 478, 481 (1982)).[7]

In this case, the Court lacks subject matter jurisdiction because events subsequent to the filing of the complaint have provided plaintiff  with his requested relief and ended any live controversy between the parties.  The complaint sought for this Court to order defendant to produce certain records pursuant to the FOIA and the APA.  On February 19, 2006, the defendant provided plaintiff with those records.  See Pellett Decl. at ¶ 7.  Plaintiff has, therefore, received the relief sought through the complaint, and there is no longer any judicial function for the Court to play.

In cases brought under the FOIA, once all documents have been released to the requester, the cases are properly dismissed on mootness grounds as there is no further judicial function for the Court to perform.  See Crooker v. United States State Department, 628 F.2d 9, 10 (D.C. Cir. 1980) ("[o]nce the records are produced [in a FOIA case] the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made"); see also Tijerina v. Walters, 821 F.2d 789, 799 (D.C. Cir. 1987);  Trueblood v. Dep't of Treasury, 943 F. Supp. 64, 67 (D.D.C. 1996).  Similarly, an appeal from enforcement of a subpoena becomes moot once a party has come into compliance with the subpoena.  See Office

---

[7] Mootness has been described as "'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'"  United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (quoting Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)).

14

of Thrift Supervision v. Dobbs, 931 F.2d 956, 957-58 (D.C. Cir. 1991) (citing numerous cases).

Defendant's mootness argument also finds support in other causes of action where a plaintiff's complaint seeks action on the part of a federal agency, and the action is performed during the pendency of the case.  For example, in Action on Smoking and Health v. Department of Labor, 28 F.3d 162, 163 (D.C. Cir. 1994), the plaintiff claimed that OSHA had "unreasonably delayed" in initiating a rulemaking proceeding.  Once OSHA issued a notice of proposed rulemaking, however, the Court found it unnecessary to reach the merits of the claim and dismissed on the basis of mootness.  Id. at 164.  Similarly, in Shoreham-Wading River Central School District v. United States Nuclear Regulatory Commission, 931 F.2d 102, 104 (D.C. Cir. 1991), petitioners filed a claim for relief based upon the Nuclear Regulatory Commission's "failure to decide" a request for action under 10 C.F.R. § 2.206.  Once the Commission issued the final decision, "the unlawful delay claim [was] therefore moot."   See also In re International Union, United Mine Workers of America, 231 F.3d 51, 54 (D.C. Cir. 2000); In re Arcadian Corp., 1995 WL 626501 (D.C. Cir. Oct. 4, 1999) (dismissing as moot petition to compel issuance of OSHA decision once decision rendered and entered into the public record); Associated Builders & Contractors, Inc. v. Herman, 976 F. Supp. 1, 8 (D.D.C. 1997) (claim attacking delay moot once rulemaking issued).

Drawing upon these cases, it is clear dismissal on mootness grounds is warranted based upon events subsequent to the filing of the complaint.  The FOIA and APA claims sought only to compel the defendant to produce the requested records.  See Complaint at ¶ 1.  Plaintiff has received this relief.  See Pellett Decl. at ¶ 7.  Even if plaintiff had a viable claim at the time the complaint was filed, plaintiff has now received the decision sought.  See id.  Federal Rule of

15

Civil Procedure 12(h)(3) directs that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the court shall dismiss the action." Therefore, the FOIA and APA claims should be dismissed as moot.[8]

**B.    Exemption 6 Justifies Defendant's Redactions**

FOIA Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Application of Exemption 6 requires a multi-step analysis.

The first step is determining whether the information sought to be protected is within the scope of Exemption 6. This step is easily satisfied: "[t]he Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." Lepellitier v. FDIC, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982)). In giving meaning to the term "similar files," the Court held that Exemption 6 "' . . . [was] intended to cover detailed government records on an individual which can be identified as applying to that individual.'" Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11, reprinted in 1966 U.S. Code Cong. & Admin. News 2428). Thus, all information that "applies to a particular individual" meets the threshold requirement for Exemption 6. Washington Post Co., 456 U.S. at 599-603 (1982). Moreover, the term "similar files" is to be interpreted broadly rather than

_____

[8] The Prayer for Relief does request an award of attorney's fees. A claim for fees, however, is not enough to maintain a live controversy. See, e.g., Cammermeyer v. Perry, 97 F.3d 1235, 1238-39 (9th Cir. 1996); Doe v. Marshall, 622 F.2d 118, 120 (5th Cir. 1980). Further, in this matter, plaintiffs have failed to establish a court judgment or other statutorily qualifying grounds to be a prevailing party, requiring the denial of any such claim. See Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598, 604-05 (2001).

narrowly. Id. at 602 (citizenship information sought by a requester satisfies the "similar files" requirement of Exemption 6).

The Court has also emphasized that, "both the common law and the literal understanding of privacy encompasses the individual's control of information concerning his or her person." Reporters Committee, 489 U.S. at 763.  Moreover,  Exemption 6 protects personal information "even if it is not embarrassing or of an intimate nature." National Ass'n of Retired Federal Employees v. Horner, 879 F.2d 873, 874 (D.C. Cir. 1989).

The second step is determining whether release of the information requested would result in a "clearly unwarranted invasion of personal privacy."  To make that determination, the court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny" against the "public's right to governmental information." Lepellitier, 164 F.3d at 46 (citations omitted).

In balancing the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA: "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" Lepellitier, 164 F.3d at 46 (quoting Department of Defense v. FLRA, 510 U.S. 487, 497 (1994)).  Further, "something, even a modest privacy interest, outweighs nothing every time." National Ass'n of Retired Federal Employees v. Horner, 879 F.2d at 879.  Finally, it is important to note that the burden of establishing that disclosure would serve the public interest is on the requestor.  Carter v. Dep't of Commerce, 830 F.2d 388, 390 n.8, 391 n. 13 (D.C. Cir. 1987).

17

In this case, the material withheld includes social security numbers and birthdays of third parties, in the disclosure of which material Plaintiffs can articulate no public interest. Accordingly, the information should remain private.

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In this case, the no documents were withheld in full and only minor redactions pursuant to Exemption 6 were made. Therefore, defendant has satisfied its obligation to segregate non-exempt from exempt material.

**C.    Defendant Is Entitled To Summary Judgment On Plaintiffs FOIA Claims As A Reasonable And Adequate Search For Responsive Records Has Been Conducted.**

To the extent plaintiff challenges the adequacy of the search for responsive records, defendant is entitled to Summary Judgment. The declarations filed herewith establish that the agency personnel conducted searches in multiple files on numerous occasions--culminating in 556 pages of responsive records released to plaintiff. See Pellett Decl. at ¶ 7.

In order for an agency to prevail when a plaintiff challenges the nature and extent of its search for responsive documents, the agency must show that it made "a good-faith effort to

conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Nation Magazine v. United States Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 2003) (quoting Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). If an agency can establish that no responsive records exists, or that all responsive records have been released to the requester, then the agency's refusal to produce them should not be deemed an "improper" withholding and summary judgment should be granted. Coalition on Political Assassinations v. DOD, 12 Fed. Appx. 13, 14 (D.C. Cir. 2001) (finding search to be adequate even though no records were located; "[t]hat responsive documents may have once existed does not establish that they remain in the DOD's custody today").

In this case, defendant released all records that it located after using its best efforts to locate responsive records where those records would most likely exist. The fundamental question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). In other words, "the focus of the adequacy inquiry is not on the results." Hornbostel v. United States Dep't of the Interior, 305 F. Supp. 2d 21, 28 (D.D.C. 2003).

The reasonableness of the agency's search depends on the facts of each case. Meeropol v. Meese, 790 F.2d 942, 952 (D.C. Cir. 1986) (search is not unreasonable simply because it fails to produce all relevant materials). The reasonableness of a search is evaluated in light of the specificity of the request. Nation Magazine, 71 F.3d at 889.

Further, the agency is "not obligated to look beyond the four corners of the request for

19

leads to the location of responsive documents." Kowalczak, 73 F.3d at 389 (holding that agency

is not required to speculate about potential leads). Agencies are not obligated to document the

fate of records it cannot find. Roberts v. United States Dep't of Justice, No. 92-1707, 1995 WL

356320, at *2 (D.D.C. Jan. 28, 1993); Miller, 779 F.2d at 1385 ("the Department is not required

by the Act to account for documents which the requester has in some way identified if it has

made a diligent search for those documents in places in which they might be expected to be

found.").

     In demonstrating the reasonableness of a search an agency may rely upon reasonably

detailed, non-conclusory affidavits submitted in good faith. Weisberg, 705 F.2d at 1352.

"Affidavits that explain in reasonable detail the scope and methods of the search conducted by

the agency will suffice to demonstrate compliance with the obligations imposed by the Freedom

of Information Act." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). Such affidavits should

show "that the search method was reasonably calculated to uncover all relevant documents."

Oglesby, 920 F.2d at 68." An adequate agency affidavit is accorded a presumption of good faith.

Chilingirian v. United States Attorney Executive Office, 71 Fed. Appx. 571, 572 (6th Cir. 2003);

Ground Saucer Watch, Inc. v. Central Intelligence Agency, 692 F.2d 770, 771 (D.C. Cir. 1982).

     Once an agency has provided adequate affidavits, the burden shifts back to the plaintiff to

demonstrate a lack of a good faith search. Maynard v. CIA, 986 F.2d 547, 560 (1st Cir. 1993)

(citing Miller v. United States Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985)).

Consequently, a requester's "[m]ere speculation that as yet uncovered documents may exist does

not undermine the finding that the agency conducted a reasonable search for them." Oglesby,

920 F.2d at 67, n. 13 ("[H]ypothetical assertions are insufficient to raise a material question of

fact with respect to the adequacy of the agency's search."); Chamberlain v. United States Dep't of Justice, 957 F. Supp. 292, 294 (D.D.C. 1997) ("It is well established that '[a]gency affidavits enjoy a presumption of good faith that withstand[s] purely speculative claims about the existence and discoverability of other documents," (*quoting* Albuquerque Publ'g Co. v. United States Dep't of Justice, 726 F. Supp. 851, 860 (D.D.C. 1989)).  Therefore, if plaintiff fails to rebut the agency affidavits with evidence of bad faith, summary judgment is proper.  Miller, 779 F.2d at 1383.

Plaintiff has made multiple FOIA requests and has received several hundred pages of records.  See Maraian Decl. at ¶¶ 7 and 8, Pellett Decl. at ¶¶ 4, 5, and 7.  For example, as a result of the Air Force appellate authority's action on plaintiff's July 22, 2005 appeal, plaintiff received 405 pages of records.  See Pellett Decl. at 5.  In response to his October 17, 2005, request plaintiff has received 956 pages of records.  The Academy IDA released 404 of the pages in full and 98 pages with redactions on January 20, 2006 and Mr. Pellett released 550 pages to plaintiff's attorney on February 19, 2006.  These 550 pages included 454 the Academy IDA had withheld in full and 96 of the pages the Academy IDA released with redactions.  From those pages, Mr. Pellett redacted only social security numbers and birthdays of third parties.  See Pellett Decl. at ¶ 8.

In preparing to respond to the October 17, 2005, request, officials at the Academy reviewed plaintiff's prior requests that were renewed by his most recent request.  Academy offices most likely to have responsive records made additional searches in which only electronic copies of drafts, electronic mail messages, and a current database entry were found.  All of the other records relating to the matter about which plaintiff has made his FOIA requests had been

moved to the possession of the Academy's Inspector General.  Those records together with those located in the recent additional searches were evaluated for responsiveness to the October 17, 2005, request.  See Maraian Decl. at ¶¶ 6, 8.

In this case, the agency conducted more than reasonable and adequate searches for responsive records by employing methods reasonably expected to produce such information, as evidenced by the attached declarations of Mr. John M. Pellett, Mr. Wayne H. Kellenbence, Col Thomas Philipkosky and Maj Paul Maraian.  The declarations demonstrate that good faith, reasonable searches for records about plaintiff generated by Academy personnel were conducted. In summary,the Air Force here put forth a "good faith effort to conduct a search for responsive documents" by searching in the areas were such records were likely to be found.  Olgesby, 920 F.2d at 68.

While these agency search efforts described above may not be considered "perfect," perfection is not the legal standard; the focus is the adequacy of the agency search, not the results.  Hornbostel, 305 F. Supp.2d 21 at 28.  Lastly, as a result of the release of the 557 pages of discovered emails by HRC-S, all responsive records have been released to plaintiff; therefore, no "improper" withholding has occurred and summary judgment should be granted.  Coalition on Political Assassinations v. DOD at 14.

Since the agency conducted reasonable, good faith, and adequate searches for records about plaintiff, as evidenced by the detailed, non-conclusory affidavits submitted by defendants, absent allegations and proof of agency bad faith in conducting its search, defendants are entitled to summary judgment in this case.

**D.    The APA Does Not Create A Cause Of Action, Separate From FOIA, For**

**Noncompliance With FOIA's Terms.**

Plaintiff's Ninth Claim for Relief should be dismissed because an agency's failure to comply with the FOIA time limits is not, in and of itself, actionable under the APA.  Plaintiff seeks in his Ninth Claim for Relief to assert an APA claim premised on the mere fact that the Air Force did not comply with FOIA's statutory deadline.  Compl. at ¶ 126 ("Air Force has likewise unreasonably delayed action it is required to take in response to Berardi's requests for records and appeals of adverse decisions by the Air Force following those decisions").  Plaintiff's remedy is exclusively through FOIA.

"It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)).  Only Congress may waive the United States' sovereign immunity, and any waiver, "to be effective, must be 'unequivocally expressed.'"  United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992) (quoting Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95 (1990) (citations omitted)); accord Dorsey v. Department of Labor, 41 F.3d 1551, 1555 (D.C. Cir. 1994).  "'Waivers of immunity must be 'construed strictly in favor of the sovereign' . . . and not 'enlarge[d] . . . beyond what the language requires.'"  United States Department of Energy v. Ohio, 112 S.Ct. 1627, 1633 (1992) (citations omitted).  Absent a clear waiver by Congress, courts are without jurisdiction to entertain a suit against the United States.  Mitchell, 445 U.S. at 538.  A plaintiff suing the United States bears the burden of showing an unequivocal waiver of sovereign immunity.  Paradyne Corp. v. Department of Justice, 647 F. Supp. 1228, 1231 (D.D.C. 1986).

23

The FOIA contains a single narrowly worded remedial provision, 5 U.S.C. § 552(a)(4)(B). Under this provision, a requester of documents may only challenge an agency's withholding of requested documents. The statute provides:

> On complaint, the district court of the United States in the district where the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B).

Thus, as the Supreme Court has held, to establish jurisdiction under this section, the complainant must show that:

> the agency has (1) improperly; (2) withheld; (3) agency records. Judicial authority to devise remedies and enjoin agencies can only be invoked, under the jurisdictional grant conferred by section 552, if the agency has contravened all three components of this obligation.

Kissinger v. Reporters Committee For Freedom of the Press, 445 U.S. 136, 150 (1980). Accord Department of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989) ("federal jurisdiction is dependent" on the three Kissinger criteria and "unless each of these criteria is met, a district court lacks jurisdiction to devise remedies" under the FOIA). Section 552(a)(3)(B) specifically authorizes a district court to require release of requested and non-exempt records by a federal agency.

The fact that the FOIA's specific waiver of sovereign immunity should control over the more general waiver provisions of the APA is demonstrated in the differing standards of review courts must apply under these two sections. FOIA's standard is de novo. Id. Under the APA, on the other hand, courts must give deference to the agency's final action. 5 U.S.C. § 706(2)(A)

24

(courts may set aside final agency action only when it is, <u>inter alia</u>, "arbitrary, capricious, [or] an abuse of discretion").  In addition, the APA, at 5 U.S.C. § 704, subjects to judicial review "final agency action for which there is no adequate remedy in a court."  Of course, the FOIA provisions previously discussed provide an "adequate remedy" for noncompliance with FOIA's terms.

To the extent plaintiff invokes the APA to recover lost pay, that too must fail as the APA explicitly prohibits the recovery of monetary damages.  Section 702 of APA allows a plaintiff to sue a federal agency in a federal court "seeking relief **other than money damages**." 5 U.S.C. § 702 (emphasis added).  Courts that have confronted the issue of whether the APA allows monetary damages recovery uniformly held that the APA does not.  <u>See Linder v. Calero-Portocarrero</u>, 251 F.3d 178, 181(D.C. Cir. 2001); <u>Hubbard v. EPA</u>, 982 F.2d 351, 539 (D.C. Cir. 1992) (en banc) (holding that the APA does not provide for the award of money damages in the form of backpay); <u>Scanwell Lab. Inc. v. Thomas</u>, 521 F.2d 941, 948 (D.C. Cir. 1975) (stating that "the Administrative Procedure Act, by itself, is not a waiver of sovereign immunity in suits seeking money damages against the United States.").  Accordingly, plaintiff's APA claim for lost wages - to the extent that he states one - must be dismissed for failure to state a claim for which relief may be granted.

**E.    Plaintiff's Privacy Act Claim Fails Because Inaccurate Records Were Not The Proximate Cause Of Plaintiff's Disenrollment**

Plaintiff claims that he is entitled to relief under the Privacy Act because the Air Force relied on inaccurate records, which "was the proximate cause of the adverse determination of the Air Force to disenroll [plaintiff]."  <u>See</u> Complaint at ¶ 119.  This claim lacks merit.  Rather than inaccurate records, the Board found that actions taken during the disenrollment process may have

given the appearance of injustice.  See Exhibit 2 at 10.  Specifically, the Board was concerned

with the absence of a formal policy addressing the assessment of demerits for losing an

identification card.  See id.

　　　　To prevail on a damages claim under 5 U.S.C. 552a (g)(1)(C), it is well settled in this

Circuit that plaintiff must establish "(1) he has been aggrieved by an adverse determination; (2)

[the agency] failed to maintain records with the degree of accuracy necessary to assure fairness in

the determination; (3) the [agency's] reliance on the inaccurate records [proximately caused the

adverse determination]; and (4) the [agency] acted intentionally or willfully in failing to maintain

accurate records." Deters v. United States Parole Commission, 85 F.3d 655, 657 (D.C. Cir.

1996); Sellers v. Bureau of Prisons, 959 F.2d 307, 312 (D.C. Cir. 1992); accord Toolasprashad v.

Bureau of Prisons, 351 U.S. App. D.C. 64, 286 F.3d 576, 583 (D.C. Cir. 2002) (claim consists of

allegations of "inaccurate records, agency intent, proximate causation, and an adverse

determination").

　　　　Here, the Board based its decision out of a concern for the appearance of injustice, *not*

erroneous records.  In so finding, the Board afforded plaintiff the benefit of the doubt and ordered

that his records be corrected to show that:

> A.　　He was not disenrolled from the United States Air Force Academy
> (USAFA) on 3 June 2003, but was placed in an excess leave status until
> his involuntary recall to extended active duty on 25 June 2003.
>
> B.　　Any and all documentation relating to the loss of his identification card,
> his conduct probation and disenrollment from the USAFA be declared
> void and removed from his records.  Documentation related to the
> remaining underlying disciplinary infractions will remain in his cadet
> records in accordance with the governing instructions.
>
> C.　　Effective 13 July 2004, he was honorably released from active duty, and

26

re-enrolled in the USAFA as a cadet on 14 July 2004.

See id. at 11.  To the extent plaintiff's records needed correcting, the Board's Decision accomplished this need.

The second fatal defect in plaintiff's failure to state a Privacy Act claim under 5 U.S.C. 552a(g)(1)(C), is the failure of the plaintiff to meet the second and third Deters elements outlined above.  Plaintiff simply does not identify any record that was inaccurately maintained by the agency.  As a result, plaintiff cannot show that a record lacked accuracy to assure some necessary degree of fairness in an agency determination, and further, that such record was relied upon by the agency in a manner that resulted in an adverse determination against him.  Here, in fact, the Board was concerned about the *absence* of a record, *i.e.* a policy for imposing demerits for losing an identification card, and not inaccurately maintained records.  Therefore, plaintiff has wholly failed to state a Privacy Act Claim under 5 U.S.C. 552a (g)(1)(C).

The third basis on which plaintiff has failed to state a valid Privacy Act Claim under 5 U.S.C. 552a (g)(1)(C) is the element of intentional or willful agency action in failing to accurately maintain a record.  This, of course, is also an exercise in speculation as plaintiff has identified no inaccurately maintained record as discussed above. Nevertheless, there is no inference which can be drawn from plaintiff's complaint that would even remotely suggest the agency acted in any manner which could be construed as "intentional" or "willful" under 5 U.S.C. 552a (g)(4).  This is a "high hurdle to clear.  It requires plaintiff to show that the agency's failure to maintain accurate records amounted to something greater than 'gross negligence.'" Hardy v. Lappin, 2005 U.S. Dist. LEXIS 5012 (D.D.C.  2005), *quoting* Deters, 85 F.3d at 660.

In sum, even drawing all favorable inferences from plaintiff's complaint, he cannot

maintain a claim for Privacy Act damages under 5 U.S.C. 552a(g)(1)(C) and (g)(4).

Accordingly, plaintiff's Privacy Act claim must be dismissed for failure to state a claim for

which relief can be granted under Fed. R. Civ. P. 12(b)(6).

**F.    Plaintiff's Privacy Act Claim Fails As A Matter Of Law Because Presidential
Appointments Are Not Automatically Bestowed Upon Graduates**

Plaintiff argues that but for alleged errors in Academy records, he would have (1)

graduated eighteen months earlier, (2) received a Presidential appointment at that earlier time,

and (3) earned income as a second lieutenant during those eighteen months.  An appointment,

however, is not an entitlement nor is it automatic.

"An [Air Force] officer is an 'Officer of the United States' in accordance with Article II.

See United Stats v. Mouat, 124 U.S. 303, 307 (1888) (holding that a naval officer who 'holds his

place by virtue of an appointment by the president' is an 'officer of the United States')."  Dysart

v. United States, 369 F.3d 1303, 1306 (Fed. Cir. 2004).  In order for an appointment to occur,

"the President first selects a nominee and send the nomination to the Senate.  The Senate acts on

the nomination and determines whether or not to confirm the nominee.  If the nominee is

confirmed, the President appoints the officer and signs a commission or performs some other

public act as evidence of the officer's appointment."  Dysart, 369 F.3d at 1306.  An officer's

**initial appointment** is subject to this constitutional process.  Dysart, 369 F.3d at 306 (citation

omitted) (emphasis added).

Here, plaintiff attempts to invoke the Privacy Act to collect lost pay for what he describes

as his wrongful disenrollment.  In effect, he is relying on the Privacy Act as the basis for this

Court to judicially appoint him as a second lieutenant *nunc pro tunc* to the date that he **expected**

to graduate, and award money damages for the pay he **expected** to receive.  The Privacy Act is not available for this purpose.  See generally, Dysart, supra, 369 F.3d 1303, 1314 (Navy officer not entitled to automatic appointment with corresponding pay and benefits, when Court found that statute providing that military officers "shall be promoted" to the next higher grade when additional officers in that grade and competitive category are needed, did not compel the President to appoint military officers.  "Congress could not have permissibly altered the appointment process set forth in the Constitution by providing for automatic appointments.").  The Privacy Act may not "grant the district court power to do indirectly that which Congress precluded directly."  Hubbard, 809 F.2d 1, 5.  To the extent that plaintiff's Privacy Act claim challenges the decision to disenroll him and, thus, not to appoint him "on time," which is a nonjusticiable matter solely within the province of the President, and seeks damages for that injury, the Privacy Act provides no relief.[9]

## **CONCLUSION**

For all these reasons, the Court should dismiss this action, or alternatively, enter summary judgment in favor of the defendant.

Date: February 22, 2006

Respectfully submitted,

_____

KENNETH L. WAINSTEIN, D.C. Bar # 451058

---

[9]  To the extent that plaintiff has a viable claim for damages, and defendant does not concede that he does, the proper forum would be the Court of Federal Claims.  See Dysart, 369 F.2d at 1315 ("[T]he Military Pay Act, 37 U.S.C. § 204 (2000), provides for suit in the Court of Federal Claims when the military, in violation of the Constitution, a statue, or regulation, has denied military pay") (citations omitted).

United States Attorney

_____
R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney

_____
KAREN L. MELNIK, D.C. Bar # 436451
Assistant United States Attorney
555 4th Street, N.W. - Room E4112
Washington, D.C.  20530
(202) 307-0338

30