RECORD OF PROCEEDINGS
AIR FORCE BOARD FOR CORRECTION OF MILITARY RECORDS

IN THE MATTER OF:

Christopher W. Berardi

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

DOCKET NUMBER:  BC-2003-02807
INDEX NUMBER:  104.00
COUNSEL:  Charles R. Lucy

HEARING DESIRED:  Yes

JUN 2 4 2004

---

## APPLICANT REQUESTS THAT:

He be reinstated as a cadet at the United States Air Force
Academy (hereafter referred to as Academy).

---

## APPLICANT CONTENDS THAT:

His disenrollment was disproportionate and inconsistent with
other cases based on a tainted process that failed to give him a
fair determination.

In a 45-page submission, with attachments, applicant lays out his
case for reinstatement to the Academy. He provides an overview
of his qualifications and accomplishments at the Academy. For
example, he was an above average student with a cumulative grade
point average of 3.25 and participated on the Division 1 varsity
lacrosse team. The applicant addresses issues in the following
four areas in support of his appeal:

   a. **Equity of Punishment.** In this area, the applicant's
primary contention is that he was assessed an unfair number of
demerits for losing his ID Card, which caused his total points to
reach a level in a 6-month period that required his placement in
a probation status. The applicant states that he was assessed a
total of 40 points for an offense that normally results in a
total of 15 to 20 points. Additionally, the 40 points he was
assessed were, allegedly, based on a new policy after 9-11, a
policy that is not documented anywhere. The applicant indicates
if he had been given the normal amount of demerits for losing his
ID card, he would have been referred to a Squadron Commander
Review Board to determine whether he would be placed on
probation. He also alleges that another member of his class was
assessed the lower number of demerits for the same offense of
losing her ID card. According to the applicant, several
investigations were conducted into his case. The IG reported in
his investigation that there were inconsistencies regarding the
disbursement of demerits ranging from 0-40 and that some AOCs
were not aware of the policy regarding 40 demerits for an ID card
loss. The IG Report proved that there was an inequity of
punishment concerning ID card loss.

3

The other issue the applicant states he questioned regarding equity of punishment was the decision to disenroll him. He states he was not given any reason for disenrollment when the Superintendent made his first decision. He contends that the IG requested that the Superintendent revisit his case after the investigation and asked for his reinstatement based on their findings. The case was revisited, but he was not reinstated. His parents also raised the issue of equity of punishment by asking the Superintendent to review three known cases where cadets were retained with more severe circumstances than his. He contends that the Superintendent failed to account for the disparity after he had shown that the cases were related and similar to his.

b. **Command Influence.** The applicant contends that the Training Group Commander made an improper statement that influenced his chain of command throughout the entire probation and disenrollment review process. His parents addressed this issue to the Superintendent and there were two Congressional requests made regarding their inquiry. They were told that everyone in the chain of command leading up to the Superintendent only makes a recommendation. The Superintendent makes the final decision and he had no knowledge of the Training Group Commander's remarks. The applicant believes that it is possible that if the comment had not been made, his chain of command may have acted differently, not voted to disenroll him, and the process would have never reached the Superintendent level.

c. **Due Process.** The applicant contends that numerous instances of inaccurate and incomplete information, false statements, nonstandard practices, violations of UCMJ Article 31 rights and bias led to a total denial of due process in the administration of cadet wing regulations and procedures regarding his disenrollment. He cites his 29 Oct 02 Softlook Military Review Committee (MRC) proceeding as the strongest evidence of the violation of his due process rights. He discusses how the probation journal that he wrote and had approved by his Squadron AOC was taken out of context at his Softlook MRC and in a memo for record prepared by his Deputy Group AOC. Regarding the MFR written by his Deputy Group AOC, the applicant indicates that he was not given an opportunity to review it before it showed up in the package given to the Academy Superintendent to review. He believes this violated the applicable Academy Cadet Wing Instruction. Additionally, he contends that his Article 31 rights were violated since he was not advised that he could get in trouble for what he wrote in his journal. The applicant provides in-depth discussion on the process leading to his disenrollment with references to incidents and actions that he believes violated his due process.

d. **Adversarial Reporting.** The applicant contends that false, inaccurate, and misleading information was prevalent throughout his probation and disenrollment process with no other purpose except to document and support a disenrollment case against him. Although the first IG report substantiated many of

his claims, a second report was adversarial in its approach to many of the same situations covered in the first report. The applicant discusses specific issues addressed in the second report and the discrepancies he believes support his claim.

The applicant submitted a 23-page addendum, dated 28 Sep 03, to his initial package along with a document called "Wing Tips 2003," dated 4 Jun 03. The applicant states that the "Wing Tips" document reflects a huge disconnect between what the Academy teaches and what it practices. In his submission, the applicant references specific issues covered in the "Wing Tips" document and how they relate to actions taken in his case. He also discusses issues such as notes made by the recorder in his MRC. These notes led to inaccurate information being included in the executive summary of his MRC and incorrectly being attributed to him.

Information on Academy leadership contained in a report prepared by a panel to investigate allegations of sexual misconduct at the Academy, while not directly applicable to him, pertains to the treatment that he received.

The applicant submitted additional information in a letter, dated 28 Oct 03, pertaining to his efforts to obtain information through the Freedom of Information Act. He includes these to make the Board aware of the requests, the responses he has received, and the reasoning behind his appeal of the responses.

The applicant's complete submission, with attachments, is at Exhibit A.

---

STATEMENT OF FACTS:

While serving his junior year at the Academy, the applicant was recommended for disenrollment by a Military Review Committee (MRC) after receiving a current deficient Military Performance Average (MPA), receiving excessive demerits, and failing conduct and aptitude probation. At the time of his MRC, his record reflected that he had a career total of 291 demerits. He had been placed on probation on 5 Aug 02 after accumulating 86 demerits in a six-month period. While on probation, he received an additional 125 demerits (25 for being outside cadet limits and 100 for underage drinking at an Academy home football game). The applicant provided matters in his behalf. After review of the case, the Academy Superintendent (SUPT) forwarded the applicant's case to the Academy Board.

On 14 Mar 03, the Academy Superintendent (SUPT) considered the facts and circumstances presented to the Academy Board regarding the recommendation for disenrollment of the applicant and placed him on involuntary excess leave pending the decision of the SECAF. Sometime after the Academy Board the SUPT was made aware of comments made by the applicant's Training Group Commander,

which the applicant believed to have influenced the outcome of his case. The SUPT stated that he would not have altered his decision to disenroll the applicant on that point alone.

The applicant appealed the decision of disenrollment and filed a formal IG complaint alleging mishandling of his case. As a result of their findings, the IG recommended that the Academy Superintendent review the applicant's case one more time to consider reversal before sending the case to the SECAF (Exhibit B).

On 3 Jun 03, the Academy SUPT recommended to the SECAF that the applicant be separated from cadet status and transferred to active duty for two years. The applicant disagreed with the recommendation and submitted additional matters for consideration by the SECAF.

On 19 Jun 03, the Secretary of the Air Force Personnel Council (SAFPC) reviewed the applicant's case and recommended that the applicant be disenrolled and ordered to active duty in an enlisted status for a period of two years. On 25 Jun 03, the SECAF approved the recommendation of the Academy SUPT to disenroll the applicant and directed that he be separated from cadet status, transferred to the Air Force Reserves in an enlisted status, and ordered to active duty for a period of two years.

The applicant is presently serving on active duty in the grade of airman first class as a Computer Systems Implementation Apprentice.

---

AIR FORCE EVALUATION:

USAFA/JA recommends denial of the applicant's requests. They provide a response to each of the four areas that the applicant has emphasized.

a. **Equity of Punishment.** AFCWI 51-201 is a tool to assist commanders in administering discipline and while it was implemented to promote consistency, demerits can be issued "within range" of a particular offense and is ultimately at the commander's discretion. At the time the applicant lost his ID card, the Training Group Commander had established a policy of assessing a mandatory 40 demerits for this offense. They provide their rationale as to why the applicant's contention that his ID card was misplaced rather than lost is without merit. They also state the applicant's contention that another cadet received a lesser punishment for the same offense is without merit since a change of command, and change of policy, had occurred by the time this cadet lost his ID card.

b. **Command Influence.** There is sufficient evidence in the record to support disenrollment and there is no credible evidence

4

6

that anyone was influenced by statements made by the Training
Group Commander.    The ultimate decision regarding his
disenrollment was made at a level above the Training Group
Commander and was not subject to his direction.    The Academy IG
also substantiated there was no undue command influence.

c. **Due Process.**    Regarding the applicant's assertion that
his MRC package contained so many errors that officials must have
acted in bad faith, all of the information he references was
considered by the MRC.    His Squadron AOC prepared a memo for
record (MFR), dated 28 Oct 02, noting errors in the police report
prepared on his underage drinking.    Additionally, the MFR the
applicant was ordered to prepare on his alcohol-related incident
was not used against him in any UCMJ action, since he was
disciplined pursuant to the cadet disciplinary system.    Failure
to advise the applicant of his Article 31 rights does not render
his statement inadmissible at the MRC.    A lack of right to
representation by defense counsel is not a lack of due process,
per se, as contended by the applicant.    The applicant received
notice of the proceedings, was provided copies of the documents
to be considered by members of the MRC, was given an opportunity
to respond, and was afforded an opportunity to provide additional
matters to both the Superintendent and Secretary of the Air
Force.

d. **Adversarial Reporting.**    The applicant's MRC package did
contain errors as he alleges.    However, while regrettable, they
were merely mistakes and not an effort to ensure his
disenrollment.

The complete evaluation is at Exhibit C.

---

APPLICANT'S REVIEW OF AIR FORCE EVALUATION:

In responding to the Air Force evaluation, applicant is now
represented by counsel.    Counsel provides a 7-page response with
an 18-page memorandum prepared by the applicant, with six
supporting attachments.

In his response, counsel amplifies on several key points that he
believes demonstrates the existence of material error and/or
injustice.    He provides a summary of the applicant's background,
qualifications, and accomplishments, which reflects the
applicant's officership potential.

Regarding USAFA/JA's position that there is no credible evidence
that anyone was influenced by the statements made by the Training
Group Commander, counsel asserts that the Academy IG contradicts
this conclusion.    He references an Apr 03 IG report prepared on
the applicant's disenrollment.    The report found that a
preponderance of evidence by the cadet chain of command
substantiated that the Training Group Commander did express
unfavorable comments about the applicant to the cadet chain of

7

command.  He references an excerpt from the report that states
the cadets believed that the statement made contributed to the
tone for the rest of the disenrollment process concerning the
applicant.   Counsel opines that while the cadets were brave
enough to admit that they were influenced, the officer chain of
command was not.   Counsel further discusses USAFA/JA's assertion
that since the Training Group Commander was subordinate to the
Training Wing Vice Commander, the Superintendent, and SECAF his
comments could not have influenced them.   He provides three
reasons why this is a misleading argument.   Counsel references
the case of another cadet that the Board granted relief based on
the  hierchical  structure  at  the  Academy  being  improperly
influenced in its decision-making process.

Counsel  states  that  the  USAFA/JA  response  misstates  the
applicant's case.   As his first example of this, he discusses
USAFA/JA's assertion that the applicant's BCMR application is
just a rehash of arguments and issues previously presented to the
Academy Board.   He references an attached memorandum prepared by
the applicant as proof that this is not true.   Secondly, counsel
rebuts USAFA/JA's statement that the Training Group Commander had
established a policy assessing 40 demerits for a lost ID card
when in reality the Academy IG determined that no such policy
existed.   Third, counsel discusses the issue of command influence
and  concludes  that  the  Academy  has  failed  to  rebut  the
presumption that command influence took place in the applicant's
case.   Fourth, counsel discusses what he characterizes as perhaps
the  most  egregious  violation  of  the  applicant's  due  process
right, his AOC's failure to follow Article 31.   He points out
that AFCWI 51-201 requires an Article 31 warning when a cadet is
implicated  in  a  suspected  violation  of  the  UCMJ  and  is  not
optional as USAFA/JA seems to indicate with their view that the
violation of the applicant's Article 31 rights was okay because
the information he provided was not used in any UCMJ action.
Finally counsel discusses what he believes are efforts by Academy
officials  to  distance  themselves  from  certain  recommendations
made by the Academy IG.

In his attached memorandum, applicant states that he addresses
issues that the Board can find in his initial appeal, but were
overlooked by USAFA/JA in their evaluation and needed to be
brought forth in the interest of clarity and balance.

The applicant provides his response point by point to correspond
to  the  numbered  paragraphs  in  the  evaluation  prepared  by
USAFA/JA.   He provides in-depth discussions of the Procedural
History as presented by USAFA/JA.   He comments on what he asserts
are specific inaccuracies made by USAFA/JA.   In his response to
USAFA/JA's summary of his position regarding his case, applicant
opines that USAFA/JA's attempt to summarize his position by
condensing a 46-page letter, with many supporting documents, into
four very short paragraphs that encompass less than one page of
information  is  totally  inadequate.    Applicant  addresses
USAFA/JA's response to his position as they have interpreted it.
He  asserts  that  USAFA/JA  failed  to  respond  to  the  issue  of

B

disproportionate punishment and inconsistencies among other cases. The applicant lists other Academy cases with "greater" infractions but less punishment when compared to his. The applicant discusses AFCWI 51-201 and how it was not followed in his case, referencing specific excerpts, provides in-depth discussion on how command influence played a role in his case, and discusses the issue of errors in his MRC package. The applicant lists several issues that he asserts USAFA/JA failed to consider in addressing the issue of "lack of due process." Finally, the applicant addresses the Academy's response to the allegation of inaccurate reporting. He provides what he believes is clear evidence of the adversarial reporting.

Counsel's complete submission, with attachments, is at Exhibit E.

---

ADDITIONAL REVIEWS OF AIR FORCE EVALUATION:

The applicant provided an additional response to the Air Force evaluation. He discusses the difficulty he has encountered in obtaining information and evidence relevant to his case from the Academy.

The applicant questions how USAFA/JA obtained some of the information contained in their evaluation since the Academy IG advised him that they had no correspondence with USAFA/JA. He especially questions the statement in USAFA/JA's evaluation "Finally, the Academy IG investigation determined there was no unlawful command influence." He states that he has been trying to get information regarding this statement since 1 Dec 03.

The applicant attaches copies of correspondence relative to his efforts to get information on his case.

The applicant's complete response, with attachments, is at Exhibit F.

In a 15-page letter, with attachments, the applicant's parents provided further response to the Air Force evaluation and comments on the applicant's case.

The applicant's parents address the answers the applicant received from the Academy IG in response to questions posed by their son. They opine that the response is so evasive that it appears that the Academy is trying to hide something. They question the Academy IG's response to the applicant regarding what investigation USAFA/JA referenced in making the statement that the Academy IG's investigation determined there was no command influence. The Academy IG answered that USAFA/JA issued a legal opinion for the government based on their review and understanding of the facts surrounding the Academy IG's investigation and other documents in the package. Applicant's parents opine that this amounts to USAFA/JA forming an opinion based on their own interpretation, not the IG's. Applicant's

9

parents list and expound on 12 considered false claims made by USAFA/JA as pointed out by their son in his response to the Board.

Applicant's parents further discuss the Academy IG's response to their son regarding the issue of command influence and give their perspective on what the response, or perceived lack of response means. They point out that USAFA/JA is the only one stating that command influence did not exist. They state that an impartial investigation should have been used to determine if command influence existed. They opine that an investigation was started, but when indicators pointed to command influence, the Academy backed off and answers became clouded.

Applicant's parents present 13 areas of discussion to prove their belief that the AOC, Group AOC, and Deputy Group AOC worked to carry out the stated intentions of the Training Group Commander. They opine that the AOC, Group AOC, and Deputy Group AOC made far too many errors in their son's case to be considered accidental administrative errors. They reference comments made about the Training Group Commander in a report prepared by the panel reviewing sexual misconduct allegations at the Academy. The type of officer the Training Group Commander was portrayed as makes clear why the Academy officers would make sure her intentions were carried out.

The applicant's parents discuss the issue of the 40 demerits received by their son for losing his ID card. They believe that the explanation given for the 40 demerits makes no sense. They conclude that based on the Academy IG's response regarding this issue, it should have been determined that their son should have never received 40 demerits or it should be concluded that the 15 demerits given another cadet for the same offense was inequitable. If their son had only been assessed 15 demerits, his situation could have been dramatically different.

The complete submission, with attachments, is at Exhibit G.

Applicant's mother provided another input regarding the ID card policy. Based on further questions posed to the Academy IG, she was advised that from the time her son received 40 demerits (Apr 02) through the period of the IG investigation (Mar 03), there was not a change in the ID card policy, which means that the cadet that received 15 demerits should have also received 40. She opines that this issue raises another area of untruthfulness by her son's AOC.

Applicant's mother provides six questions regarding truthfulness by the AOC that need to be addressed. She states that the Academy IG advised her that the current Academy administration was looking at policy based on some of her son's claims. She questions how this will help her son. She opines that if the Academy feels that the policies and procedures used at the Academy were not fair and need to be changed, they should be addressed within her son's case.

8

The complete submission is at Exhibit H.

In a 7-page letter, with 8 attachments, the applicant submitted additional information for the Board to consider.  He indicates that as a result of additional information obtained from the Academy IG through the FOIA process, he can assuredly say that the IG investigation did not determine that there was no command influence in his case as indicated in the USAFA/JA evaluation. The applicant provides a summary of his efforts to obtain information from USAFA/JA through the FOIA process and his determination that they did not have sufficient information to determine that there had been no command influence in his case. The applicant also details his efforts to obtain information from the Academy IG through the FOIA process and his determination that there is no information to show that the Academy IG determined that there was no command influence in his case.

The applicant discusses a document obtained through the FOIA provided by the Academy to a Congressional Inquiry that he considers significant because it proves that the Deputy Group AOC did not tell the truth about his reasons for addressing the applicant's journal entries at the Softlook MRC.  The applicant provides the sequence of events and the rationale that leads him to this conclusion.  He references specific attachments that he would like the Board to review, which he believes proves command influence.

The applicant indicates that he is still trying to obtain additional information and if successful will forward it to the Board.

The applicant's complete submission, with attachments, is at Exhibit I.

---

ADDITIONAL AIR FORCE INFORMATION:

The applicant was notified that his case was being temporarily closed until such time as he notified the Board in writing that his application was complete and he was ready to proceed.

The letter of notification is at Exhibit J.

---

APPLICANT'S RESPONSE TO ADDITIONAL AIR FORCE INFORMATION:

The applicant responded that his application is complete and he would like to proceed.  Although he has been attempting to obtain additional information, the Air Force has failed to follow their own regulations regarding his requests, making it impossible for him to know if and when he will receive a response to his requests.  Therefore, he would like to proceed.  Regarding the

issue of whether the Board should be corresponding with his attorney, he indicates that he will be the one corresponding with the Board, with his attorney's advice.

The applicant's complete response is at Exhibit K.

---

THE BOARD CONCLUDES THAT:

1. The applicant has exhausted all remedies provided by existing law or regulations.

2. The application was timely filed.

3. Sufficient relevant evidence has been presented to demonstrate the existence of error or injustice. After reviewing the complete evidence of record, we find that while there may have been a sufficient basis for the applicant's disenrollment, the findings noted in the USAFA IG investigation call into question many of the actions taken regarding the applicant's disenrollment. We are mindful of the fact that the Academy Superintendent and the Secretary of the Air Force Personnel Council (SAFPC) reviewed the IG's findings before the final decision to disenroll the applicant was made. However, we are concerned that the applicant's attitude, and subsequent chain of events may have been influenced by what appears to be an unfair assessment of demerits for the loss of his ID card. We note that the IG could not substantiate the existence of a formal policy requiring such a large assessment of demerits. Additionally, it appears that punishment for this particular offense was not meted out with any degree of consistency among the cadets. Further, we are left with a perception of impropriety on the part of key officials in the applicant's leadership chain. As a cadet at the USAFA, the applicant was expected to adhere to the highest standards of conduct and demonstrated aptitude for eventual service as a military officer. A cogent argument can be made that in many respects he failed to do so. However, if a cadet is expected to maintain high standards as part of an education and training environment, we should expect no less from those entrusted with the responsibility to mentor, mold, educate, train and guide them. In this case, there are too many instances of errant or poorly justified actions in the overall disenrollment process, giving the appearance of injustice. We believe there is sufficient basis to give the applicant the benefit of the doubt regarding the propriety of his disenrollment and to provide him an opportunity to complete his training at the USAFA. Therefore, we recommend that the applicant's records be corrected as indicated below.

---

THE BOARD RECOMMENDS THAT:

The pertinent military records of the Department of the Air Force relating to APPLICANT, be corrected to show that:

    a.  He was not disenrolled from the United States Air Force Academy (USAFA) on 3 June 2003, but was placed in an excess leave status until his involuntary recall to extended active duty on 25 June 2003.

    b.  Any and all documentation relating to the loss of his identification card, his conduct probation and disenrollment from the USAFA be declared void and removed from his records. Documentation related to the remaining underlying disciplinary infractions will remain in his cadet records in accordance with the governing instructions.

    c.  Effective 13 July 2004, he was honorably released from active duty, and re-enrolled in the USAFA as a cadet on 14 July 2004.

---

The following members of the Board considered Docket Number BC-2003-02807 in Executive Session on 20 April 2004, under the provisions of AFI 36-2603:

    Mr. Thomas S. Markiewicz, Chair
    Mr. Richard A. Peterson, Member
    Mr. Grover L. Dunn, Member

All members voted to correct the records, as recommended.  The following documentary evidence was considered:

    Exhibit A.  DD Form 149, dated 30 Jul 03, w/atchs.
    Exhibit B.  Applicant's Master Personnel Records.
    Exhibit C.  Memorandum, HQ USAFA/JA, dated 6 Nov 03.
    Exhibit D.  Letter, SAF/MRBR, dated 21 Nov 03.
    Exhibit E.  Letter, Counsel, dated 17 Dec 03, w/atchs.
    Exhibit F.  Letter, Applicant, dated 23 Jan 04, w/atchs.
    Exhibit G.  Letter, Applicant's Parents, dated 3 Feb 04, w/atchs.
    Exhibit H.  Letter, Applicant's Mother, dated 6 Feb 04.
    Exhibit I.  Letter, Applicant, dated 2 Mar 04, w/atchs.
    Exhibit J.  Letter, AFBCMR, dated 12 Mar 04.
    Exhibit K.  Letter, Applicant, dated 15 Mar 04.

            THOMAS S. MARKIEWICZ
            Chair

/3