UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER BERARDI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05CV2269 (JR) |
| ) | |
| UNITED STATES DEPARTMENT ) | |
| OF THE AIR FORCE, ) | |
| ) | |
| Defendant. ) | |

### DECLARATION OF COLONEL WAYNE H. KELLENBENCE

Pursuant to 28 U.S.C. §1746, I, Wayne H. Kellenbence, hereby declare under penalty of perjury that the following is true and correct.

1. I am a retired Colonel, U.S. Air Force. I served on active duty for 27.5 years before retiring on December 31, 2005. During my last assignment as an active duty officer, I served as the Director of Staff, United States Air Force Academy (USAFA/DS). I served in that position from September 2003 until I retired.

2. As USAFA/DS, I reported to the Superintendent. Among my duties, I was responsible for the overall administration of the Academy headquarters staff. In my capacity, I was aware of how the Superintendent's Office maintained files.

3. The senior officer at the Academy is the Superintendent, who is the Commander of the Academy as a military organization. The Superintendent's Office includes a command section similar to those in other Air Force organizations. The Superintendent's administrative staff included his personal staff, including an executive officer and secretary, the command section administrative staff of three, the command chief master

sergeant and command chief administrative assistant, and the commander's action group of five people.

4. It was the routine administrative practice of the Superintendent's Office to return the files relating to matters on which the Superintendent acted, to the Academy staff office that had originated the action. If a matter required action by an official outside the Academy, we normally returned the file to the originating office to be forwarded to that official.

5. In most cases, a copy of the correspondence or other documentation of the action taken by the Superintendent was returned to the originating office to be retained with the rest of the file. Only a scanned copy of the document that showed the action taken by the Superintendent would be retained in the command section administrative files. Cases involving the disenrollment of a Cadet from the Academy were handled in this way.

6. Similarly, from time to time, we would request files from a staff office so that the Superintendent or another member of the office staff could respond to an inquiry. In those cases, after the inquiry was resolved, the file would be returned to the staff office. Likewise, we would often refer inquiries to a staff office for response or to prepare a response for the Superintendent. When necessary, we would refer inquiries to one or more other offices as well in order to gather information for the preparation of the response.

7. During my Air Force career, it was my experience that commanders' offices in which or with which I worked had similar practices regarding returning files to originating offices after the commander had taken action on a matter. During my tenure as USAFA/DS, I was never informed that the Superintendent's Office had followed a different practice prior to my arrival.

8. I do not now recall when plaintiff's FOIA request dated February 27, 2004, reiterated on April 8, 2004, for "any and all information in the possession of the Superintendent's office ... pertaining to [plaintiff's] case" was received in the Superintendent's Office from the Academy FOIA Office. I was aware that plaintiff's case was a disenrollment matter and, as in all FOIA requests, verified with the FOIA office that a thorough search was conducted. In this instance, because the request sought records in the Superintendent's Office, I was personally aware of the search.

9. The only document located during the search was a staff summary sheet that had accompanied the disenrollment case relating to the plaintiff when it was sent to the Superintendent for action. Lt Col Lori Salgado was the Executive Officer to the Superintendent until the summer of 2004. We discussed the tasking document and the letter from plaintiff's parents to which plaintiff had referred in his April 8, 2004 reiteration of his request. Lt Col Salgado recalled that she had referred the letter to the Academy Inspector General's office to prepare a response for the Superintendent and to other offices to collect information for the Inspector General's office. After the response had been sent to plaintiff's parents, she did not retain the file.

10. I initially denied plaintiff's request for "any and all information in the possession of the Superintendent's office ... pertaining to [his] case" on May 12, 2004, withholding the staff summary sheet. In doing so, I mistakenly gave the impression that we had located other documents by referring to "routing slips and staff summary sheets." I reconsidered my decision to withhold the staff summary sheet after plaintiff filed an appeal on May 25, 2004. In my August 16, 2004 letter releasing the staff summary sheet to him, I attempted

to correct the misimpression by explaining that we located only a single staff summary sheet during our search of the files in the Superintendent's Office.

Executed this 21st day of February 2006 at the United States Air Force Academy, Colorado

Wayne H. Kellenbence
Colonel, USAF, Retired