# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CHRISTOPHER W. BERARDI,          )
                                 )
                  Plaintiff,     )          Civil Action No. 1:05cv02269 JR
v.                               )
                                 )
UNITED STATES DEPARTMENT OF      )
THE AIR FORCE,                   )
                                 )
                  Defendant.     )

## PLAINTIFF'S BRIEF OPPOSING DEFENDANT'S MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT AND SUPPORTING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

Plaintiff Christopher Berardi graduated *summa cum laude* from the United States Air Force Academy and was commissioned as a Second Lieutenant on December 21, 2005. This stellar beginning to a promising career in the Armed Forces was not without great tribulation.

Normally, an Air Force cadet takes four years to graduate and begin his or her service as an officer. Then-Cadet Berardi was on track to do just that until his junior year when his academic world turned upside down following his involvement in an under-aged drinking incident at an Air Force football game. The Academy's investigation and documentation of the incident was poorly handled and replete with material errors that went uncorrected in spite of Cadet Berardi's protests. Consequently, Cadet Berardi was disenrolled from the Academy, demoted to enlisted status, and ordered to active duty as an Airman. Meanwhile, his classmates marched on to graduation and careers as Air Force officers.

Cadet/Airman Berardi remained convinced that the seriousness of the alleged offenses did not merit the punishment.  He set out to obtain, via FOIA and the Privacy Act, his records in the Academy's files that he would need to defend himself.  When responding to his many requests for his records, the Air Force repeatedly failed to comply with the controlling statutes and implementing regulations.  These failures perpetuated the errors in the Academy's files that lead to his expulsion and demotion.

Armed with only partial or inaccurate FOIA/Privacy Act responses, Airman Berardi convinced the Air Force Board for Correction of Military Records of the injustice worked by the Academy's erroneous records.  The Board reinstated him to the Academy where he thrived academically.

Sadly, after over 2 years, 27 FOIA requests, and 6 administrative appeals, the Air Force still has not fully complied with the laws.  Lieutenant Berardi decided to file his complaint in this Court.  Rather than produce all of the relevant records, compensate Lieutenant Berardi for damages he suffered, and apologize, Defendant United States Department of the Air Force ("Air Force") has moved this Court to dismiss all claims in this case for mootness and for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). In the alternative, Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56(c) on the ground that there is no material issue of fact and Defendant is entitled to judgment as a matter of law.  In response, Plaintiff Berardi ("Berardi") files this brief opposing Air Force's motions to dismiss and for summary judgment and supporting his cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56(c), because there are no material issues of fact and Plaintiff is entitled to judgment as a matter of law.

The resolution of these competing motions requires the answer to one simple question: Has Air Force complied with the Freedom of Information Act ("FOIA"), as amended, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, and the Air Force's regulations implementing these statutes? Because the answer is no, and because no genuine issues of material fact exist with respect to the allegations in the Complaint, Berardi is entitled to summary judgment as a matter of law, and Defendant's motions should be denied.

## II.    BACKGROUND

### A.    The Parties

At the time of the events giving rise to this action, Berardi was a cadet at the United States Air Force Academy ("Academy") in Colorado Springs, Colorado. He was in his junior, or "second class" year at the Academy. He was an above-average cadet, with a 3.25 GPA, a 2.9 MPA (Military Performance Average) (before a mandatory downgrade for being on probation), and a 2.46 PEA (Physical Education Average) (all based on a 4 point scale). As will be discussed more fully below, he was disenrolled from the Academy on June 25, 2003, and subsequently reinstated at the Academy on June 24, 2004, returning to class on August 4, 2004. Thereafter, he graduated from the Academy *summa cum laude* and was commissioned as a Second Lieutenant.

### B.    FOIA and Its Implementing Regulations

FOIA provides, "…each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). FOIA has been implemented within the Department of Defense pursuant to DOD 5400.7-R (32 C.F.R. § 286.1, et seq.). That regulation requires an agency FOIA response to a requester within 20 working days from the date the request is

received by the office designated to respond (32 C.F.R. § 286.23(e)). The Agency may extend

that period by an additional 10 working days upon notice to the requester (32 C.F.R. §

286.23(f)). Appeals of agency denials of FOIA requests must normally be decided within 20

days of receipt (32 C.F.R. § 286.24(c)(2)). If an appeal cannot be answered in a timely fashion,

the requester must be notified that their administrative remedies have been exhausted. The Air

Force Supplement to the DOD Directive mirrors these time standards (32 C.F.R. § 806.1 *et seq*.),

and governs the Academy's responses to all FOIA requests. As will be pointed out in more

detail below, the Academy has not complied with these requirements (Exhibit 1).

### C.    Privacy Act and Its Implementing Regulations

The Privacy Act requires each federal agency that maintains a system of records on an

individual to maintain those records accurately and to "(3) establish procedures for the

disclosure to an individual upon his request of his record or information pertaining to him…"

and "(4) establish procedures for reviewing a request from an individual concerning the

amendment of any record or information pertaining to the individual, for making a determination

on the request, for an appeal within the agency of an initial adverse agency determination, and

for whatever additional means may be necessary for each individual to be able to exercise fully

his rights under this section;…" (5 U.S.C. § 552a(f)(3) and (4)).

The Privacy Act has been implemented within the Department of Defense pursuant to

DOD 5400.11-R (32 C.F.R. § 310.1, et seq.). That program requires that each military

department:  "Maintain all personal information that is used <u>or may be used</u> to make any

determination about an individual with such accuracy, relevance, timeliness, and completeness as

is reasonably necessary to ensure fairness to the individual in making any such determination."

(32 C.F.R. § 310.11(a) (emphasis added)). Individuals must be allowed access to their records

and provided a means by which to request amendments (32 C.F.R. § 310.32). DOD is obligated

to acknowledge receipt of such requests within 10 days and issue a decision within 30 days (32 C.F.R. § 310.32(g)(1) and (2)).  The Air Force Privacy Act regulations mirror these requirements, 32 C.F.R. § 806b, et seq.  Recently, Executive Order 13392, *Improving Agency Disclosure of Information,* dated December 14, 2005, was issued to underscore the importance of timely FOIA processing (Exhibit 2).

     **D.**     **Air Force Academy Disenrollment Regulations**

An individual is nominated to become a cadet at the Academy from a variety of sources, 10 U.S.C. § 9342, and then appointed to that status by the President, 10 U.S.C. § 9341a.  When an individual is appointed to the Academy, he or she must sign an agreement to serve as an officer in the Regular Air Force for a minimum period of five years, 10 U.S.C. § 9348, 32 C.F.R. § 901.0, *et seq.*  While in cadet status, a cadet is considered to be a member of the Armed Forces subject to the Uniform Code of Military Justice, 10 U.S.C. § 802 (a)(2), and is entitled to receive pay and allowances, 37 U.S.C. § 422(a).

Air Force Instruction (AFI) 36-2020, <u>Disenrollment of United States Air Force Academy Cadets</u> and United States Air Force Academy Instruction (USAFAI) 36-164, <u>Review and Disposition of Deficient Cadets,</u> contain the processes and procedures for separating cadets based upon performance deficiencies, medical disqualification or other reasons (Exhibits 3 and 4).  These processes include the right to review the evidence supporting disenrollment, to present evidence at a hearing, and to an administrative review of the hearing results by the Commandant of Cadets and the Academy Superintendent (Exhibit 4, paragraph 3.5 and Exhibit 3, paragraph 3).  For all junior (second class) and senior (first class) cadets, the final disenrollment decision is made by the Secretary of the Air Force unless the cadet voluntarily resigns (Exhibit 3, paragraph 8.1).  In the event that the Secretary of the Air Force disenrolls a junior or senior cadet, that cadet

will be required to serve 2 or 3 years, respectively, as an enlisted member on active duty or repay the Air Force for the cost of his or her education (*Id.*)

### E.    Berardi's Disenrollment and Reinstatement

On January 3, 2003, Berardi was notified of the Academy's intent to disenroll him due to a current deficient Military Performance Average from his commanding officer, failing conduct and aptitude probation and excess demerits. A Military Review Committee ("MRC") was convened and recommended his disenrollment to the Academy Commandant and Superintendent on January 9, 2003. On March 14, 2003, the Superintendent agreed with the MRC recommendation to disenroll Berardi. Following an investigation by the Academy Inspector General and a recommendation that the case be reconsidered, the Academy Superintendent again recommended that Berardi be disenrolled on June 3, 2003. On June 25, 2003, the Secretary of the Air Force approved the recommendation and ordered Berardi to serve two years of active duty as an enlisted member of the United States Air Force.

In August 2003, Berardi applied to the Air Force Board for Correction of Military Records ("AFBCMR" or "Board") pursuant to 10 U.S.C. § 1552 for reinstatement to the Academy. Finding the "existence of error or injustice," the AFBCMR reinstated Berardi to cadet status at the Academy on June 24, 2004 (Exhibit 5). Berardi subsequently returned to the Academy on August 4, 2004, graduated with honors and was commissioned a Second Lieutenant in the United States Air Force on December 21, 2005.

### F.    Berardi's FOIA and Privacy Act Requests

As a result of his disenrollment from the Academy, Berardi submitted numerous FOIA requests to obtain information about his case. From October 3, 2003 through February 13, 2006, Berardi filed 6 FOIA appeals based upon 12 FOIA requests (Exhibit 1). Of the 6 appeals, 5 were answered late by both the Academy and the appellate authority, and the sixth has not been

answered at all (Exhibit 1).  In two cases, the FOIA appeals were "lost" by the Academy for over a year (Exhibit 1).

Berardi also submitted numerous Privacy Act requests to correct inaccurate records relied upon by the Academy and the Air Force to support his disenrollment.  Beginning on January 6, 2003, Berardi submitted numerous requests to correct his records, including approximately 20 errors in his MRC package, which were repeated in the legal and higher headquarters reviews of his case (Christopher Berardi Declaration at paragraph 4, filed contemporaneously with this brief).  When Berardi requested that the errors be corrected, he was told that, "There is no way to change anything that is currently in your package."  (Christopher Berardi Declaration at Attachment 2).  His father was also told that there was no way that Berardi could appeal the disenrollment decision of the Superintendent, implying that corrections to his package could not be made (Anthony Berardi Declaration at paragraph 1, filed contemporaneously with this brief).  Although Berardi's immediate superior officer tried to correct some mistakes in a police report contained in the case file, those mistakes were repeated in subsequent reviews of Berardi's case (Christopher Berardi Declaration, Attachments 2 and 7).

III.    **DISCUSSION**

A.    **Standard of Law**

Defendant has moved for dismissal of the Complaint herein under Fed. R. Civ. P. 12(b)(1), based upon a lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  In the case of the former, the Air Force argues that the case is moot because all documents requested by Berardi have been produced.  In the case of the latter, the Air Force argues that Berardi has received all of the relief to which he is entitled and there is nothing left for this Court to do but dismiss the case.

When considering a Motion to Dismiss under Rule 12(b)(1), "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds*, Harlow v. Fitzgerald, 416 U.S. 232 (1982); Swierkiewicz v. Sorema, 534 U.S. 506, 515 (2002). In fact, "…the Court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Thompson v. Capitol Police Board, 120 F.Supp.2d 78, 81 (D.D.C. 2000) (citations omitted). Similarly, in a Motion to Dismiss under Rule 12(b)(6), "…a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 41-46 (1957); *see*, EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997).

Defendant has also moved for Summary Judgment under Fed. R. Civ. P. 56(c). However, summary judgment is only appropriate where, "…the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of establishing that there is no genuine issue of material fact by showing that there is insufficient evidence to sustain the elements of the non-moving party's case. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party does not meet this initial burden, then "'summary judgment must be denied'" and the non-moving party has no obligation to produce any opposing evidence. Adickes, 398 U.S. at 159-60. If, and only if, the moving party satisfies its burden, then the non-moving party must produce evidence that is

sufficient for a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In this regard, "…the inferences to be drawn from the underlying facts contained in such materials [affidavits, depositions and exhibits] must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654 (1962). Further, "If the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its significance, summary judgment is improper." Greenberg v. Food and Drug Administration, 803 F.2d 1213, 1216 (D.C. Cir. 1986) (citations omitted).

It is also well established that summary judgment is to be used sparingly and with great caution: "…[B]ecause summary judgment is a drastic remedy, courts should grant it with caution so that no person will be deprived of his or her day in court to prove a disputed material factual issue. As the Supreme Court has reminded us, the nonmoving party is to be given the benefit of the doubt." Id. "A summary judgment is an extreme remedy, and, under the rule, should be awarded only when the truth is quite clear." Weiss v. Kay Jewelry Stores, Inc., 470 F.2d 1259, 1262 (D.C. Cir. 1972); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2725 at 102 (1983).

### B. Defendant's FOIA Motions

#### 1. Plaintiff's FOIA Claims Should Not Be Dismissed As Moot Because He Has Not Received All Requested Records.

Under FOIA, a requester is entitled to relief from the U.S. District Court in which suit is filed if agency records have been improperly withheld. 5 U.S.C. § 552(a)(4)(B). That relief includes the release of all documents not protected by an appropriate exemption. Id. In this case, there is substantial doubt that all requested information has been produced.

First, the FOIA release by the Secretary of the Air Force General Counsel's Office dated February 19, 2006 contains an e-mail that states, "The blue pocket folder contains what was removed.  We'll file his disenrollment away in the double secret file drawer." (Exhibit 6).  In spite of the clear indication of the existence of this file, it was not produced in the numerous documents delivered to Berardi by the Academy on January 20, 2006, February 10, 2006, and February 19, 2006, following the filing of Berardi's complaint.  While Defendant may try to claim that these documents are simply duplicates of documents already released, Berardi has no way of knowing this.  Without a list of documents withheld, Berardi cannot challenge the Academy's FOIA compliance with respect to these documents.  At a minimum, the absence of this file indicates clearly that not all documents have been produced by Defendant, at least the ones in the "double secret file drawer".

Second, the Berardi FOIA request dated April 12, 2004 (Exhibit 1 and Berardi Complaint (Doc #1), paragraph 38) has never been acknowledged or answered by the Air Force.  It was not referenced in any of the Air Force response letters and Berardi has no way of knowing whether the information requested was included in the responses.

Third, paragraph seven of the Defendant's Maraian Declaration filed by the Air Force (Doc # 13) states that 768 pages of information were "from the USAFA legal office".  This statement is at odds with previous Academy FOIA responses claiming that the legal office had no such documentation (Exhibits 7 and 8), and is a large amount of information to discover in an additional search, assuming that all previous searches were thoroughly conducted.  Since the nature and scope of Berardi's FOIA requests have not changed, the Academy should be required to disclose where these documents have come from so that this court can determine why this search should be considered reasonable.  The Academy should also be required to identify with

more particularity which previous requests this information responds to, so that Berardi may determine if his requests have been answered.

Fourth, on January 25, 2005, Berardi sent a follow-up FOIA request to the Academy requesting a copy of a disciplinary record that had been forwarded to the Academy legal office on February 25, 2003, and had been mentioned in a prior FOIA release (Exhibit 9). However, the document produced by the Academy in response to the January 25, 2005 FOIA request was actually dated March 11, 2003, so it could not have been the document requested (Exhibit 10). Since this document was not released in the 768 pages of material produced by the Academy legal office discussed above, it would appear that the document release is incomplete. The Academy has ignored additional requests for this document, up to and including its latest document release on February 19, 2006.

Fifth, the Pellet Declaration filed by Air Force (Doc # 13) mischaracterizes Berardi's May 25, 2004 FOIA appeal as a dispute over the adequacy of the search for records in the possession of the Academy Superintendent. However, Berardi's May 25, 2004 appeal actually asked the Secretary of the Air Force for documentation from the Academy Superintendent's office, including routing slips and replies, staff summary sheets, and any additional police reports (Exhibit 1). This was because the Academy had identified routing slips and staff summary sheets as being withheld in its response to Berardi's FOIA request (Exhibit 1). Since the Superintendent's office had previously provided a "tracking table" that mentioned other highly relevant documents to Berardi's case, and had withheld documents it described as summaries, the basis for the appeal was clear. Although the Kellenbence Declaration filed by the Air Force (Doc # 13) attempts to gloss over this obvious discrepancy, it cannot disclaim what is obvious

from its own records: there are (or were) relevant documents in the Superintendent's office that have not been released.

Finally, the Academy's poor compliance history discussed above should at least give this Court pause before accepting the assertions in Defendant's declarations at face value. At every possible juncture, the Academy has delayed, misled, misstated, and deflected (Exhibit 1) in order to frustrate Berardi's legitimate FOIA and Privacy Act interests. As will be discussed below, Air Force hopes to avoid the consequences of its actions by an eleventh hour "data dump" and claims that Berardi has now received "everything" to which he is entitled. Air Force hopes that its noncompliance will be lost in the confusion of this last minute document release. As pointed out above, however, that confusion cannot obscure several examples of noncompliant behavior under FOIA that are ripe for this Court's action.

Since Air Force has not produced all of the documents in its possession responsive to Berardi's requests, this case may not be dismissed as moot. In this regard, summary judgment is inappropriate where additional documents are referenced in released documents under circumstances where their absence is unexplained. Meyer v. Fed. Bureau of Prisons, 940 F.Supp. 9, 14 (D.D.C. 1996); Katzman v. Freeh, 926 F.Supp 316, 320 (E.D.N.Y. 1996). In addition, where information, such as the "double secret file drawer" document, is or may be subject to some form of protective order, FOIA litigation to obtain such information free of a protective order is appropriate and not subject to a motion to dismiss. Anderson v. HHS, 907 F.2d 936, 941 (10th Cir. 1990). Therefore, Berardi's FOIA request is not moot and his claims should be allowed to proceed. It follows that Berardi's Administrative Procedure Act, 5 U.S.C. § 706(1), cause of action should likewise not be dismissed.

2.    **Berardi's Complaint Is Not Moot Because Air Force's Conduct Is Capable Of Repetition Yet Evading Review**

As previously discussed, a FOIA plaintiff's complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(1) as moot where all documents found to be responsive to the underlying FOIA request have been released in full to the requester, and the search has been otherwise adequate. Parenti v. IRS, 70 Fed. Appx. 470 (9th Cir. 2003).  A major exception to the general rule exists, however, where the agency conduct evidences a pattern of behavior that can be repeated yet evades review because the agency takes belated compliance action that frustrates judicial review. This principle was recognized in this Circuit in the case of Payne Enterprises v. United States, 837 F.2d 486 (D.C. Cir. 1988) which held that when records are routinely withheld at the initial processing level and consistently released at the appellate level resulting in continuing injury to the plaintiff, then a challenge to the practice is ripe for adjudication and not moot.  *Id.* at 488-493; *accord*, Walsh v. U.S. Department of VA, 400 F.3d 535 (7th Cir. 2005) and Krislov v. Rednous, 226 F.3d 851 (7th Cir. 2000).  A corollary to this rule is that, "…even though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future. (emphasis in original)" Payne, *supra*. at 491 citing Better Gov't Ass'n v. Department of State, 780 F.2d 86, 90-92 (D.C. Cir. 1986).

In this case, the Academy's conduct has evidenced an impermissible policy or practice of delaying its responses to FOIA appeals, denying the existence of relevant documents and providing misinformation, with the intent of frustrating Berardi's rights under FOIA.  As previously indicated, not one of Berardi's appeals have been answered on time.  This policy had the effect of delaying Berardi's appeal to the AFBCMR (Exhibit 11) and frustrating a subsequent complaint to the Air Force Academy Inspector General.

For example, his first appeal was submitted on October 3, 2003 and was based on the

Academy redactions to legal office memoranda and opinions on August 12, 2003, September 4,

2003, and September 17, 2003. (Exhibit 1)  Berardi's efforts to follow up on the status of his

appeal were met with insolence:  "Yep, I got it [FOIA follow up request] and it's been sent to the

proper office."  (Exhibit 12)  The first appeal was not answered until July 20, 2005, and stated

that no responsive or material records were located.  Finally, on January 20, 2006, approximately

two and a half years after his initial requests, Berardi received over 768 "nonexistent" documents

from the legal office.  (Exhibits 7 and 8)

His second appeal was submitted on October 23, 2003, based on a response to his

September 29, 2003 request for any information within the legal office.  That response, from

Colonel Wayne Kellenbence, stated that all information had previously been provided.  The

second appeal was not answered until July 20, 2005, and stated no responsive or additional

material records were located.  On January 20, 2006, which was 2 years and 4 months after the

original request, Berardi received over 768 documents from the legal office (Exhibit 1).

Berardi's third FOIA appeal was submitted on May 25, 2004.  The Academy replied by

stating that it had found only one responsive document and that its earlier denial of Berardi's

request reflecting that certain documents had been withheld was in error.  On July 22, 2005,

Berardi received a notice from the Air Force appellate authority stating that the appeal had been

received.  This was one year and two months after the appeal was received by the Academy

FOIA office.  On February 10, 2006, Berardi was notified that his appeal had been denied.  This

was over one year and 8 months after the initial appeal was submitted (Exhibit 1).

Berardi's fourth FOIA appeal was submitted on May 26, 2004.  The Academy responded

on August 16, 2004, citing the wrong request and mischaracterizing the scope of the appeal.  The

Academy response then purported to deny the appeal, but informed Berardi that he could appeal the denial of his appeal by the Academy. On July 22, 2005, Berardi received a notice from the Air Force appellate authority stating that the appeal had been received. This was one year and two months after the appeal was received by the Academy FOIA office. In a letter dated February 10, 2006, the Air Force appellate authority responded to Berardi's May 26, 2004 appeal and produced two documents. Since the Academy appeal denial only addressed a portion of Berardi's appeal, the Air Force appellate authority response was incomplete as well. This was over one year and 8 months after the appeal was submitted (Exhibit 1).

Berardi's fifth appeal was submitted on July 22, 2005 in reference to a FOIA request submitted on January 25, 2005. The Academy reply was dated June 13, 2005, and had redacted certain information from the documents provided which was the subject of the appeal. The appeal was received by the Air Force appellate authority on August 22, 2005, and answered on February 10, 2006. This was over a year after the initial request was submitted (Exhibit 1).

Plaintiff submitted his sixth appeal on February 13, 2006 in response to a reply from the Academy dated January 20, 2006 (Exhibit 1). Although a response to this appeal should have been received by March 13, 2006, none has been forthcoming. Neither the Academy nor the Air Force appellate authority have provided any acknowledgement or notice of receipt.

The pattern of delay outlined above provides clear evidence of a policy or practice of noncompliance with FOIA requirements that is ongoing and fits squarely within the test enunciated in Payne, *supra*, regarding agency conduct that is capable of repetition yet evading review. However, it is not the only evidence in this case of the Academy conduct designed to frustrate Plaintiff's FOIA rights. A second example involves the Academy's consistent denial of the existence of documents that it knew it had in its possession. For example, both the Academy

and the Air Force appellate authority consistently denied the existence of any legal office documents other than three staff summary sheets (Exhibits 7 and 8).  However, once Berardi initiated suit, the Academy discovered 768 documents that had originated within the legal office, including several legal reviews.  Many of these documents were discovered on the legal office hard drives even though the Academy had previously reported that these locations had been searched (Exhibit 1).

The Academy also denied the existence of a corrected police report involving Berardi that substantially mitigated his involvement in an alleged incident leading to his disenrollment (Christopher Berardi Declaration at Attachment 12).  The Academy had denied the existence of this report to its own Inspector General and to the AFBCMR until its inadvertent disclosure on March 22, 2004 in a tracking table that originated in the Superintendent's office (Linda Berardi Declaration at paragraph 3, filed contemporaneously with this brief).  This is the same tracking table that is the subject of the May 25, 2004 FOIA appeal and denial Exhibit 1).  Subsequently, on September 13, 2005, Berardi discovered the existence of a third report in addition to the first two.  On January 20, 2006, the Academy claimed that this report had previously been provided to Berardi on May 24, 2004, even though that disclosure only lists two police reports.  Instead of simply providing this report to Berardi the Academy declined to do so, forcing another FOIA request by Berardi (Exhibit 1).

A final example of the Academy's policy or practice designed to frustrate Berardi's FOIA rights involves the Academy's intentional misrepresentation of FOIA and Privacy Act rights during the course of his appeals.  For example, when Berardi was first disenrolled, he was advised that there was no appeal from the decision of the Superintendent even though in reality he could still appeal to the Secretary of the Air Force (Anthony Berardi Declaration,

paragraph 1). Specifically, Lt. Col. Hammes wrote: "FYI – I also talked to Mr. Tony Berardi today about his concerns. Told him that there wasn't an appeal process to the Supt's decision. I don't believe that any of these concerns are valid. Don't know what the inappropriate conversation with Col Slavec was, I stated that the kid was drunk. I asked Major Pleasants to have the cadet chain of command keep an eye on him. Of course, I would expect an IG complaint. Never a dull moment." (*Id*. at Attachment 1) Not only was this information wrong, but it evidenced a disregard for Berardi's rights in the disenrollment process, and contained information the Academy itself knew to be untrue. This had the effect of delaying Berardi's request for information that could have aided in the defense of his case.

In addition, during Berardi's fourth FOIA appeal he was advised by the Academy that his appeal was being denied but that he could appeal to the Air Force appellate authority if he chose to do so (Exhibit 1). Since Berardi had already appealed, the Academy should have forwarded the documents in accordance with its own regulations, 32 C.F.R. § 286.24. Instead, it chose to delay the process, and in fact "lost" the appeal for over a year before sending it to the appropriate authority (Exhibit 1). Finally, in a response from the Academy dated January 20, 2005, Berardi was told that he could not appeal the response since his case was pending litigation (Exhibit 1). This was unusual, since Berardi had not yet exhausted his administrative remedies with respect to the information contained in that response. Because of the Academy's consistent practice of denial, delay, and dissembling, Plaintiff was required to submit numerous FOIA requests, appeals and this lawsuit (Exhibit 1). The AFBCMR threatened to close his case because of the Academy tactics (Exhibit 11), and he has been deprived of important information required to pursue Inspector General complaints and related actions pertinent to his case. The process is

ongoing and for this reason this Court should take jurisdiction of the case and resolve the issues between the parties.

> **3.    Contrary to the Air Force's Other Ground For Dismissal, Berardi Has Not Received All of the Relief to Which He Is Entitled Because A Reasonable And Adequate Search For Responsive Records Has Not Been Conducted.**

Once a FOIA request is submitted, the agency must make a good faith effort to locate the documents requested.  In the event of litigation, the agency must demonstrate that it made, "…a good-faith effort to conduct a search for the requested records, using methods which can be reasonably be expected to produce the information requested." Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Nation Magazine v. United States Custom Serv., 71 F.3d 885 (D.C. Cir. 1995).

As discussed above, Air Force's own document release suggests other information that has not been provided to Berardi.  This fact alone casts doubt on the adequacy of the agency's search.  Under such circumstances, where additional documents are referenced in released documents, it is appropriate to seek further clarification from the agency and withhold summary judgment.  Meyer, *supra*.; Katzman, *supra*.  Even where all records located as responsive are produced, the court is not required to dismiss the case since, "…in a FOIA case, courts always have jurisdiction to determine the adequacy of search." Looney v. Walters-Tucker, 98 F. Supp. 2d 1, 3 (D.D.C. 2000), aff'd per curiam sub nom. Looney v. FDIC, 2 Fed. Appx. 8 (D.C. Cir. 2001).  In this regard, the case of Meeropol v. Meese , 790 F.2d 942 (D.D.C. 1986), cited by Air Force to excuse its failure to produce all documents, is unhelpful.  In that case, the FOIA request involved over 500,000 documents dating back four decades and requiring 65 full time employees and 21 part time employees to process the request.  Under these circumstances, the court found, "…A search is not unreasonable simply because it fails to produce all relevant material; no

search of this size, dating back four decades, will be free from error." *Id*. at 953 (emphasis

added).  At least one other Circuit has rejected the extension of Meese to more limited inquiries,

Church of Scientology v. United States department of Justice, 30 F.3d 224 (1st Cir. 1994).  In

our case, none of the defendant's declarations indicate that the documents in question number

over 1,000.  Therefore, Berardi's FOIA requests were not overwhelming or unusual in nature and

do not qualify for the exception in Meeropol, *supra*.

      While Air Force's declarations attempt to demonstrate that the searches conducted in this

case were made in good faith and were reasonable, they have still not produced all of the

documents that they have in their possession.  In this regard, while Air Force has cited Miller v.

United States Department of State, 779 F.2d 1378, 1383 (8th Cir. 1985) for the proposition that

agency affidavits must be rebutted by a showing of bad faith, in fact, "Summary judgment [in

favor of a FOIA defendant] would be improper if the adequacy of the agency's search were

materially disputed on the record, for such a dispute would indicate that material facts were still

in doubt." *Id*. at 1383 (emphasis added).  As will be discussed below, the Air Force has also

failed to demonstrate that the documents produced have been responsive to Plaintiff's request.

    **4.**    **Defendant's Piecemeal Document Production Renders A Compliance**
             **Determination By the Court Impossible at This Time**

      As previously indicated, Berardi submitted numerous FOIA requests and 6 FOIA

appeals.  According to the Pellet Declaration, there were roughly 556 pages of material released

by his office in response to the July 6, 2005 and October 17, 2005 FOIA requests by Berardi.

(Defendant's Pellet Declaration (Doc # 13) at paragraph 8).  Those pages are identified by

document or by document category, but do not indicate what documents have been redacted

under FOIA Exemption 6.  This failure constitutes a separate FOIA violation, 32 C.F.R. §

286.23(e)(5).

According to the Air Force's Maraian Declaration (Doc # 13), 956 pages of responsive material were identified.  As stated in paragraph 6 of the Air Force Maraian Declaration, "…it ultimately appeared to be a more practical approach to simply evaluate the records to determine whether they were responsive to the October 17, 2005 request rather than attempt to determine whether each had been addressed in one or more of the prior requests."(Defendant's Maraian Declaration (Doc # 13) at paragraph 6).  This latter approach, while fostering administrative efficiency for the Academy, glosses over the fact that the Academy failed to properly respond to Berardi's previous FOIA requests in a timely fashion.  More importantly, however, it is non-responsive to Berardi's request because it fails to identify which documents fall into the various categories of material previously requested by Berardi (32 C.F.R. § 286.23).  This approach makes it virtually impossible to determine whether all previously requested documents have been produced or withheld, and requires the requester to essentially do the Academy's job.

With regard to the specifics of the Maraian Declaration, it is internally inconsistent.  For example, in paragraph 7 he states that the Academy identified 768 pages of USAFA legal office records in the Inspector General's possession that were responsive and 174 pages of other material held by the Inspector General for a total of 942 pages (Defendant's Maraian Declaration (Doc # 13) at paragraph 7).  However, in the very next paragraph, he states that, "Altogether we identified 956 pages of material in the IG's possession that were responsive…".  (Defendant's Maraian Declaration at paragraph 8).  Thus 14 pages of information are unaccounted for between paragraphs 7 and 8 of the declaration.  More importantly, in paragraph 9 of the Maraian Declaration, he states that the Academy's January 20, 2006 document release is incorrect because it stated that 131 pages of information were withheld when in reality 201 pages were

withheld.  It appears that the Academy is not even certain of the accuracy of its own document release.

Essentially, Air Force does not know what records it has, where they came from or how they relate to Berardi's FOIA appeals.  As Air Force has candidly admitted, its records are "in disarray" (Exhibit 13), and it has simply dumped a mass of documents in Plaintiff's lap in the hope that his Complaint will go away.  Unfortunately, Berardi cannot guess where all documents that have been produced come from or what request they are in response to.  This means that he cannot determine with any certainly if his requests have been completely answered.  In this regard, Berardi has never received a response to his FOIA request dated April 12, 2004, and cannot tell what, if any information provided answers that request (Exhibit 1).  In addition, in a July 13, 2004 response to another request, the Secretary of the Air Force Inspector General forwarded Berardi's request to the Academy FOIA Office for a reply (Exhibit 1).  The Academy has never responded, and Berardi has no way of knowing if this recent document release is intended to be responsive.  The Air Force's recent release could not have been responsive because Berardi has never received any appeal packet information and there was nothing in these releases that could have been responsive to the July 13, 2004 referral.

Once FOIA litigation is commenced, the defendant agency bears the burden of proof to demonstrate that its decision to withhold records and/or information is proper under the Act.  In Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), the Court of Appeals for the District of Columbia required the creation of an index of documents withheld and the FOIA exemption and agency justification for withholding the document.  The Vaughn Index must also demonstrate that for each document withheld, any releasable information that can be segregated has been released, Krikorian v. Department of State, 984 F.2d 461, 467 (D.C. Cir. 1993).  While it may be

premature to request a Vaughn Index at this juncture of the proceedings, the need for such an index as the litigation proceeds is clear. For this reason alone, summary judgment should be denied until Defendant has produced a suitable index that allows Berardi an opportunity to evaluate the adequacy of its document release and claimed exemptions.

For all of the preceding reasons, Defendant's motions to dismiss and for summary judgment are at best premature and at worst a transparent attempt to obscure its own poor conduct in this case. When the Air Force motions are reviewed, the "elephant in the room" is the Academy and Air Force noncompliance with federal law and their own regulations. Therefore the Air Force motions should be denied, and Berardi should be allowed his day in court.

## C.    Defendant's Privacy Act Motions

Air Force has also moved to dismiss, or in the alternative for summary judgment, with respect to Berardi's Privacy Act claims. However, just as in the case of his FOIA appeals, Berardi's efforts to pursue his Privacy Act remedies have been equally frustrated, and warrant this Court's retention of jurisdiction over the issues raised in his complaint.

In order to prevail on a damages claim under 5 U.S.C. § 552a(g)(1)(C), Plaintiff must establish that, "(1) he has been aggrieved by an adverse determination, (2) [the agency] failed to maintain records with the degree of accuracy necessary to assure fairness in the determination, (3) the [agency's] reliance on the inaccurate records [proximately caused the adverse determination], and (4) the [agency] acted intentionally or willfully in failing to maintain accurate records. Deters v. United States Parole Commission, 85 F.3d 655, 657 (D.C. Cir. 1996); Hardy v. Lappin, 2005 WL 670753 at *2 (D.D.C. March 21, 2005). Keeping in mind that this issue has been raised by defendant in a Motion for Summary Judgment, the record has more than ample information to allow this case to proceed. In fact, the evidence of record provides

sufficient basis for this Court to grant summary judgment in Plaintiff's favor as will be discussed at the conclusion of this brief.

### 1.    Plaintiff Has Been Aggrieved by an Adverse Air Force Determination

First, it is clear that disenrollment is an adverse determination and that Berardi was aggrieved by the Academy's decision to disenroll him in this case.  A disenrollment action severs all ties between the cadet and the Academy and subjects him or her to potential financial and service commitment obligations (Exhibit 3, paragraph 8.1) .  It also deprives the cadet of an academic degree (*Id.*).  In this case, Berardi was not allowed to complete his course of instruction and was ordered to active duty for a period of two years as an enlisted man (Airman First Class) in the United States Air Force.  When he was reinstated to the Academy on August 4, 2004, his class had already graduated and he was required to complete three additional semesters to complete his course of instruction and receive his commission.  When he graduated with honors on December 21, 2005, he was a year and a half behind his contemporaries in terms of time in grade and time in service for purposes of promotion, pay and all entitlements.  Berardi suffered a loss of pay by virtue of having to serve as an Airman First Class instead of a Second Lieutenant, and also experienced out of pocket costs resulting from his involuntary transfer from cadet status to active duty and back to cadet status (Christopher Berardi Declaration at paragraph 6).  Berardi suffered harm to his reputation and considerable expense in pursuing accurate records in an effort to clear his name (*Id.*).  Thus, Berardi meets the first element of the <u>Deters</u> test.

### 2.    The Air Force Failed to Maintain Accurate Records and Ensure Fairness

Second, the Academy failed to maintain its records with the degree of accuracy necessary to ensure fairness in the determination of his case.  In this regard, 5 U.S.C. § 552a(g)(1)(C)

requires an agency to maintain records concerning an individual that are accurate, relevant, timely and complete in order to assure fairness "…in any determination relating to qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record…" That standard was not met in this case.

For example, the Military Review Committee ("MRC") package upon which Berardi's disenrollment was based is replete with error. The report notes that Berardi received no favorable conduct reports, even though his commanding officer had completed one such report just days before his MRC (Christopher Berardi Declaration at paragraph 3). As will be presented in more detail below, the police report included in the MRC package is replete with error. Although there is an attachment correcting the police report, many references are still made to Berardi's allegedly drunk, disorderly, and belligerent behavior, in spite of comments from the chain of command acknowledging that there was no evidence of intoxication or belligerency (Exhibit 14). The MRC package contains the wrong number of career demerits that have been "penciled in" in the margins, and has a record with adverse academic comments about a Cadet McIntyre (instead of Cadet Berardi) (Christopher Berardi Declaration at paragraph 2) Since Berardi had a 3.25 GPA, it is doubtful that any of his comments would have been negative. The Academy itself acknowledged that numerous forms were missing but never supplied them (Linda Berardi Declaration, Attachment 2). The Academy file also states that Berardi was on athletic probation, which is untrue (Christopher Berardi declaration at paragraph 5).

When asked if he could change any of these errors, Berardi was told, "There is no way to change anything that is currently in your package" which was totally incorrect (Christopher Berardi Declaration, Attachment 2) These errors were pointed out to the Academy Superintendent, the legal office and the Secretary of the Air Force by Berardi's counsel prior to

their disenrollment decisions in Berardi's case (Christopher Berardi Declaration, Attachments 6 and 7), and although the errors were substantiated in an Academy Inspector General report furnished to the Superintendent and the Secretary of the Air Force ( Chrisotpher Berardi's Declaration, Attachments 4, 5 and 7), they were ignored and went uncorrected.  In fact, the Academy legal staff continued to report that Berardi was on athletic probation even though his records clearly reflected otherwise.  In fact, the Academy conceded error in its submissions to the AFBCMR.  As noted by the Board, the Academy admitted, "The applicant's MRC package did contain errors as he alleges.  However, while regrettable, they were merely mistakes and not an effort to ensure his disenrollment."  (Exhibit 5, Adversarial Reporting, p.5).

One of the clearest cases of error involved the Security Police Report of Investigation that was part of Berardi's disenrollment package.  That report, which pertained to one of the major incidents upon which his disenrollment was based (underage drinking) remained uncorrected even though Berardi's chain of command had the report since November 8, 2003, and recognized its importance to the case (Christopher Berardi Declaration, Attachments 14 and 15).  Instead, Berardi was told that a corrected copy of the report did not exist until just before the AFBCMR decision in his case (Linda Berardi Declaration at paragraph 3).  The Academy also told the AFBCMR that the report did not exist until it was provided to the AFBCMR by the Academy IG (*Id.*).  When advised of these numerous errors, the Academy Superintendent responded that they were simply administrative errors and that they did not change his decision in the case (Exhibit 15).

These errors were repeated in the subsequent legal reviews of Berardi's case, as the case file was forwarded for review (Christopher Berardi Declaration at paragraphs 4 and 5).  This repetition had the effect of reinforcing the errors in the minds of all reviewers, rather than

correcting obvious mistakes.  One wonders whether anyone read the report or if they just relied on the legal reviews.  Had they read the report, the errors would have become apparent.  The AFBCMR reinstated Berardi to the Academy on June 24, 2004, because it recognized the negative impact of the Academy's errors on Berardi's case.

### 3.    Air Force Reliance on Inaccurate Records Caused the Adverse Determination

Third, the Academy's reliance on the errors outlined above proximately caused Berardi's disenrollment from the Academy.  As stated in the decision of the AFBCMR, "Sufficient relevant evidenced has been presented to demonstrate the existence of error or injustice."(Exhibit 5, p. 10)  Again, the Board noted, "Further, we are left with a perception of impropriety on the part of key officials in the applicant's leadership chain."(Exhibit 5, p. 10)  The Board also observed, "In this case, there are too many instances of errant or poorly justified actions in the overall disenrollment process, giving the appearance of injustice."(Exhibit 5, p. 10)  While acknowledging that the Academy Superintendent and Secretary of the Air Force Personnel Council had reviewed the case file prior to disenrollment, the AFBCMR took the unusual step of reversing their decisions, based on the errors in the file.  Thus, the Air Force's own records clearly demonstrate a nexus between the incorrect records and the Plaintiff's disenrollment from the Academy.

### 4.    Air Force's Privacy Act Violations Were Willful and Intentional

Finally, the agency's conduct amounted to a willful and intentional failure to  maintain accurate records in this case.  In this regard, it should be noted that:

> The terms 'intentional' and 'willful' must be interpreted in their
> context to determine their meaning.  Under section 552a(g)(1)(D)
> liability is predicated on an agency's failure to comply with the
> Privacy Act.  Thus, the 'intentional or willful' action requirements
> of 552a(g)(4) refers only to the intentional or willful failure of the
> Agency to abide by the Act, and not to all voluntary actions which

might otherwise inadvertently contravene one of the Act's
strictures.  Section 552a(g)(4) imposes liability only when the
agency acts in violation of the Act in a willful or intentional
manner, either by committing the act without grounds for believing
its to be lawful, or by <u>flagrantly disregarding others' rights under
the Act</u>.  <u>Albright v. U.S.</u>, 732 F.2d 181, 189 (D.C. Cir. 1984)
(emphasis added).

In addition, this Circuit has recognized that a plain failure to comply with established

policy under the Privacy Act might constitute willful and intentional conduct sufficient to trigger

an award of damages:  "A plain failure to comply with established policy might constitute

'willful' or 'intentional' conduct actionable under §552a(g)(4)."  <u>White v. Office of Personnel</u>

<u>Management</u>, 840 F.2d 85, 87 (D.C. Cir. 1988).  In some cases, reckless disregard for Privacy

Act requirements has been found to meet the willful/intentional standard:  "We conclude

evidence of conduct which would meet a greater than gross negligence standard, focusing on

evidence of reckless behavior and/or knowing violations of the Act on the part of the accused,

must be advanced by a claimant at the summary judgment stage in order to maintain a civil

action for damages under the Privacy Act."  <u>Moskiewicz v. U.S. Dept. of Agriculture</u>, 791 F.2d

561, 564 (7th Cir. 1986).

In this case, the Academy recognized the importance of providing correct information.

One e-mail states:  "I think it's important to set the record straight since Cadet Berardi may face

disenrollment from the Academy." (Christopher Berardi Declaration at Attachment 14)  Another

e-mail observes:  "Our goal is to make sure that Berardi isn't unjustly being confused with any

other cadets that were being detained that evening." (<i>Id</i>.)  In spite of this acknowledged

responsibility, the Academy proceeded to leave the inaccurate police report and other errors in

the file (Exhibit 15), even though they were clearly on notice that the errors existed, and even

though they were in possession of the second police report.  As previously indicated, these errors

were perpetuated up the chain of command and never rectified until action by the AFBCMR

corrected the error and injustice two years later. The Academy Superintendent and Secretary of the Air Force were both on notice that the file contained errors and the Air Force admitted as much when it provided its review to the AFBCMR (Exhibit 5). These were more than simple errors or mistakes, and Air Force provides no explanation for why they were never corrected. Thus, the Academy and Air Force conduct met the gross negligence standard implicit in the willful/intentional standard of the Privacy Act by flagrantly disregarding Berardi's rights and failing to correct his record.

### D.    Plaintiff Is Entitled to Summary Judgment As a Matter of Law

Based upon Berardi's Statement of Material Facts, the preceding arguments and precedent, Plaintiff is entitled to summary judgment as a matter of law. Air Force has not provided the documents requested in Berardi's FOIA requests and appeals, and has engaged in a policy and practice of denial in order to frustrate his legitimate rights, Payne, *supra* at 491. Air Force did not produce the documents requested until suit had been filed and thus Berardi has "substantially prevailed" in his suit justifying the award of attorney fees and costs, GMRI, Inc. v. EEOC, 149 F.3d 449, 451 (6th Cir. 1998); Miller, *supra*. at 1389 (8th Cir. 1985); Aviation Data Serv. v. FAA, 687 F.2d 1319, 1321 (10th Cir. 1982); Church of Scientology of CA v. Harris, 653 F.2d 584, 587 (D.C. Cir. 1981); *see*, E.M. Wheeler v. IRA, 37 F.Supp.2d 407, 411-412 (W.D. Pa. 1998) (collecting cases for proposition that plaintiff can establish that he/she substantially prevailed and is entitled to costs and attorney fees by demonstrating that filing suit was necessary to obtain information sought and that it caused defendant to provide information). Finally, Plaintiff has met the four part Deters test justifying summary judgment on his Privacy Act claim seeking actual damages plus costs and attorney fees.

Air Force's suggestion that Plaintiff's claim for damages should be denied because it is a claim for back wages cognizable in the Court of Federal Claims is inapposite. Plaintiff is not

making a back wage or entitlements claim since he could not have been paid as a Second

Lieutenant until he graduated from the Academy, 37 U.S.C. § 204(f).  What he is saying is that

the proper measure of damages for his lost time and opportunity is the difference between what

he could have earned as a Second Lieutenant and what he actually did earn as an Airman First

Class.  Insofar as Air Force argues that the FOIA claim for attorneys fees and costs should be

sent to the Court of Claims, that issue has been decided in this Circuit, as a FOIA claim is not

within the subject matter jurisdiction of the Court of Federal  Claims.  Clark v. United States,

116 Fed. Appx. 278 (Fed. Cir. Oct. 26, 2004).

Defendant has also suggested that Berardi is not entitled to any damages in this case

because he was not entitled to a commission as a matter of law.  Putting aside for the moment the

fact that virtually all Academy cadets who receive a diploma also receive a commission, and that

the Superintendent has been delegated the statutory authority to award academic degrees

(5 U.S.C. § 9353(a)), the ability to collect damages under the Privacy Act is related not only to

the denial of a benefit but the denial of an opportunity to receive a benefit.  (5 U.S.C.

§ 552a(g)(1)(C).)  In this case, Berardi was deprived of an opportunity to graduate and receive a

commission.  Summary judgment is therefore appropriate.

Finally, Plaintiff would respectfully remind the Court that should it find that the

Academy has acted arbitrarily and capriciously under the facts of this case, a special counsel

should be appointed under 5 U.S.C. §552(a)(4)(F).

## IV.    CONCLUSION

Wherefore, Plaintiff respectfully requests that the Court deny Defendant's motions and

grant Plaintiff's Motion for Summary Judgment.

Respectfully submitted this 5th day of April, 2006.


HOLLAND & HART LLP



By: _____/s/_____

       William G. Myers III, for the firm
       D.C. Bar #408573

       HOLLAND & HART LLP
       Suite 1400, U. S. Bank Plaza
       101 South Capitol Boulevard
       Post Office Box 2527
       Boise, Idaho  83701
       Telephone:   (208) 342-5000
       Facsimile:    (208) 343-8869
       E-mail:  wmyers@hollandhart.com

       Attorneys for Plaintiff Christopher Berardi

# CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Karen L. Melnik
Assistant United States Attorney
555 4th Street, N.,W., Room E-4112
Washington, DC  20530
karen.melnik@usdoj.gov


          /s/ William G. Myers III
           for Holland & Hart LLP


3537498_2.DOC