**ATTACHMENT 1**

To:         Lt Gen Dallager
From:       Anthony and Linda Berardi
Date:       March 18, 2003
Subject:    C2C Christopher Berardi – Decision to disenroll
Via:        FAX 719-333-4146

This afternoon I spoke with Lt. Col. Garvin in regard to requesting a meeting with you to discuss concerns we have surrounding Christopher's disenrollment. Lt. Col. Garvin requested that we put these concerns in writing in a checklist format.

We have a list of the following demerits and merits that Christopher received:

- 11-13-2000    5 merits
- 11-23-2000    0 demerits    late arrival back to Academy – weather related
- 12-12-2000    17 demerits    out after taps – was in another cadets room at the time of taps - no   significant time lapse
- 12-26-2000    5 demerits    room not in order – roommate left room in improper order after Chris left for Christmas break
- 3-5-2001    0 demerits    absent for M5 – squadron not notified
- 3-20-2001    11 demerits    slept thru class
- 4-10-2001    11 demerits    slept thru class
- 7-15-2001    10 demerits    late CST – parents booked ticket back on wrong date and could not change flight
- 9-20-2001    5 demerits    parking ticket
- 9-27-2001    10 demerits    failed room inspection
- 10-11-2001    10 demerits    missed class
- 3-18-2002    15 demerits    missed class
- 4-16-2002    5 demerits    missed class
- **5-2-2002    40 demerits    lost ID**
- **5-24-2002    21 demerits    tolerating underage drinking**
- 8-26-2002    40 merits    career day
- **10-19-2002    100 demerits    unauthorized possession or consumption**
- **12-10-2002    25 demerits    failure to perform duty**

We raise concerns regarding 4 of the last 5 incidents (ones bolded) and have placed them in the following checklist format:

1. On May 2, Chris received 40 demerits for losing his ID card. His card was found within a week and had not been lost, but misplaced within his room. There seems to be no basis for the number of demerits he received after an inquiry made by his new AOC, Major Pleasants. Please see attached memorandum dated 05 Feb 03.

2. On May 21, Chris accompanied another cadet on an outing to Denver, were Chris was the designated driver. During this outing, the other cadet, the son of a two-star general, consumed alcohol. Chris verbally discouraged him from drinking, but was ignored by the other cadet. The cadet continued his irresponsible actions and then injured himself requiring a visit to the emergency room that resulted in 13 sutures. It is our opinion that

Chris acted responsibly in assuring the safety and care of the other cadet, however, he was told at his hearing that he should have abandoned the cadet in Denver, returned to the Academy, and reported the incident the following morning. Despite the 21-demerit hit he took, he felt that he acted properly in his decision to make the care of the other cadet his number one priority. During this time, Chris did not consume any alcohol. Perhaps Chris should have left his fellow cadet and kept himself the number one priority, but what if this cadet had fatally injured himself in the process? Would Chris have then been held accountable and been punished for leaving him in this condition?

3.  The combination of the two aforementioned incidents put Chris on probation. During this probation period, Chris was required to write in a journal, which we have reviewed. The format of this journal was to include his thoughts and growth relating to the incidents that lead to his probation. Almost every entry in this journal referred to the number of demerits he received for losing his ID and the validity of this hit. In discussions with Major Pleasants concerning this, the Major told him, "I have good news and bad news … the bad news is that I cannot find any reg that states you should have received such a large hit… the good news is that it won't happen to anyone else." In the demerits that were listed above, we have realized that demerits can be zeroed out if they are found to be invalid. We question why the demerits were never adjusted appropriately after Major Pleasants recognized the error. If this adjustment had been made, Chris would not have been on probation.

4.  While writing these journals, particularly the first three, Chris emailed Major Pleasants asking him if his comments were within the realm of a correct journal and questioned whether he was stepping out of his bounds in expressing his true thoughts. In a meeting following this email, Major Pleasants told Chris that he found nothing wrong with the journal entries and commended him for being honest. We would like you to review the 17 journal entries that Christopher made because he was reprimanded at a later date for them. During a conversation that I had with Major Pleasants, on March 18, I was told that he reviewed and signed all of Chris' entries. When I asked if he would have let Chris know if anything was inappropriate, he confirmed that he would have done this if he felt it was necessary.

5.  On October 19, 2002, at the Air Force vs. Notre Dame football game, Chris was caught under the influence of alcohol. This alcohol was received from a tailgate party on the way to the football game. The report cited that he was belligerent and of drinking age. Major Pleasants corrected this inaccurate report to state that Chris was courteous and under age. Chris told us that the SP's commented to him about how respectful he was. On this evening with his AOC, squadron cadets, and chain of command present, he was told by Col. Slavec that he would, "be gone in ten days" and that he was, "disgusting". This biased the opinions of others before the procedure even started and was noted on record at his SCRB with a quote saying, "Col. Slavec is just going to kick him out. Why don't we vote to disenroll?" Even though the SCRB voted to retain, these comments harbored an unjust and biased command influence on everyone that heard. Hearing these comments may be what prompted Major Pleasants to refer to Chris' situation as, "the writing was on the wall." We feel that the unfair use of Col. Slavec's command biased

all those in Chris' chain of command. Col. Slavec was clearly in the wrong by making comments that were spurious and unnecessary. This is an issue we feel warrants forwarding to the Inspector General's office for review.

6.  On October 21, 2002 and approximately one week later, Chris' father initiated calls to Major Pleasants regarding the above incident. At that time Major Pleasants informed Chris' father that he would recommend to disenroll because he was already on probation when this incident happened. Chris' father discussed the two prior incidents of losing his ID and condonement, which placed him on probation. He let Major Pleasants know that we found it hard to believe that he was in trouble and receiving demerits for helping a fellow cadet and that he had received an unsubstantiated amount of demerits for the lost ID. Because of the circumstances surrounding these two hits he asked him to reconsider his position of disenrollment. Major Pleasants was asked to stay in contact with us and was given a corrected home phone number as well as a work phone number. He said he was very busy and it would be better if we contacted him. Chris' father also called him on January 9, 2003 to gain an understanding of Chris' MRC. Up until today, we have never received a phone call from Major Pleasants. We were not even aware of the December 9 incident before the January 9 phone conversation. Today he called Chris' mother leaving his office phone number as well as a cell phone number on our voice mail and asked that she return the call. When Chris' mother returned the call, he said he wanted to address any concerns that we had. This call was received after Chris' mother made a call requesting a meeting with Lt Gen Dallager and having a conversation with Lt. Garvin. Knowing that we were concerned parents never meant anything until today – we find this a little unsettling.

7.  At Chris' October 29, 2002 soft look MRC, his journal was addressed in what appears to be an inappropriate manner. It is written in Chris' Softlook MRC, "There is a perception in Cadet Berardi's journal that he feels that Major Rose maybe biased against. Also to address concerns, Major Rose was granted time in the beginning of the Softlook to discuss them and to alleviate any concerns from the cadet point of view." Major Rose took approximately 30 minutes in the beginning of the MRC to express his own concerns about Chris' journal content and did so in a raised tone of voice. Not once during this time did Major Pleasants state that he had reviewed, approved, and commended Chris for these entries. At no point during this part of the MRC were Chris' concerns alleviated, which was part of the intent nor were they addressed in a civil manner, but rather served to bias the opinions of others present. According to Chris' mother's conversation with Major Pleasants, on March 18, 2003, Chris had followed the correct format for the journal entries. Again, I repeat that Major Pleasants told Chris' mother that he would have addressed any inappropriate context with Chris. Along with the negative that was heard regarding this issue, someone should have stated that Chris was commended for being honest and using the journal entries to discuss the issues that were bothering him. For some reason that is not clear to Christopher or us, Major Rose was supposed to be the person in charge of the soft look MRC, but was not. If Lt Col Hammes was put in charge based on Chris opinion of Major Rose being biased against him, then why was the opportunity given for him to address Chris. The contents and manner of his discussion surely had some bearing on the decision that was made. The portion of time that Major

Rose used was at least half or more of the entire review time. It appears that a large portion of time was spent on Major Rose addressing a possible single journal entry that was required of Chris and approved by his AOC. There were 17 other journal entries written by this point, but none of them were discussed.

8. On, December 10, Chris received 25 demerits for failure to perform duties at which time he improperly signed out to go to Arnold Hall and was dressed in civilian clothing. This is referenced in the attached memorandum dated 14 Jan 03. As you can see by this memorandum, the sexual assault of his sister was the root cause for this action. As you can imagine this impacts the family as a whole and specifics of this event make it more horrific for our entire family. On day of the crime against his sister, a fellow employee that was twice her age sexually assaulted her. When she reported this to her supervisor, he in turn sexually assaulted her. Without discussing any more details of this event, it has involved a long and lengthy attorney process with the involvement of the EEOC and many hours of psychiatric counseling. During the Nov 2002 Thanksgiving leave, both of us discussed the current state of the situation with him. This does not excuse Chris' actions, but hopefully it was taken into consideration. One concern that we have about this incident is that during a discussion that Chris had following this event with Major Pleasants, he made reference to Chris about 3 alcohol hits. Chris corrected him on this comment, but we raise the concern that this reference was made to others beyond Chris. We questioned Chris about this comment because prior to this Chris' father had a conversation with Major Pleasants were he indicated that Chris was no longer under age. Despite the fact that this was a non-alcohol related hit, Chris was required to go to alcohol counseling. This seems inconsistent with the charge, but places a mandatory counseling session in his file that does not fit the charge. Please clarify.

9. Although it is not noted with the demerits there is a reference to a form-10 for missing mandatory probation counseling. This appears to be a communication issue as described in the attached memorandum dated 26 Feb 03. When discussing this with Major Pleasants, Chris was told that he should have been informed of the method of monthly counseling accountability prior to any report of failure to perform a duty. If this form 10 remains in Chris' file, it should have been removed or amended based on the AOC's failure to inform Chris of the proper methods. When Chris reported to Major Pleasants that he was going to contest this form 10, he was told by Major Pleasants that is he did report this, he would give him two additional form 10's for missed counseling. This appears to be a threat to keep Chris from contesting the Form 10. How can situations like this happen?

10. It appears that all efforts have been covered to protect the integrity of the Academy and look out for the best interests of the program. Who is responsible for looking out for Chris' best interests and provide guidance or does he stand alone in this entire process?

We regret to have not acted on these issues at an earlier date in the process, however we put our faith in the system and expected unbiased and fair determinations. It seems our faith has been let down by a system we thought was sound and professional. We fully intend to pursue the answers to the issues above with great vigilance and should we not be satisfied

with the validity of the answers provided by the Academy, we will continue to seek answers from other sources.

Lt Garvin explained that reviewing this information could take about a week's time. Upon receiving this memo we would like to tentatively set up a time for the weeks end to meet with you and discuss our concerns. The purpose of this meeting is not to discharge Christopher from any of his wrongdoing or his responsibilities, but to address the process and the manner in which they were handled. It would be our hope that he could remain at the Academy after a thorough review of this information.

Because of the confidential nature of this memo, regarding other family circumstances, we would like to not have this distributed outside your office.

Please try to contact us at the numbers listed below in the following order:
1. Home phone -              585-533-1363
2. Anthony cell phone -      585-781-4318
3. Anthony work phone -      585-781-5697
4. Linda cell phone -        585-414-5141