**ATTACHMENT 3**

Dear Mr. Weller,

I spoke with Colonel Baron, from the General Counsel's office, on March 29, 2004 about some concerns that my husband and I have regarding the difficulty Christopher has had in obtaining the necessary information to complete his BCMR appeal. He suggested that we contact your office so that you are aware of the situation at hand. I also spoke with Mr. Paul Cole, from Congressman Reynolds office, on April 1, 2004 and he encouraged me to inform the BCMR as well.

When Christopher could not get concrete answers from the Academy, he decided to start sending FOIA requests in order to supply you with the information he thought you needed to make a decision. Every single FOIA request that he makes uncovers additional information that was not known previously. The only way he has been able to do this is to offer you the pieces as he receives them. He realized that this was not the best way to present his case; however, he could not find a better way that did not involve long delays. We feel that the additional information that Christopher had to present to you, in a piecemeal format, should have been a part of the IG investigation.

Because of all the additional information that he sent, along with his statements telling you that there is still outstanding information, he received a letter from your office saying that his case was being temporarily closed. He understands the explanation he received in the letter saying that a piecemeal approach hampers your efforts to ensure that all important evidence is available. The letter stated that the case would remain closed until he notified your office in writing that he was ready to proceed.

On March 15, 2004, Christopher wrote back and told Rose Kirkpatrick that information was still outstanding, but to continue anyway because he did not know if he would ever get answers. He knew that by writing this letter he could not submit any additional information to you. My husband and I understand his frustration. It has been a year since he left the Academy and he is still trying to get answers and pertinent documentation. He is also still receiving documentation that should have been uncovered by the IG investigation. We believe that pertinent information was withheld and not given to the IG during the investigative process. However, the Academy's evasiveness indefinitely delays the process for him. He should have had answers months and months ago. The unwillingness to respond to him raises some very large concerns on our part.

Christopher knows that the Board needs all the important evidence, but if the Academy keeps providing information in the manner that they have and the Litigation Department for his FOIA appeal will not respond completely, then his hands are tied.

I would like to outline for you some of the frustrations he has encountered:
1. On July 21, 2003 Christopher sent a FOIA request asking for the transcripts from his Hardlook MRC. On August 12, 2003 he received a reply from this request from Colonel Eddy stating that transcripts do not exist and this is a "no records" response. So on August 16, 2003 he sent another FOIA request, rewording his July 21, 2003 request, asking for notes, instead of transcripts, from the Hardlook MRC. On September 4, 2003 he received a reply from Colonel Eddy with the Recorder's notes attached, but they were redacted and he only received the cadet comment section. Based on these notes, however, Christopher knew that the Recorder had not accurately done his job and he outlined this in another letter to you. He feared that the redacted material contained the same inaccurate information so on October 3, 2003 he sent a FOIA letter to the Academy appealing the decision to redact the material. For some unknown reason, the Academy held this request and the Information Litigation Office in Arlington did not receive the request until November 17, 2003. This allowed a 42 day delay before the process could even begin. According to Air Force Instruction, once the Litigation Office receives a request they have 20 days to reply with a possible 10 day extension. If they need additional time, they are to contact the requester in writing and explain the delay as well as an approximate time the request will be answered. Christopher did not hear anything from this office, so he called at the end of January. All they would tell him was that they were working on it. He still did not hear anything by the end of February, so on March 8, 2004 he wrote a letter to the office. On March 30, 2004 he received a partial response to this appeal from the Academy – 63 days late according to Air Force policy. Combined with the unexplainable delay starting at the Academy, the total elapsed time to receive only a partial answer was 135 business days. After reviewing this information, Christopher's assumption was correct in that the information is not all accurate; however, the reply is still not complete. If the partial reply was received two months late, it could be another two or three months until he receives a complete reply, if he ever does. Additionally he has never received any correspondence whatsoever from the Litigation Office who is in charge of the appeal.

2. Because of Christopher's concern about the job the Recorder had done, he talked to Lt Col Zeh about the Recorder's job. He was told that the Recorder is a neutral person in the Hardlook procedure. His job is to meet with the cadet and explain the proceeding to him. He is also responsible for having all documents in order. The Recorder met with Christopher prior to the Hardlook MRC and explained his roll as the neutral party. In a March 22, 2004 reply to a FOIA request, Brig Gen Weida sent Christopher several e-mails from the TRW. On Thursday, December 12, 2002, prior to the Hardlook proceeding, Major Phillip O'Neal, the Hardlook MRC Recorder, e-mailed Major Pleasants, Christopher's AOC, stating, "Fact that he is on probation warrants a big hit for willful stupidity at the least." Does this sound like a comment that should be made by a neutral party? If Major O'Neal was this biased, then how can we be assured that his bias was not reflected in his process of note taking and recording the final copy of the MRC minutes? These minutes went to the Academy Board and the Superintendent as part of the decision making process and then on to the SECAF office. In order to absolutely prove to you how biased this was, Christopher has requested the policy that governs a recorders position. This will take an additional 20 days if the Academy can even provide this type of documentation.

3. The un-redacted MRC provided Christopher with additional information about the Recorder's process of note taking. Even though the conversation was not self initiated by Christopher there was an extensive discussion surrounding the Haps incident at the MRC. There is not one mention of the particulars of this conversation in the notes at all, and so Chris' side of the story was never presented to the Academy Board, the Superintendent or the SECAF office. This substantiates Christopher's claim that the MRC process can be whatever the Academy wants it to be. The Recorder is responsible for providing the Academy Board and the Superintendent with all pertinent information. When the Recorder has biased the proceeding by the manner in which he reports information and by pre-judging the cadet then there is no due process. The Academy protects itself by excluding the cadets from a large portion of this process and by redacting information claiming that it was pre-decisional. A year later, no one is going to be able to accurately account for the conversations that took place that day. Because of the delay in receiving this response, Christopher has been unable to provide a clear picture of this process to you. It is obvious from the notes that he was asked about the Haps incident, but there is no record at all of Christopher's side of the conversation. Was his conversation surrounding this issue omitted because it was valid? The sad part is that we will never know. This information would have validated Christopher's claim to you that the MRC process is tainted and does not provide cadets with due process, however, it took many FOIA requests to even get this far.

4. On September 29, 2003 Chris sent a FOIA request to the Academy requesting all information regarding his case from the legal office. In a letter dated October 9, 2003 from Colonel Kellenbence, he stated that Chris had received all information from the legal office. Lt Col Wolusky, USAF Deputy Staff Judge Advocate reviewed his case. I spoke to him during this process and he assured us that he was thoroughly reviewing the SECAF appeal packet. He thought it would take a couple of days, but he wanted to make sure that he had reviewed all the documentation. Christopher's FOIA request was looking for that review. It was not in the October 9, 2003 reply from Col Kellenbence. He included this request in his FOIA appeal to the Litigation Department, but has received no response to this request. It has been significantly beyond the AF deadline for meeting this request. In the entire packet of information that Christopher received from the Legal Department, there are only approximately 4 or 5 sentences that make reference to an appeal packet that was hundreds of pages long. If no one can provide proof that this review was done, should Christopher assume that no one in the Legal Department thoroughly reviewed his case? Since they are already so late and have not adhered to their own regulations, Christopher can not even predict when he will receive an answer to this appeal.

5. In the March 22, 2004 reply from Brig Gen Weida there is a documented TASKER stating that the TRW received a second police report for Christopher. This second report was generated because individuals within the TRW knew that the first report was incorrect. The TAKSER is not really clear, but states that the second report was not fully correct either and a third was requested, but the Academy police refused to correct it. Why wasn't the second police report in Christopher's MRC packet and why was it not provided in the FOIA response? If a third was requested why did the Academy police refuse to correct it? Christopher has sent another FOIA request for this information, but that adds another 20 days for a reply.

6. I called the Academy on March 29, 2004 and spoke to Lt Col Zeh about this police report. Lt Col Zeh told me that when he asked about the police report during his investigation, he was told that there were no additional reports. I knew this would be his response because he told us that after his investigation. Now, almost a year later, we find out that there was an additional report. Someone did not tell Lt Col Zeh the truth again, but in order for Chris to prove this to you, he has made an additional FOIA request for the second police report, which will take another 20 days.

7. On February 27, 2004 Christopher sent a request asking for all documentation from the TRW including the offices of Major Pleasants, Lt Col Rose, SSgt. Gullickson, and Lt Col Hammes. The form 7's that they claimed Christopher was supposed to sign out on should have been sent in this reply. The March 22, 2004 reply from Brig Gen Weida did not include these Form 7's. We know that these From 7's do not exist because Christopher was never required to sign out. However, what the Academy calls the final straw was the Haps incident, which included the violation of not properly signing out. If Christopher had not been required to sign out since August of 2002, does it make sense that they would wait until December to issue a form 10? He now needs to specifically send another FOIA request asking for these Form 7's and wait 20 additional days for them to tell him in writing that they do not exist. Then he can prove to you that the normal non-standard format was put aside only to get him in further trouble and ensure disenrollment.
8. He is still waiting for a reply from the Academy in regard to the use of USAFA athletic issued apparel. This is what he was wearing the night of the Haps incident and what they called civilian clothing. If it was issued by the Academy, then it was not civilian clothing. Furthermore, if it was worn throughout the probation period, then why would it take 4 months before a form 10 was written? This was a tactic used to get him in further trouble. He has received no reply from the Academy in regard to his request for information regarding athletic issued apparel. We believe that he has not received a response because it would verify that the charge of wearing civilian clothing was inaccurate. If he receives no response then he cannot support his claim to you.
9. Christopher has made the claim many times over that he was unaware of the restriction to Haps. The initial probation briefing Form 36 only states that Chris is restricted to the cadet duty area. Haps is in the cadet duty area, but there is an additional restriction written in a separate reference. This was never reviewed with Christopher during the initial probation briefing. The April IG report stated, "… AOC briefed the cadet on probation requirements, by reviewing the Form 36. He did not provide the cadet with a copy of the Form 36, thereby; the cadet did not have the information to all of the reference materials that were cited on the form." This statement provides you with the information you need to prove that Chris was unaware of the references and that his AOC did not properly review them. His AOC made him sign the Form 36 without having him read the references even though the form states that they should be read prior to the cadet signing. In the partial appeal information that Christopher received March 30, 2004 there was a statement made by Major Pleasants stating that, "… as a new AOC, he conducted a thorough initial probation counseling with Cadet Berardi in Aug 02." The IG investigation stated that Chris had not read the references, but the AOC claims that he did a thorough initial probation counseling. Part of this counseling required that he have Christopher read the references before the document was signed. This is another discrepancy in information that Christopher could have provided to you, but the response was 63 days late in arriving and he did not get the information to you in time. It is also another example of the AOC writing one thing, but stating another to the IG during the investigation.
10. The MRC information that was provided 63 days later than the indicated response time also contained the information that the final straw in the decision was the Haps incident. Given the above scenario in #'s 6, 7, and 8, the Haps incident was a set up for failure to ensure disenrollment. If Chris had received this information in a timely manner, he could have provided it to you before writing the letter to Rose Kirkpatrick.
11. On January 19, 2004 Christopher sent a FOIA request to the SECAF office asking for all documentation pertaining to his case. He made this request based on information given to him by Lt Col Zeh and the legal office telling him that no one from the SECAF office had contacted them to ask any questions regarding the appeal. If the SECAF office did not investigate the claims he made, then the appeal was not really considered before the Secretary made his decision. He feels that this investigation was not completed because of his accusations of Command Influence and the fact the Col Slavec was currently being investigated by the panel that conducted the investigation into the sexual assault issues at the Academy. He wanted to be able to supply you with this information. Christopher informed them in his letter that he was also requesting all information from the USAFA/IG office and as a courtesy cc'd the USAFA/IG in this letter. This somehow became confusing to the Pentagon FOIA office and they closed his case without a response. We followed through with a phone conversation and they apologized for the confusion, but said that since the case had been closed that Christopher would have to start all over and send another FOIA request. Another additional 20 days.

I cannot count on both hands and feet the number of times we have called the Academy and asked questions, receiving what we believe to be a truthful answer. However, when we e-mail individuals asking the same information and requesting a written response to provide to the BCMR, we get no answer to our e-mails. It is a sad state of affairs when this happens.

I have only outlined a <u>portion</u> of the problems that Christopher has encountered obtaining information. I have not done this with the intention of submitting additional matters, nor am I asking you to consider any of the information; Christopher would not want you to do this based on the fact that he told you he would not send further correspondence. I submit the examples to you only as outlines for our concern surrounding the problems Christopher has had in obtaining important information. My husband and I feel that a waiting game is being played with information. The Academy knows that Christopher has a BCMR appeal in process. If they play this game long enough, then Christopher will be put in the position of having to continue on without all the important facts or you will close the case pending the arrival of this information, in which case they will have won. They knew that your time deadline was approaching and have withheld information that is important to this case, forcing Christopher to make a decision of moving forward with partial information or delaying the process by who knows how long. Without being given any of the above information other than the problem with the FOIA appeal, Colonel Baron suggested that the delay could be because of the BCMR appeal. He felt it was important that I inform you of the problems that Christopher has encountered.

Just to ensure clarification, I want you to know that neither Colonel Baron nor Mr. Cole suggested that I provide you with examples of Christopher's frustrations. In fact, the majority of the facts that I outlined in numbers 1-11 were not even discussed with them in our phone conversations. I felt that I could not clearly demonstrate the process that Christopher has experienced without giving you dates and examples. Colonel Baron's and Mr. Cole's suggestion came from the discussion surrounding the FOIA Appeal and general conversations regarding reply times. They did not tell me to inform you, but merely made the suggestion thinking that you would want to know about the problem Christopher has had in obtaining answers and information. I hesitate using names from phone conversations, but if they had not suggested that we inform you, I would not have written this letter. I have sent both Colonel Baron and Mr. Cole a copy of this letter. If I receive any feedback from them, I will immediately provide it to you.

Christopher is a young man who desires to finish his education at the Air Force Academy and fulfill his Air Force commitment while serving his country. He cannot, however, delay the process of his future by waiting out the approach the Academy has taken. As I stated before, it has been over a year and he needs to continue on with whatever the future holds. My regret is that those involved have not responded in a more truthful, respectful and professional manner.

The largest part of this picture is not just the small details and the verification of information to provide proof, but the fact that the Academy and other Air Force offices have not provided Christopher with all of the information he needs to complete his BCMR appeal. They have broken their own regulations in regard to the handling of Christopher's case and in regard to providing him with information. Individuals withheld information from the IG during the investigation and some individuals did not tell the truth during the investigation. The USAFA IG knows that individuals have been less than honest, but I seriously doubt that he has volunteered this information to the Board. **Christopher does not have all the information he needs to complete his BCMR appeal, but he also does not have the ability to make the Academy tell the truth or provide him with the information.** For this reason he decided to move forward with the BCMR appeal. In the meantime he will continue to try to seek the truth from the Academy.

Thank you for taking the time to review our concerns.

Respectfully,
Linda Berardi

Christopher's information:
Christopher Berardi
SS# 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
Docket # BC-2003-02807

cc:     Colonel Baron
        Paul Cole (Congressman Reynolds Office)
        Charles Lucy