### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

_____
)
**CHRISTOPHER BERARDI,**                    )
                                            )
        **Plaintiff,**                    )
                                            )
      **v.**                                  )    **Civil Action No. 05-2269 (JR)**
                                            )
**UNITED STATES DEPARTMENT**                )
**OF THE AIR FORCE**                        )
                                            )
      **Defendant.**                    )
_____)

### DEFENDANT'S REPLY IN SUPPORT OF MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT; AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

In this case, plaintiff seeks the production of certain records pursuant to the Freedom of Information Act ("FOIA") relating to his disenrollment from the United States Air Force Academy ("Academy"). In addition, plaintiff requests declaratory relief pursuant to the Administrative Procedure Act ("APA") to enjoin the Air Force from withholding the requested records. Finally, plaintiff seeks damages pursuant to the Privacy Act based on the wrongful maintenance of his records, which allegedly resulted in lost pay and other expenses because of his disenrollment.

In Plaintiff's Brief Opposing Defendant's Motions to Dismiss and For Summary Judgment and Supporting Plaintiff's Cross Motion for Summary Judgment ("Plaintiff's Brief"), Plaintiff argues with respect to his FOIA claims that the Defendant's Motions to Dismiss and For Summary Judgment ("Defendant's Motions") should not be granted because (1) he has not received all requested records, see Plaintiff's Brief at 9; (2) "the Academy's conduct has

evidenced an impermissible policy or practice of delaying its responses to FOIA appeals,

denying the existence of relevant documents and providing misinformation, with the intent of

frustrating Berardi's rights under FOIA" see id. at 13; (3) "a reasonable and adequate search for

responsive records has not been conducted," see id. at 18; and (4) the Defendant's "piecemeal

document production renders a compliance determination by the Court impossible at this time,"

see id. at 19.  With respect to Plaintiff's Privacy Act claims, he argues that (1) the disenrollment

is an adverse determination; (2) the Academy failed to maintain accurate records to ensure

fairness; (3) that the Academy's reliance on inaccurate records caused the adverse determination;

and (4) the agency's Privacy Act violations were willful and intentional.  See id. at 23-28.

As the Defendant makes clear below, none of Plaintiff's arguments have merit.

## II.  LEGAL STANDARDS

### A.    <u>Motion to Dismiss.</u>

Defendant moves for dismissal under Rule 12(b)(1), as the Court now lacks jurisdiction

over the subject matter, and Rule 12(b)(6), as the plaintiffs fails to state a claim upon which

relief can be granted.  "In reviewing a motion to dismiss for lack of subject-matter jurisdiction

under Federal Rule of Civil Procedure 12(b)(1), the court must accept the complaint's well-pled

factual allegations as true and draw all reasonable inferences in the plaintiff's favor."  Thompson

v. Capitol Police Board, 120 F. Supp.2d 78, 81 (D.D.C. 2000) (citations omitted); see also

Vanover v. Hantman, 77 F. Supp.2d 91, 98 (D.D.C. 1999); aff'd, 38 Fed. Appx. 4 (D.C. Cir.

2002).  "The court is not required, however, to accept inferences unsupported by the facts

alleged or legal conclusions that are cast as factual allegations."  Rann v. Chao, 154 F. Supp. 2d

61, 64 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C. Cir. 2003), cert. denied, 125 S. Ct. 35 (2004).

In addition, "[on] a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of

persuasion to establish subject-matter jurisdiction by a preponderance of the evidence." Thompson, 120 F. Supp.2d at 81; Vanover, 77 F. Supp.2d at 98.

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in either of two ways.  First, the court may determine the motion based solely on the complaint.  Herbert, 974 F.2d at 197.  Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  See id.; Rann, 154 F. Supp. at 64.

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if the "Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief."  Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (*citing* Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).  The Court must resolve all factual doubts in favor of the Plaintiff and allow the Plaintiff the benefit of all inferences.  *See* EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**B.    Summary Judgment**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986) at 322; Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995); Molerio v. FBI, 749 F.2d 815, 823 (D.C. Cir. 1984).  Where no genuine dispute exists as to any material fact, summary judgment is required.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

3

A genuine issue of material fact is one that could change the outcome of the litigation. Id. at 247. The party moving for summary judgment need not prove the absence of an essential element of the nonmoving party's case. Celotex, at 325. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the (Court) – that there is an absence of evidence to support the non-moving party's case." Id. Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must proffer specific facts showing that a genuine issue exists for trial. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986) at 586. Fed. R. Civ. P. 56 requires the party opposing summary judgment go beyond the pleadings, and by affidavits, depositions, answers to interrogatories or admissions set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Banks v. C & P Tel. Co., 802 F.2d 1416 (D.C. Cir. 1986). To avoid summary judgment, the Plaintiff must state specific facts or present some objective evidence that would enable the court to find an entitlement to relief.

The mere existence of some factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. See Anderson, 477 U.S. at 247-248. Perhaps most significantly, the Court authorized weighing the evidence at the summary judgment stage of litigation, stating that the "purpose of summary judgment is to 'pierce the pleadings, and to assess the proof in order to see whether there is a need for a trial.'" Id. (citation omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. at 249-250 (citations omitted). If the evidence is "merely colorable, or is not significantly probative," or the record taken as a whole could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." Id.; Matsushita, 475 U.S. at 587.

Thus, the non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," (Matsushita at 586), or with "conclusory allegations . . . unsubstantiated assertions, . . . or a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Importantly for this case, "[b]y pointing out the absence of evidence to support the nonmoving party's case, the moving party can demonstrate that there is no genuine issue as to any material fact, therefore entitling it to summary judgment." Shelborne v. Runyon, 1997 WL 527352 at **3, *citing* Celotex, 477 U.S. at 325.

## III.  ARGUMENT

### A.  Plaintiff Has Received All Requested Records, Thus His FOIA Claims Are Moot

Plaintiff argues that there is substantial doubt that all records responsive to his requests have been produced. This argument is without basis in fact. Defendant has demonstrated through the exhibits accompanying Defendant's Motion, that the Air Force has produced all requested records. Moreover, plaintiff has neither produced evidence supporting his claim, nor has he cast doubt on the evidence supporting defendant's motion to dismiss his FOIA claims on mootness grounds.

First, contrary to plaintiff's assertion that the material described in Exhibit 6 to Plaintiff's Brief has not been produced, defendant provided that material in the Academy Vice Superintendent's January 20, 2006, FOIA response, and the February 19, 2006, discretionary release of additional records, both in response to plaintiff's October 17, 2005 FOIA request. As Maj. Maraian explained, all paper records concerning plaintiff maintained by the Office of the Staff Judge Advocate at the Academy had been moved into the physical possession of the Academy Inspector General *before* the October 17, 2006 FOIA request was received. See Exhibit 5 to Defendant's Motions (Maraian Decl.) at ¶ 3. Additional support for Maj. Maraian's

declaration can be found in Sandie Miles's Declaration ("Miles Decl.")(attached hereto as Exhibit A).  As she explains, after her office received the decision of the Air Force Board for Correction of Military Records, she removed the information specified in the decision from Cadet Berardi's file and put it into a blue pocket folder.  See Miles Decl. at ¶ 6.  After circulating the folder for supervisory review, she put the folder and the rest of Cadet Berardi's disenrollment file in a locked file cabinet to be retained for historical purposes.  Id. ¶¶6-7.  Thereafter, in early 2005, Ms Miles' office gave the material it had relating to Cadet Berardi to the Academy Inspector General.  Id. ¶ 8.

Thus, all material relating to Cadet Berardi in the Office of the Staff Judge Advocate, including the parts of his disenrollment file described by Ms. Miles to which Plaintiff's Exhibit 6 refers, was in the physical possession of the Academy Inspector General at the time of plaintiff's October 17, 2005, request.  In response to that request, the Vice Superintendent released part of the records then in the physical possession of the Academy Inspector General.  See Exhibit 1 to Plaintiff's Brief, Attachment F at 27-33.  The February 19, 2006, discretionary release provided plaintiff with the remainder of the records with only birth dates and Social Security Numbers of third parties redacted.  See Exhibit 1 to Plaintiff's Brief, Attachment F at 34-38.  Accordingly, all of the material in the possession of the Inspector General was released to plaintiff, subject to the noted redactions.

Second, Exhibit 1 to plaintiff's brief contains an April 12, 2004, e-mail from plaintiff that begins, "I am writing to make a FOIA request."  See Exhibit 1 to Plaintiff's Brief, Attachment D at 18.  However, although he acknowledged, "I am not disputing whether I have received all the information [sought in an earlier request]," plaintiff asked questions about and provided commentary concerning the response to the earlier request.  The e-mail does not constitute a

proper FOIA request because it does not describe any records being sought.  See 5 U.S.C. §
552(a)(3)(A).  An agency is not required to answer questions posed in a FOIA request or to
create records responsive to the request.  See DiViaio v. Kelly, 571 F.2d 538, 542-3 (10th Cir.
1978) ("[I]t is clear that nothing in the Act requires answers to interrogatories but rather only
disclosure of documentary matters which are not exempt."  (internal quotations omitted)),
Hudgins v. Internal Revenue Service, 620 F.Supp. 19, 21 (D.D.C. 1985) ("FOIA neither requires
an agency to answer questions disguised as a FOIA request or to create documents or opinions in
response to an individual's request for information." (internal citation omitted)).  Although the
April 12, 2004, e-mail certainly invited correspondence from Academy officials that more
completely complied with the requirements of the Department of Defense FOIA regulation and
the Air Force Supplement thereto, it did not require an additional search for records.

　　　Third, the requests to which Plaintiff's Exhibits 7 and 8 responded, involved only a
limited number of records from the Air Force Academy legal office.  Accordingly, it is hardly
surprising that additional documents were subsequently released in response to a request
"renew[ing] all previous FOIA requests . . ." See Exhibit 1 to Plaintiff's Brief, Attachment F,
Item 2 at 26.  Specifically, Exhibit 7 to Plaintiff's Brief was a response to a September 29, 2003,
request, see Exhibit 1 to Plaintiff's Brief, Attachment B, Item 2 at  24, which requested "notes,
memorandums, e-mails, correspondence, etc., generated from [plaintiff's] case within the legal
department" (emphasis added).  The response in Exhibit 7 to Plaintiff's Brief advised plaintiff
that "copies of all documents generated from the USAFA legal office regarding [his]
disenrollment case" had already been provided to him.  The Air Force appellate authority denied
plaintiff's appeal on July 20, 2005.  See Exhibit 1 to Plaintiff's Brief, Attachment B, Item 6 at
32-33.

In addition, Exhibit 8 to Plaintiff's Brief was a partial response to his February 27, 2004, request for "information in the possession of . . . the 34th TRW[1] . . ., pertaining to [plaintiff's] case." See Exhibit 1 to Plaintiff's Brief, Attachment C, Item 2 at 6. The request continued, "I do not need duplicate documents if I have already received them from the Legal Office, it can merely be referenced with a note that I have already received the document." See id. Accordingly, Exhibit 8 to Plaintiff's Brief did not forward copies of legal reviews, but instead advised plaintiff that he has "already received copies of all legal reviews provided to you by the USAFA Judge Advocates Office." See Exhibit 8 to plaintiff's brief.

Plaintiff misrepresents the nature of the document provided in response to his January 25, 2005, request for "a copy of the Form 10 that was received in the JA office by 25 Feb 03." See Exhibit 9 to Plaintiff's Brief. Curiously, he argues that this document could not have been received in the Academy legal office by February 25, 2003, because it is dated March 11, 2003. See Plaintiff's Brief at 8. However, the responsive document that he was provided is unequivocally dated "18 Feb 03." See Exhibit 10 to Plaintiff's Brief at 3. The Report of Conduct shows that it was logged in for initial processing on "18 Feb 03" and received by plaintiff the next day. Id. The date "11 Mar 03" appears only in the "Squadron AOC Initials" block of the Final Processing section of the form. Id.

Plaintiff contends that the defendant has mischaracterized plaintiff's May 25, 2004, FOIA appeal. This appeal related to the Academy's May 12, 2004, response to plaintiff's April 8, 2004, request for "any and all information from the Superintendent's Office pertaining to my case." See Exhibit 1 to Plaintiff's Brief, Attachment C at 8. This request reiterated plaintiff's

---

[1] Training Wing.

February 27, 2004, request for "any and all information in the possession of the Superintendent's Office pertaining to my case."  See Exhibit 1 to Plaintiff's Brief, Attachment C at 6.

In plaintiff's May 25, 2004, FOIA appeal he stated,

[M]y request asked for any and all information from the Superintendent's Office. . . . The only items that Colonel Kellenbence addressed [in his response to the request] were routing slips and Staff Summary Sheets.  Based on conversations with Lt Col Lori Salgado, HQ USAFA/CCE[2] and information sent to the office, I *know* there is more in my file than routing slips and Staff Summary Sheets . . .

See Exhibit 1 to Plaintiff's Brief, Attachment C at 2 (emphasis added).  After elaborating on the basis for his "know[ledge] there is more in [his] file" and arguing why he thought the routing slips and Staff Summary Sheets were releasable, plaintiff concluded, "[i]f the Superintendent's Office does not have a copy of [the records plaintiff believed it had] then the courtesy of a negative reply would be appreciated." Id. at 5.

The Superintendent's Office sent plaintiff a negative reply on August 16, 2004, along with a copy of the previously withheld Staff Summary Sheet.  See Exhibit 1 to Plaintiff's Brief, Attachment C at 2-5.  Thereafter, plaintiff wrote to the Air Force appellate authority advising that he wished to continue his appeal.  In that correspondence he stated,

[W]hat Colonel Kellenbence is telling me [in the August 16, 2004 response] is that there is only one document that exists in the Superintendent's office pertaining to my case.  I know that Lt Col Lori Salgado had a file regarding my case because she referenced it several times in phone conversations with my parents. . . . Furthermore [Academy Superintendent] Lt Gen Dallager was aware that the BCMR was reviewing my case.  So I would find it hard to believe that documents would be destroyed during this process.  I have received a copy of a TASKER sent by Lt Col Lori Salgado in a FOIA request to the TRW, but there is no mention that this exists in the Superintendent's office or if it was withheld.  I also received a copy of a routing slip sent along with the TASKER requesting answers to particular questions.  If there is no information regarding this request, then I will assume that either individuals did not follow a directive from the

---

[2]    "HQ USAFA/CCE" is the "office symbol" of the Academy Superintendent's Executive Officer.

> Superintendent's office, that documentation has been destroyed, or that
> information is being withheld and not listed as such. These things were
> specifically asked for in the FOIA request and readdressed in the appeal,
> however, I received no reply to this matter.

See Exhibit 1 to Plaintiff's Brief, Attachment C at 11-12.

It is clear that plaintiff believed that the Superintendent's Office was maintaining a large

file on his case, over a year after he had been disenrolled from the Academy. That belief is

incorrect. As explained by Col. Kellenbence in his Declaration,

> It was the routine administrative practice of the Superintendent's Office to return
> the files relating to matters on which the Superintendent acted, to the Academy
> staff office that had originated the action. . . . Only a scanned copy of the
> document that showed the action taken by the Superintendent would be retained
> in the [Superintendent's Office] administrative files. Cases involving the
> disenrollment of a Cadet from the Academy were handled in this way.

See Exhibit 3 to Defendant's Motions (Kellenbence Decl.) at ¶¶ 4-5. Even though at one time

the Superintendent's Office may have possessed some or all of the material plaintiff thought was

there during various stages of his disenrollment and his subsequent complaints, the material was

not permanently maintained in the Superintendent's Office.

In cases brought under the FOIA, once all documents have been released to the requester,

the cases are properly dismissed on mootness grounds as there is no further judicial function for

the Court to perform. See Crooker v. United States State Department, 628 F.2d 9, 10 (D.C. Cir.

1980) ("[o]nce the records are produced [in a FOIA case] the substance of the controversy

disappears and becomes moot since the disclosure which the suit seeks has already been made");

see also Tijerina v. Walters, 821 F.2d 789, 799 (D.C. Cir. 1987); Trueblood v. Dep't of

Treasury, 943 F. Supp. 64, 67 (D.D.C. 1996).

Because defendant has demonstrated that all requested records have been provided to

plaintiff, his FOIA claims should be dismissed as moot. The law of this Circuit is well settled.

10

"[H]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform." Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982). This is so because "[u]nder 5 U.S.C. § 552(a)(4)(B), a federal court is authorized only to 'enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld. . . .'" Id. (quoting Crooker, supra, 628 F.2d at 10). Therefore, since the Air Force produced all of the requested records, the substance of the controversy has disappeared and is moot because the disclosure which the suit seeks has already been made.

**B.    Defendant's Conduct Does Not Fall Within The Exception To The Mootness Rule**

Plaintiff's argument that his FOIA claims are not moot because the Air Force's conduct is capable of repetition yet evading judicial review, is without merit. Plaintiff's reliance on Payne Enterprises, Inc. v. United States, 837 F.2d 486 (D.C. Cir. 1988), for this argument is inapposite. While the Circuit Court concluded that the case before it was not moot, the conduct involved was the agency's practice of denying requested records pursuant to FOIA Exemptions that were inapplicable. Specifically, the Air Force Logistics Command (AFLC) repeatedly refused to release copies of bid abstracts prepared in connection with contracts for which there was limited competition, relying on FOIA Exemptions 4 and 5, 5 U.S.C. § 552(b)(4) and (5) to do so. Payne, 837 F.2d at 487.

Payne appealed the denials to the Secretary, and without exception, the appeals were granted. Id. at 487. The Court noted the Office of the Secretary's irritation over the "excessive" number of appeals arising from the AFLC's practice, and that the Secretary's staff had communicated to AFLC officials that the practice was unjustified. Id. at 489. The Court quoted

11

at length from a letter stating that the staff was unable to envision circumstances under which release of the requested documents would be demonstrably adverse to the interests of the government or the contractors, and that the staff had been unable to devise a theory under which the requested documents could be considered deliberative.  Id. at 489-490.  Thus, the Payne court was not dealing with delays in responding to FOIA requests.  Rather, it was addressing a situation in which affirmative steps were taken to withhold properly releasable records.

In contrast, Perry, supra, 684 F.2d at 123, involved the Department of Agriculture's delay in responding to a request for a copy of the file used by the Farmers Home Administration to monitor loans Perry had received, and the investigative reports compiled in connection with those loans.  In Perry, the Court concluded that even though the agency's release of the records was "fitful or delayed," once all requested records were surrendered, the federal court had no further statutory function to perform. Id. at 125.  In this case, as in Perry, although the Plaintiff may be dissatisfied with the delays in receiving the requested information, he has received everything the Defendant possesses that is responsive, therefore, his claims are now moot and should be dismissed.

## C.   Defendant Conducted A Reasonable And Adequate Search For Responsive Records

Plaintiff also challenges the adequacy of the search for responsive records.  However, he provides no evidence supporting his challenge, merely arguing that the "Air Force's own document release suggests other information has not been provided to Berardi.  This fact alone casts doubt on the adequacy of the agency's search."  See Plaintiff's Brief at 18.  Plaintiff's challenge has no merit.

12

In order for an agency to prevail when a plaintiff challenges the nature and extent of its search for responsive documents, the agency must show that it made "a good-faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Nation Magazine v. United States Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 2003) (quoting Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

As defendant stated in its Motion to Dismiss and for Summary Judgment, defendant released all records that it located after using its best efforts to locate responsive records where those records would most likely exist. The fundamental question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). In other words, "the focus of the adequacy inquiry is not on the results." Hornbostel v. United States Dep't of the Interior, 305 F. Supp. 2d 21, 28 (D.D.C. 2003).

The reasonableness of the agency's search depends on the facts of each case. Meeropol v. Meese, 790 F.2d 942, 952 (D.C. Cir. 1986) (search is not unreasonable simply because it fails to produce all relevant materials). The reasonableness of a search is evaluated in light of the specificity of the request. Nation Magazine, 71 F.3d at 889. Agencies are not obligated to document the fate of records it cannot find. Roberts v. United States Dep't of Justice, No. 92-1707, 1995 WL 356320, at *2 (D.D.C. Jan. 28, 1993); Miller, 779 F.2d at 1385 ("the Department is not required by the Act to account for documents which the requester has in some way identified if it has made a diligent search for those documents in places in which they might be expected to be found.").

13

The defendant has demonstrated the reasonableness of its search by relying upon reasonably detailed, non-conclusory affidavits submitted in good faith. Weisberg, 705 F.2d at 1352. "Affidavits that explain in reasonable detail the scope and methods of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the Freedom of Information Act." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). The declarations attached to defendant's motion showed "that the search method was reasonably calculated to uncover all relevant documents." Oglesby, 920 F.2d at 68." An adequate agency affidavit is accorded a presumption of good faith. Chilingirian v. United States Attorney Executive Office, 71 Fed. Appx. 571, 572 (6th Cir. 2003); Ground Saucer Watch, Inc. v. Central Intelligence Agency, 692 F.2d 770, 771 (D.C. Cir. 1982).

Once an agency has provided adequate affidavits, the burden shifts back to the plaintiff to demonstrate a lack of a good faith search. Maynard v. CIA, 986 F.2d 547, 560 (1st Cir. 1993) (citing Miller v. United States Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985)). Consequently, a requester's "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." Oglesby, 920 F.2d at 67, n. 13 ("[H]ypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of the agency's search."); Chamberlain v. United States Dep't of Justice, 957 F. Supp. 292, 294 (D.D.C. 1997) ("It is well established that '[a]gency affidavits enjoy a presumption of good faith that withstand[s] purely speculative claims about the existence and discoverability of other documents," (quoting Albuquerque Publ'g Co. v. United States Dep't of Justice, 726 F. Supp. 851, 860 (D.D.C. 1989)). Therefore, if plaintiff fails to rebut the agency affidavits with evidence of bad faith, summary judgment is proper. Miller, 779 F.2d at 1383.

14

As defendant has demonstrated in its original motion and as explained below, all responsive records have been released to plaintiff following an adequate search. Plaintiff's assertions are simply the product of his own belief that additional documents *should* exist in the locations he identifies.

### D.    The Court Can Make A Compliance Determination Based Upon Defendant's FOIA Responses

Relying on 32 C.F.R. § 286.23(e)(5), plaintiff asserts that the February 19, 2006, discretionary release by the Air Force violated the requirements of the FOIA, because it identified the records released "by document or by document category, but [did] not indicate what documents [were] redacted under FOIA Exemption 6." See Plaintiff's Brief at 19. However, 32 C.F.R. § 286.23(e)(5) does not require that an agency's response indicate what documents have been redacted under an Exemption. Rather, it provides that

> [t]he explanation of the substantive basis for a denial shall include specific citation of the statutory exemption applied under provisions of this part; e.g., 5 U.S.C. 552(b)(1). Merely referring to a classification; to a "For Official Use Only" marking on the requested record; or to this part or a DoD Component's regulation does not constitute a proper citation or explanation of the basis for invoking an exemption.

See id.

The Air Force's discretionary release advised plaintiff, in compliance with this section, that "[t]he Social Security Numbers and birth dates of individuals other than Lt Berardi hav[e] been redacted from the records being released in order to prevent clearly unwarranted invasion of those individuals' personal privacy pursuant to FOIA Exemption 6, 5 U.S.C. § 552(b)(6)." See Exhibit 1 to Plaintiff's Brief, Attachment F at 34.

Moreover, plaintiff argues the Academy's search for records in connection with his October 17, 2005, request was "non-responsive to [his] request because it fail[ed] to identify

15

which documents fall into the various categories of material previously requested by Berardi (32 C.F.R. § 286.23)." See Plaintiff's Brief at 20.  Contrary to plaintiff's assertion, it was not "the Academy's job" to index the records released to him.  The FOIA requires that agencies provide records upon request, 5 U.S.C. § 551(a)(3)(A), unless the records are exempt from release under 5 U.S.C. § 552(b).  Neither § 551(a)(3)(A) nor 32 C.F.R. § 286.23 requires that the records be indexed or identified according to categories defined by the requester when released.

Next, plaintiff argues that a numerical discrepancy in Maj Marian's Declaration demonstrates that the Academy's records search was inadequate.  See Plaintiff's Brief at 20-21.  This argument is without basis in fact.  During the search for records responsive to plaintiff's October 17, 2005, request, the Academy identified 956 pages of records that were responsive.  See Marian Decl. at ¶ 8.  These records were released in part by the Academy Vice Superintendent on January 20, 2006, and in part in a discretionary release on February 19, 2006.  See Exhibit 1 to Plaintiff's Brief, Attachment F at 28-38.  According to the Vice Superintendent's January 20, 2006, letter to plaintiff, the Academy fully released 31 pages, partially released records containing 428 pages, and withheld 384 pages in full.  Id., at pages 29-33.  In addition, as part of the January 20, 2006, response, the Academy again released 43 pages of police reports that had previously been provided to plaintiff.  Id. at 33.  Accordingly, the January 20, 2006, letter referred to 886 pages of records.  One of the documents withheld in full on January 20, 2006, was the FOIA file related to plaintiff's July 21, 2003, FOIA request, which the letter indicted contained 131 pages.  Id. at 31, subparagraph n.  As Maj Maraian stated, it was later discovered that the file related to plaintiff's July 21, 2003, FOIA request contained 201 pages.  See Maraian Decl. at ¶ 9.  Thus, the January 20, 2006, letter identified the records containing all of the 956 pages to which Maj. Maraian referred in paragraph 8 of his declaration.

16

Similarly, the February 19, 2006, discretionary release of records responsive to plaintiff's October 17, 2005, request, provided to plaintiff, fully or partially, all 384 pages that had been noted in the Vice Superintendent's January 20, 2006, letter as withheld in full. See Exhibit 1 to Plaintiff's Brief, Attachment F at 35-38. In addition, the February 19, 2006, discretionary release provided plaintiff more complete copies of 96 pages that had been withheld in part with the January 20, 2006 letter. Id. These pages included 68 pages of the 419 pages that made up Attachment 8 to the January 20 letter that had been withheld in part and 21 pages of the 43 that made up Attachment 11 to the January 20 letter. Id. at 36, 38. The pages of these two attachments that had been released in full with the January 20 letter were not again released with the February 19 letter. Id. Like the January 20 letter, the February 19 letter indicated the file related to plaintiff's July 21, 2003, FOIA request contained 131 pages rather than the corrected number of 201. Id. at 37. Thus, the February 19, 2006, letter discretionarily released, in whole or in part, 550 pages that were responsive to plaintiff's October 17, 2005, request.

In addition to the fully released pages in Attachments 8 and 11 of the January 20 letter, the other 31 pages of records that had been released in full with it were not again released with the February 19 letter. See Exhibit 1 to Plaintiff's Brief, Attachment F at 29-38. Likewise, the two pages in Attachment 5 of the January 20 letter were not released with the February 19 letter. Portions of them had been withheld pursuant to FOIA Exemption 6, 5 U.S.C. §552(b)(6), consistent with the redactions in the records that were discretionarily released on February 19. See id. at 29, 34-38.

Finally, plaintiff's discussion of the requirement in Vaughn v. Rosen, 484 F2d 820 (D.C. Cir.1973), that an agency provide an index of documents that were withheld is inapposite. As defendant demonstrates above, no responsive records have been withheld in this case.

In preparing to respond to Plaintiff's October 17, 2005, request, officials at the Academy reviewed plaintiff's prior requests that were renewed by his most recent request.  The Academy offices most likely to have responsive records made additional searches, and found only electronic copies of drafts, electronic mail messages, and a current database entry.  All other records relating to plaintiff's FOIA requests had been moved to the possession of the Academy's Inspector General.  Those records, together with those located in the recent additional searches, were evaluated for responsiveness to the October 17, 2005, request.  See Maraian Decl. at ¶¶ 6, 8.

As the defendant argued in its Motion to Dismiss and for Summary Judgment, the Air Force conducted more than reasonable and adequate searches for responsive records, by employing methods reasonably expected to produce such information.  The declarations of Mr. John M. Pellett, Mr. Wayne H. Kellenbence, Col Thomas Philipkosky and Maj Paul Maraian demonstrate that reasonable searches for records were conducted.

In sum, the defendant has put forth a "good faith effort to conduct a search for responsive documents" by searching in the areas were such records were likely to be found.  Olgesby, 920 F.2d at 68.  While these agency search efforts described above may not be considered "perfect," perfection is not the legal standard; the focus is the adequacy of the agency search, not the results.  Hornbostel, 305 F. Supp.2d 21 at 28.  Therefore, as the agency has conducted reasonable, good faith, and adequate searches for records about plaintiff, as evidenced by the detailed, non-conclusory affidavits submitted by defendants, absent proof of agency bad faith in conducting its search, defendants are entitled to summary judgment.

### E. Plaintiff's Privacy Act Claim Fails Because Inaccurate Records Were Not The Proximate Cause Of Plaintiff's Disenrollment

Plaintiff claims that he is entitled to relief under the Privacy Act because the Air Force relied on inaccurate records, which "was the proximate cause of the adverse determination of the Air Force to disenroll [plaintiff]." See Complaint at ¶ 119. This claim lacks merit. Rather than inaccurate records, the Board found that actions taken during the disenrollment process may have given the appearance of injustice. See Exhibit 2 to Defendant's Motions at 10. Specifically, the Board was concerned with the absence of a formal policy addressing the assessment of demerits for losing an identification card. See id.

To prevail on a damages claim under 5 U.S.C. 552a (g)(1)(C), it is well settled in this Circuit that plaintiff must establish "(1) he has been aggrieved by an adverse determination; (2) [the agency] failed to maintain records with the degree of accuracy necessary to assure fairness in the determination; (3) the [agency's] reliance on the inaccurate records [proximately caused the adverse determination]; and (4) the [agency] acted intentionally or willfully in failing to maintain accurate records." Deters v. United States Parole Commission, 85 F.3d 655, 657 (D.C. Cir. 1996); Sellers v. Bureau of Prisons, 959 F.2d 307, 312 (D.C. Cir. 1992); accord Toolasprashad v. Bureau of Prisons, 351 U.S. App. D.C. 64, 286 F.3d 576, 583 (D.C. Cir. 2002) (claim consists of allegations of "inaccurate records, agency intent, proximate causation, and an adverse determination").

Here, the Board corrected plaintiff's records to show that he was reenrolled in the Academy, basing its decision on a concern for the appearance of injustice, *not* erroneous records: Specifically, the Board's decision states the following:

> [W]e find that while there may have been a sufficient basis for the applicant's disenrollment, the findings noted in the USAFA IG

investigation call into question many of the *actions* taken regarding the applicant's disenrollment.  . . .  [W]e are concerned that the applicant's attitude, and subsequent chain of events may have been influenced by what appears to be an *unfair assessment* of demerits for the loss of his ID card.  We note that the IG could not substantiate the existence of a formal policy requiring such a large assessment of demerits.  Additionally, it appears that punishment for this particular offense was not meted out with any degree of consistency among the cadets.  Further, we are left with a *perception of impropriety on the part of key officials* in the applicant's leadership chain.  As a cadet at the USAFA, the applicant was expected to adhere to the highest standards of conduct and demonstrated aptitude for eventual service as a military officer.  A cogent argument can be made that in many respects he failed to do so.  However, if a cadet is expected to maintain high standards as part of an education and training environment, we should expect no less from those entrusted with the responsibility to mentor, mold, educate, train and guide them.  In this case, there are *too many instances of errant or poorly justified actions* in the overall disenrollment process, giving the appearance of injustice.

See Exhibit 2 to Defendant's Motions (BCMR Decision) at 10 (emphasis added).  In so finding,

the Board afforded plaintiff the benefit of the doubt and ordered that his records be corrected to

show that:

> 1.    He was not disenrolled from the United States Air Force Academy (USAFA) on 3 June 2003, but was placed in an excess leave status until his involuntary recall to extended active duty on 25 June 2003.
>
> 2.    Any and all documentation relating to the loss of his identification card, his conduct probation and disenrollment from the USAFA be declared void and removed from his records.  Documentation related to the remaining        underlying disciplinary infractions will remain in his cadet        records in accordance with the governing instructions.
>
> 3.    Effective 13 July 2004, he was honorably released from active duty, and re-enrolled in the USAFA as a cadet on 14  July 2004.

See id. at 11.  To the extent plaintiff's records needed correcting, the Board's Decision

accomplished this need.

Plaintiff attempts to satisfy the second <u>Deters</u> element by listing what he believes to be errors in the Military Review Committee ("MRC") package upon which his disenrollment was based. Specifically, plaintiff provides that (1) no favorable conduct reports are contained in the MRC package; (2) the police report in the MRC package is replete with error; (3) the package contains the wrong number of career demerits; (4) a record with adverse academic comments about a different cadet are contained in the package; (5) numerous forms were missing; and (6) a files incorrectly states that plaintiff was on athletic probation. <u>See</u> Plaintiff's Brief at 24. As defendant explains below, plaintiff is either mistaken about alleged errors in the MRC package or, in any event, the errors that do exist had no impact on the recommendation to disenroll plaintiff.

Major General John R. Dallager (Ret.) was the Superintendent of the United States Air Force Academy from June 2000 to September 2003. <u>See</u> Declaration of John R. Dallager ("Dallager Decl.") (attached hereto as Exhibit B) at ¶ 1.[3] His responsibilities included making recommendations to the Secretary of the Air Force ("Secretary") as whether a Cadet should be disenrolled. <u>See</u> Dallager Decl. at ¶ 2. Major General Dallager made the recommendation to the Secretary to disenroll plaintiff. <u>See id.</u> He made that recommendation based upon a complete review of the entire record, as well as information learned from attending the Academy Board's meeting. <u>See id.</u> at ¶ 3.

With respect to plaintiff's concern about errors in a police report regarding his conduct, Captain William C. Pleasants wrote a memorandum, which was included in the file, that stated

---

[3] The declarant, John R. Dallager, approved the text of his declaration, but was unable to sign it for today's filing. The defendant will file a signed copy with a Notice of Filing by May 10, 2006.

that plaintiff was *not* belligerent, but rather was cooperative.  See Dallager Decl. at ¶ 5.  Major

General Dallager relied upon the memorandum correcting the police report in making his

recommendation to the Secretary.  See id.

Another of plaintiff's concerns that did not impact Major General Dallager's

recommendation decision is the number of plaintiff's career demerits.  The discrepancy only

amounted to twenty demerits, and Major General Dallager instead focused on the consistency of

demerits (i.e. the track record of demerits).  See Dallager Decl. at ¶ 6.  Similarly, the fact that 40

merits were missing from the Cadet Conduct Summary page is also of no moment, as the actual

form awarding the merits was included in the file, and Major General Dallager considered it.

See id.

With regards to the academic comments made about Cadet McIntire, Major General

Dallager does not believe that he considered them, and does not recall seeing this particular page

in plaintiff's file.  See Dallager's Decl. at ¶ 7.  In any event, Major General Dallager does not

find the comments to have any significance to military aptitude, and they would not have

affected his ultimate recommendation to the Secretary.  See id.

In addition, the "statement on the staff summary sheets that the DD Form 785 indicating

that Cadet Berardi had been on 'athletic, conduct, and aptitude probation,' when in fact he was

only on 'conduct and aptitude probation' would have been a factor, but not a major factor in my

recommendation."  See Dallager Decl. at ¶ 8.  Moreover, "the Staff Summary Sheet with this

error would not have been seen by the members of the MRC or the Academy Board, because it

was prepared after those bodies had made their recommendations."  See id.  The only purpose of

the Staff Summary Sheet was to document Major General Dallager's decision.  See id.  His

recommendation to disenroll plaintiff would have been the same, "whether or not [he] believed

[Cadet Berardi] to be on athletic probation."  See id.

Lastly, the absence of a USAFA Form 13 and a USAFA Form 20 had no impact on Major General Dallager's recommendation to disenroll plaintiff.  See Dallager Decl. at ¶ 9.  A USAFA Form 13 "is a *Privacy Act Statement* release statement that a Cadet fills out, indicating who he/she authorizes to receive information about himself/herself from the Academy.  A USAFA Form 20 is a *Cadet Personal Information Form* (containing information such as who had nominated the Cadet, the Cadet's home of record, father's name, mother's name, high school, hobbies, interests, and reason for coming to the Academy, as well as an autobiography)."  See id.  The absence of these two forms had no impact on Major General Dallager's recommendation to the Secretary to disenroll plaintiff.  See id.

In sum, none of the "errors" identified by plaintiff had any impact on Major General Dallager's recommendation decision to the Secretary.  For that reason, plaintiff has failed to demonstrate that the agency's reliance on inaccurate records proximately caused the adverse determination.  See Deters, supra, 85 F.3d at 657.

Plaintiff's claim that the Air Force intentionally or willfully failed to accurately maintain records is also without merit.  Nothing that plaintiff raises in his pleading would even remotely suggest the agency acted in any manner which could be construed as "intentional" or "willful" under 5 U.S.C. 552a (g)(4).  This is a "high hurdle to clear.  It requires plaintiff to show that the agency's failure to maintain accurate records amounted to something greater than 'gross negligence.'" Hardy v. Lappin, 2005 U.S. Dist. LEXIS 5012 (D.D.C.  2005), *quoting* Deters, 85 F.3d at 660.  As demonstrated above, the information contained in records which could be construed as erroneous were either corrected, accurately maintained in other documents, and/or of no consequence to the recommendation to disenroll plaintiff.

In sum, even drawing all favorable inferences from Plaintiff's Brief, he cannot maintain a claim for Privacy Act damages under 5 U.S.C. 552a(g)(1)(C) and (g)(4). Accordingly, plaintiff's Privacy Act claim must be dismissed for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6).

### F.     Plaintiff's Privacy Act Claim Fails As A Matter Of Law Because Presidential Appointments Are Not Automatically Bestowed Upon Graduates

Plaintiff argues that but for alleged errors in Academy records, he would have (1) graduated eighteen months earlier, (2) received a Presidential appointment at that earlier time, and (3) earned income as a second lieutenant during those eighteen months. An appointment, however, is not an entitlement nor is it automatic. Plaintiff himself asks this Court to put "aside for the moment the fact that *virtually* all Academy cadets who receive a diploma also receive a commission," <u>see</u> Plaintiff's Brief at 29 (emphasis added), thus admitting that a Presidential appointment is not automatic.

In order for an appointment to occur, "the President first selects a nominee and sends the nomination to the Senate. The Senate acts on the nomination and determines whether or not to confirm the nominee. If the nominee is confirmed, the President appoints the officer and signs a commission or performs some other public act as evidence of the officer's appointment." <u>Dysart v. United States</u>, 369 F.3d 1303, 1306 (Fed. Cir. 2004). An officer's **initial appointment** is subject to this constitutional process. <u>Dysart</u>, 369 F.3d at 306 (citation omitted) (emphasis added).

Here, plaintiff attempts to invoke the Privacy Act to collect lost pay for what he describes as "the denial of an opportunity to graduate and receive a commission." <u>See</u> Plaintiff's Brief at 29. In effect, he is relying on the Privacy Act as the basis for this Court to judicially appoint him as a second lieutenant *nunc pro tunc* to the date that he **expected** to graduate, and award money

24

damages for the pay he **expected** to receive.  The Privacy Act is not available for this purpose.

See generally, Dysart, supra, 369 F.3d 1303, 1314 (Navy officer not entitled to automatic appointment with corresponding pay and benefits, when Court found that statute providing that military officers "shall be promoted" to the next higher grade when additional officers in that grade and competitive category are needed, did not compel the President to appoint military officers.  "Congress could not have permissibly altered the appointment process set forth in the Constitution by providing for automatic appointments.").  Moreover, as explained more fully above at III. E., the Board *corrected* plaintiff's records to show that he was re-enrolled in the Academy, basing its decision on a concern for the appearance of injustice, *not* erroneous records.

## CONCLUSION

For all these reasons, the Court should dismiss this action, or alternatively, enter summary judgment in favor of the defendant, and deny Plaintiff's Motion for Summary Judgment.

Respectfully submitted,


_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____
KAREN L. MELNIK, D.C. Bar # 436452
Assistant United States Attorney
555 4th Street, N.W. - Room E4112
Washington, D.C.  20530
(202) 307-0338