## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHRISTOPHER W. BERARDI, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:05cv02269 JR |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| THE AIR FORCE, | ) | |
| | ) | |
| Defendant. | ) | |

## BERARDI'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

### I.    Introduction

Plaintiff Berardi ("Berardi") was disenrolled from the United States Air Force Academy ("Academy") on the basis of a file containing incomplete and inaccurate information knowingly maintained by the Academy and Academy personnel acting in their official capacities.  Although the Academy Superintendent was aware of serious errors in the file, that erroneous information was forwarded to and relied upon by the Secretary of the Air Force ("SECAF") acting in his statutory role as the disenrollment authority in Berardi's case, 10 U.S.C. §9348.  Prior to his disenrollment, Berardi attempted to correct the erroneous information in his records consistent with the Privacy Act, 5 U.S.C. § 552a, et seq., but his requests were ignored.  When Berardi attempted to obtain additional information to refute the allegations against him pursuant to the Freedom of Information Act, 5 U.S.C. 552, et seq., he was stonewalled by the Academy and the United States Air Force ("Air Force") for over two and a half years.  Berardi then filed this lawsuit to compel Air Force compliance with federal  law and its own regulations and to enforce accountability for Air Force's flagrant disregard of Berardi's rights.

## II.    Legal Standards

The legal standards for granting or denying a Motion for Summary Judgment have been fully briefed by the parties hereto. Berardi would simply point out that pursuant to U.S. Dist. Ct. Rules D.C. LCvR 7(h), "In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *See*, *Payne Enterprises, Inc. v. U.S.*, 837 F.2d 486, 491 n.8 (Uncontested Statement of Material Fact accepted as true). Air Force has not filed a statement in opposition to Berardi's Statement of Material Facts Not In Genuine Dispute. Therefore this Court may consider as fact that (1) Air Force processing of Berardi's FOIA and Privacy Act requests was not timely, (2) the only reason Air Force made a document release on January 20, 2006, February 10, 2006, and February 19, 2006 was because of Berardi's Complaint herein filed after twenty-seven FOIA requests and six FOIA appeals, (3) the January and February 2006 document releases were incomplete, and (4) Air Force was aware of the errors in Berardi's disenrollment file and failed to correct them after having received proper notice thereof from Berardi (Plaintiff's Statement of Material Facts Not in Genuine Dispute, Corrected Doc. # 15 ("Berardi's Material Facts")). Based upon these admissions alone, Berardi's Motion for Summary Judgment herein should be granted, and the Air Force Motion for Summary Judgment should be denied.

Defendant's citation to *Shelborne v. Runyon*, 1997 WL 527352 at **3, *citing Celotex Corp. v. Catrett*, 477 U.S. 325 (1986), misses the point. In those cases, the moving party was able to demonstrate the negative, i.e., an absence of evidence to support summary judgment. In this case, Air Force has not only been unable to prove the negative, it has conceded key elements of Berardi's case against it.

III.    **Argument**

A.    **Defendant Has Still Not Provided All of the Records Requested**

Air Force has gone to great lengths to convince the Court that its search efforts for missing documents have been "reasonable" and that it has acted in "good faith" in its attempts to comply with the Berardi's FOIA and Privacy Act rights:

> In sum, the defendant has put forth a "good faith effort to conduct a search for responsive documents" by searching in the areas were [sic] such records were likely to be found.  While these agency search efforts described above may not be considered "perfect," perfection is not the legal standard; the focus is the adequacy of the agency search, not the results.

Defendant's Reply Br., Docs. # 27 and 28, at 18 (citations omitted).

Air Force essentially argues that its search efforts have been "close enough for government work."  Air Force asserts good faith after over two and a half years of delay, misinformation and flaunting of statutory and regulatory requirements, and its "discovery" of 956 pages of documents belatedly deposited in response to Berardi's complaint.  Unfortunately, Air Force still has not complied with its own regulations and produced the documents called for in Berardi's FOIA and Privacy Act requests.

As pointed out in Berardi's earlier brief, the Academy has been less than candid in responding to previous FOIA and Privacy Act requests.  For example, on at least two previous occasions, the Academy informed Berardi that it had made a thorough search of all Legal Office files and shared drives and released "all" documents consisting of only a few staff summary sheets and one legal review (Doc. # 17, Ex. 1, Attachs. A9 and A10).  In its last response, the Air Force General Counsel's Office  stated,

> In response to your [previous FOIA requests the Academy Legal Office] searched your entire case file as well as the computer shared drive, and no responsive or additional records were located. Furthermore, subsequent to the receipt of your appeals, a second

search was conducted of your case files and the computer shared
drive and no responsive or additional records were located.

(Doc. # 17, Ex. 1, Attach. A10).

Incredibly, on January 20, February 10, and February 19, 2006, 768 pages of documents were released that had been discovered in the Legal Office, many of which were from its computer records. According to the January 20, 2006 document release letter, these documents were all provided to the Academy Inspector General ("IG") in August 2004, but according to the Miles Declaration (Doc. # 27 and 28, Ex. A) they were not transferred until "early 2005." Not only does this cast doubt on the accuracy of the declarations themselves, it also raises questions about the adequacy of the search. In the words of the IG , the documents and files he received were "in disarray." (Doc. # 17, Ex. 13)

Because of the Academy's admitted lack of organization, numerous documents are still missing from the document release by Air Force and the Academy. First, Berardi submitted a FOIA request on January 19, 2004 to the Secretary of the Air Force Inspector General ("SAF/IG") that was erroneously closed on March 12, 2004. When Berardi renewed his request on April 5, 2004, it was forwarded to the Academy on July 13, 2004. To date, Berardi has received no response to this request for information (Supplemental Declaration of Christopher W. Berardi attached hereto as Ex. 1 at para. 7) even though the Secretary of the Air Force disenrolled Berardi and generated his own decision memoranda. Apparently the appeal has been lost, just like the other two appeals documented in Berardi's Exhibit 1 (Doc. # 17, Ex. 1), the accuracy of which Defendant does not dispute.

Second, on February 13, 2006, Berardi submitted a FOIA appeal that has not been answered and is still outstanding. That appeal identified numerous discrepancies, errors and

omissions in the January 20, 2006 Academy document release that were not remedied by the subsequent releases on February 10 and 19, 2006 (Doc. # 17, Ex. 1, Attach. F).

Third, Berardi's May 25, 2004 appeal was based in part on the fact that the Academy itself identified the documents it withheld, including a staff summary sheet and routing slips (Doc. # 17, Attach. C5). However, on August 16, 2004, Colonel Kellenbence said that his previous statement was in error, and that there was only one document in the Superintendent's office (Doc. # 17, Attach. C6). This is unusual, since it was Academy practice to identify withheld information as part of the FOIA package and it would have been immediately obvious to Colonel Kellenbence if the withheld documents were not in the package and therefore did not exist. As Air Force candidly admits, the document may have been in the Superintendent's office at one time (Doc. # 27 and 28 at 10). In that case, however, it should have been part of the FOIA file and retained, not destroyed.

Fourth, Berardi's opening brief noted the existence of a "double secret locked file" of information concerning Berardi in the Legal Office. The Miles Declaration (Doc. # 27 and 28, Ex. A) candidly admits that this information was not on any file plan. Miles attempts to explain away this glaring omission in the Academy's document production efforts by saying that it was turned over to the IG, and presumably Berardi. However, this secret file contained information deleted from Berardi's record by the Air Force Board for the Correction of Military Records ("AFBCMR"). Inexplicably, these documents cannot be found in the 956 page document release by the Academy (Supplemental Declaration of Linda Berardi attached hereto as Ex. 2 at para. 2). Thus, the Air Force's claim regarding the adequacy of its search is controverted by contrary evidence in the record and Berardi's declarants. *Physicians Comm. for Responsible Medicine v.*

*Glickman*, 117 F. Supp. 2d 1, 4 (D.D.C. 2000) (Robertson, J.) *citing Perry v. Block*, 684 F.2d

124, 127 (D.C. Cir. 1982), *Military Audit Project v. Cosey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

       Finally, the Air Force discretionary release on February 19, 2006 listed five FOIA files

"including tracking and processing documents...." as attachments 34, 35, 36, 37, and 38

(Supplemental Declaration of Linda Berardi, Ex. 2 at Attachs. A and B). These five attachments

each identify a specific Berardi FOIA request. However, Berardi made twenty-seven such

requests, which then begs the question as to the whereabouts of the remaining twenty-two files.

An inference of normalcy in agency actions, suggests there should be twenty-two additional

FOIA files "including tracking and processing documents...." However, Mrs. Berardi has

searched the documents released by the Academy and Air Force and they are nowhere to be

found. (Supplemental Declaration of Linda Berardi, Ex. 2 at para. 3). While Academy FOIA

compliance in this case has been grossly deficient, it is hard to believe that even they could have

misplaced twenty-two FOIA files.

       Air Force attempts to repair the defects in its "reasonable" search efforts by engaging in

"fuzzy math" when it attempts to account for all of the pages of its document release (Doc. # 27

and 28,  pp. 16-17). The Air Force's effort, however, presupposes that all documents have been

produced. It also fails to account for the math error in the Maraian Declaration (Doc. # 13, Ex.

5), among others.

       The Academy's haphazard document release has not only failed to produce all documents

requested, it has also obscured the fact of Academy noncompliance with its own regulations. For

example, when a portion of a document is redacted, the reason for redacting the document must

be annotated on the document itself so that the basis for denial is clear, 32 C.F.R. §§ 806.26 and

806.30. *See Hornbostel v. Dept. of Interior*, 305 F. Supp. 2d 21, 34 (D.D.C. 2003), *citing King v.*

*Dept. of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987) (citations omitted).  In that case the court

made clear that the requirement for specificity in a records release is not an illusory one:

> In order for an agency to meet its burden of demonstrating that the
> withheld documents are properly exempted and have been
> reasonable segregated it must 'provide a relatively detailed
> justification, specifically identifying the reasons why a particular
> exemption is relevant *and correlating those claims with the
> particular part of a withheld document to which they apply*.'

*Hornbostel*, 305 F. Supp. 2d at 34 (citation omitted) (emphasis added) .

The Court went on to note that in that case the production of a detailed *Vaughn* index

provided sufficient particularity to satisfy FOIA requirements.  In this case, no such index has

been produced and Berardi cannot determine which documents are governed by which

exemptions or which documents are intended to respond to his specific requests for information.

*See, also*, *Krikorian v. Dept. of State*, 984 F.2d 461, 466-467 (D.C. Cir. 1993).

In addition, Air Force's response brief misstates Berardi's position regarding the

specificity of the Academy FOIA response.  Berardi's position is that the haphazard, shotgun

records release adopted by Air Force denies both Berardi and this Court the ability to determine

which document responds to which of Berardi's FOIA requests.  Perhaps the best illustration of

the problem is Berardi's request for the police reports regarding his case.  If a police report does

not exist in the file, then does the Court assume that the document does not exist, or does it

assume that another document is intended to satisfy the request?  If the police report does exist in

the file, does the Court assume that it responds to all requests for similar documents or only one

request?  And if more than one police report exists in the file, how does the court determine

which request they respond to?  The permutations are almost endless but the point is the same:

When a single FOIA request is submitted, it is entitled to a single FOIA response.  The

government is not entitled to economize its response without clearly identifying what the information is in response to, as it has done here.

Finally, to the extent that Air Force attempts to cast the burden of demonstrating government "bad faith" on Berardi, it has missed the mark.  First, it has failed to establish "good faith" and in fact has a track record documenting failures to accurately report disclosure efforts. Second, even if Air Force can clear the "good faith" hurdle, *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982), "[a] finding of no bad faith does not necessarily equate to a finding that the search was adequate."  *Krikorian*, 984 F.2d at 468.  *Krikorian* is analogous to this case in that the Department of State in that case did not know how many documents it had recovered, *Id.*, just as the Air Force in this case has admitted that its files were in "disarray" (Doc. # 17, Ex. 13) and has engaged in fuzzy math (Doc. # 27 and 28, at 16-17).  Plaintiff was also able to point out documents that the State Department had failed to locate, *Id.*, just as Berardi has pointed out the blue "double secret" file folder (Supplemental Declaration of Linda Berardi, Ex. 2 at para. 2) and all of the appeal information from SAF/IG (Supplemental Declaration of Christopher W. Berardi, Ex. 1 at Attach. F).  Finally, the Plaintiff in *Krikorian*, *supra*., was able to demonstrate that an adequate search was not conducted, *Id.*, just as Berardi has been able to demonstrate significant gaps in the Air Force disclosures in this case (Supplemental Declaration of Linda Berardi, Ex. 2 at para. 3).  For all of these reasons, Air Force's claim of good faith does not equate to a finding that Air Force's search was adequate.

## B.     Defendant's Conduct is Capable of Repetition Yet Evading Review

As indicated in Section IIIA above, Berardi has two outstanding FOIA requests that have not been answered.  The first was submitted via mail to the Secretary of the Air Force Inspector General on January 19, 2004 and referred to the Academy on July 13, 2004.  The Academy never acknowledged receipt.  Berardi never received an answer to his request.  (Supplemental

Declaration of Christopher W. Berardi, Ex. 1 at para. 7).As far as he can tell, the request has been "lost" along with several of his other requests.  (Berardi Complaint,  paras. 27, 47.)  In addition, Berardi submitted an appeal on February 13, 2006 to his FOIA request dated October 17, 2005, and has still not heard anything in response (Berardi Decl., Doc. # 22, at para. 1) even though the Air Force is required to respond within 20 working days or at least explain why the request has been delayed, 32 C.F.R. § 286.24(d)(2).  Thus, the Academy persists in its refusal to abide by FOIA and its implementing regulations.

This refusal to abide by FOIA is also illustrated in Defendant's claim that Berardi's April 12, 2004 FOIA request is moot because it only contains questions regarding the Air Force FOIA response.  While this may be technically correct, Berardi's requests and questions were in regard to a FOIA response that did not provide any description of documents withheld by Air Force and that therefore was not in compliance with FOIA.  This in turn delayed the processing of Berardi's legitimate FOIA request for information relative to his case, since Air Force's failure to provide a description of the withheld documents nullified Berardi's ability to appeal.

In this regard, Defendant takes too narrow a view of *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) in which the Air Force repeatedly ignored the clear mandate of FOIA and its own regulations in delaying access to clearly releasable documents.  In *Payne*, the Court was not deterred by the fact that the Air Force practice was informal:

> The fact that the practice at issue is informal, rather than articulated in regulations or an official statement of policy, is irrelevant to determining whether a challenge to that policy or practice is moot.  Courts have long recognized that there 'may very well be circumstances in which *prolonged delay* in making information available or unacceptably onerous opportunities for viewing disclosed information require judicial intervention.' *Lybarger v. Cardewell*, 577 F.2d 764,767 (1st Cir. 1978)  So long as an agency's refusal to supply information evidences a *policy or practice of delayed disclosure* or some other failure to abide by the

terms of the FOIA, and not merely isolated mistakes by agency
officials, a party's challenge to the policy or practice cannot be
mooted by the release of the specific documents that prompted the
suit.

*Id*. at 491 (emphasis added) (footnote omitted).

In this case, the Air Force was required to release the documents in question but chose to

engage in a concerted campaign of document denial until forced to release numerous documents

by the pressure of this court action. In the meantime, Berardi was deprived of critical

information needed to prosecute his appeal to the AFBCMR and pursue complaints with the IG.

The Academy is now engaging in the same practice with respect to Berardi's appeals discussed

above.

Defendant's response brief also ignores Berardi's argument that the Academy's actions

demonstrate a policy or practice that will impair Berardi's lawful access to information in the

future, *Better Gov't Ass'n v. Dept of State*, 780 F.2d 86, 90-92 (D.C. Cir. 1986). This practice is

illustrated by the fact that every one of Berardi's FOIA appeals have been delayed, some in

excess of two years, and that two of them were "lost" for a year or more. As described above, a

third has now been "lost" with no explanation as to its whereabouts from the Academy. The

Academy has repeatedly denied the existence of documents that it knew existed, including Legal

Office documents and police reports, and provided improper advice regarding Berardi's FOIA

appeal rights. Although the Academy should have treated Berardi's case on an expedited basis

due to the serious due process implications involved in an Academy disenrollment, it continued

to delay, ultimately forcing the AFBCMR to threaten to close Berardi's case due to non-

responsive Academy tactics that violated FOIA (Doc. # 17, Ex. 11). In such circumstances, the

courts of this Circuit have not hesitated to consider the case ripe for resolution: "Voluntary

cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and

determine the case, i.e., does not make the case moot.  A controversy may remain to be settled in such circumstances, e.g., a dispute over the legality of the challenged practices." *Payne*, *supra*., at 491.  *See also Better Gov't Ass'n*, *supra*. at 430-433; *City of Houston, Texas v. HUD*, 24 F.3d 1421, 1428-1429 (D.C. Cir. 1994); *Capitol Technical Services, Inc. v. FAA*, 791 F.2d 964, 968 (D.C. Cir. 1986); *Physicians Comm. for Responsible Medicine*, 117 F. Supp. 2d at 4-5 (D.D.C. 2000).

In *Physicians*, *supra*., this Court confronted a highly analogous situation to the case at hand involving a challenged violation and refusal to release documents under the Federal Advisory Committee Act ("FACA"), 5 U.S.C. App. § 2 and FOIA.  The Court noted that while there had been a document release under FACA, the claimed injuries involved not only the withholding of documents but the delay in the eventual release of the documents.  The Court found that declaratory relief under the facts of that case would provide some remedy and that , "even the availability of a partial remedy is sufficient to prevent a case from being moot." citing *Physicians*,  117 F. Supp. 2d at 4-5, *citing Calderon v. Moore*, 518 U.S. 149, 150 (1996).

The Court in *Physicians* also quoted with approval *Byrd v. E.P.A.*, 174 F.3d 239 (D.C. Cir. 1999) for the same proposition:  "Because Byrd's injury resulted not only from EPA's failure to provide him materials, but also from the tardiness of their eventual release,  …. declaratory relief would afford Byrd some relief and prevent his action from becoming moot." *Id*. at 244.  In both *Byrd* and *Physicians*, the government agency involved tried to circumvent statutory violations by producing all of the requested documents under the FACA.  In both cases, the Courts refused to dismiss the complaints involved, finding that other issues were at stake requiring redress.  Berardi also seeks redress of larger issues and a declaration that Air Force has violated FOIA, the Privacy Act and the Administrative Procedure Act so that he may obtain the

records he seeks, correct the records that are in error and recover some of the losses Air Force statutory and regulatory noncompliance have imposed upon him.

Thus, contrary to Air Force assertions, this controversy is ripe for judicial resolution and is not moot. As Air Force concedes, its release of 956 pages of records on January 20, 2006 and February 10, 2006 resulted from Berardi's complaint (Berardi's Material Facts, at para. 5). Without legal action, Air Force would have never voluntarily released the documents withheld from Berardi for over two years. Berardi still has requests pending which will necessitate continuing legal action in the future absent this Court's intervention.

### C.    Inaccurate Records Proximately Caused Berardi's Disenrollment

Air Force has labored to convince this Court that Berardi's disenrollment was not impacted by the errors in his records. Apparently, Air Force concedes the first two elements of the *Deters* test, i.e., that Berardi has been aggrieved by an adverse agency determination and that the Air Force failed to maintain records with the degree of accuracy necessary to assure fairness in its determination. *Deters v. United States Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996). Air Force argues instead that the Air Force reliance on the inaccurate records did not cause the adverse determination

With respect to Air Force reliance on inaccurate records, Defendant does not deny that there were errors in Berardi's disenrollment file. In fact, the AFBCMR specifically noted and the Air Force conceded the point: "The applicant's MRC package did contain errors as he alleges" (Doc. # 17, Ex. 5, Adversarial Reporting, p.5). The AFBCMR also noted the Academy's excuse for these errors: "However, while regrettable, [the errors] were merely mistakes and not an effort to ensure [Berardi's] disenrollment." (*Id.*) This is significant. The AFBCMR has been empowered to act when "…necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1).

In this case, the injustice was Berardi's wrongful disenrollment from the Academy based upon the numerous errors in his file and official misconduct as articulated in the AFBCMR opinion (Doc. # 17, Ex. 5). While the Defendant has chosen to focus on the appearance of injustice language in the AFBCMR opinion, in fact the Board concluded that an error or injustice had occurred pursuant to its statutory mandate, and not some poorly defined "tie goes to the runner" standard of review as Defendant suggests. As stated by the AFBCMR: "Sufficient relevant evidence has been presented to demonstrate the existence of error or injustice." (Doc. # 17, Ex. 5 at p. 10).

With respect to the errors in the file, the AFBCMR had Berardi's submission which reflected over twenty errors in the disenrollment file (Doc. # 22, Ex. 4 and 5). In addition, Berardi's counsel provided the AFBCMR with a copy of the second police report which corrected the erroneous police report upon which his disenrollment had been based (Supplemental Declaration of Christopher W. Berardi, Ex. 1 at para. 6). In this regard, Air Force has attempted to explain away the significance of this report by saying that a cryptic note placed in the file by Berardi's commander somehow corrected all of the errors in the report. In fact, an e-mail sent by that same commander admitted that his memo only corrected "some" of the errors and noted that a corrected police report would be forthcoming (Supplemental Declaration of Christopher W. Berardi, Ex. 1 at para. 5 and Ex. 1 at Attach. E, p.3). However, the Academy IG noted that the second police report was more favorable to Berardi, so much so in fact that he faxed a copy to the AFBCMR (Supplemental Declaration of Christopher W. Berardi, Ex. 1 at Attach. E, p.15). This seems unusual if in fact the note from Berardi's commander was sufficient to correct all of the errors, since the AFBCMR would have also had the note. In addition, even though the commander's note said that Berardi was cooperative, the first report erroneously

listed him as "drunk and disorderly" and identified him as the single actor even though several

other cadets were involved in misconduct not involving Berardi. Incredibly, no one sought to

place the corrected report in the file even though it was available shortly after the incident

(Supplemental Declaration of Christopher W. Berardi, Ex. 1 at para. 5) and Berardi was

specifically told that corrections could not be made (Berardi Decl., Doc. # 22, at Attach. 2 p.2).

The AFBCMR had the corrected police report available when it rendered its decision in

accordance with 10 U.S.C. §1552, and specifically made note of the fact that the chain of

command had overlooked its significance (Doc. # 17, Ex. 5). In fact, the entire chain of

command continued to comment on the erroneous information in the first report  Even though

the Academy acknowledged the importance of getting it right, they continued to accentuate the

negative and inaccurate aspects of the report. Thus, one of Berardi's superiors in his chain of

command who reviewed the file and recommended disenrollment, Lt. Col. Hammes, continued

to refer to Berardi as "drunk" (Declaration of Anthony Berardi, Doc. # 21, Attach 1) and the

security police who authored the report also refused to change their position that Berardi was

disorderly even after the cleansing memo had been placed in the file (Supplemental Declaration

of Christopher W. Berardi, Ex. 1 at Attach. E, p.4). Only an officially corrected report could

have repaired the damage and this was never included in Berardi's file even though it was in the

possession of his chain of command. Specifically, Lt. Col. King, Deputy Training Group

Commander, Lt. Col. Hammes, Second Group Commander and Major Pleasants all knew of the

existence of the corrected report and did nothing to correct the record in Berardi's case

(Supplemental Declaration of Christopher W. Berardi, Ex. 1 at para. 5). Even though both Lt.

Col. Hammes and Major Pleasants were directly involved in reviewing and making

recommendations to the chain of command about the case they failed to correct the record when

they had the opportunity to do so.  Such inaction in the face of Berardi's request to correct his records is inexcusable.

Air Force has attempted to shore up its position regarding the errors in the file with the declaration by Major General John D. Dallager.  However, that declaration is nothing more than a *post hoc* rationalization of a poorly supported decision that is full of error and supposition.  First, General Dallager states that the disenrollment file contained only five discrepancies.  As pointed out in the Berardi Decl., Doc. # 22 at para. 3, there were actually more than twenty discrepancies in the file, all of which were brought to the General's attention (Berardi Decl., Doc. # 22 at para. 3).  For some reason, the Declaration does not mention these memoranda or what impact they might have had on the General's thought processes.  Absent from his Declaration, however, is an explanation of why he did not correct the errors or ask that a corrected police report be placed in the file, since it was readily available.

Second, the Dallager Declaration mentions that the memo from Berardi's commander corrected the erroneous report.  Actually, it did not.  In fact it erroneously described Berardi was as "drunk" (Declaration of Anthony Berardi, Doc. # 21, Attach. 1) and argumentative (Supplemental Declaration of Christopher W. Berardi, Ex. 1 at Attach. E, p.4) even after the commander's memo was written.  That memo emphasized that it only corrected some errors and that a corrected police report was coming (Supplemental Declaration of Christopher W. Berardi, Ex. 1 at para. 5)  In reality, the second police report, discussed above, went far beyond the commander's memo in a number of respects.  Unfortunately, it never saw the light of day until it was reluctantly produced in response to a Berardi FOIA request over a year after Berardi's disenrollment, and after the Academy had denied its existence to the AFBCMR (Declaration of Linda Berardi, Doc. # 20, at para. 3).

Third, although General Dallager declares that he reviewed every page of the file, he did not notice at the time that it contained an academic record on an unrelated  case involving a Cadet McIntire (Supplemental Declaration of Christopher W. Berardi. Ex. 1 at Attach. B).  The General declares that he did not find the wrong record to be of any significance, even though it was an entire page devoted to the academic performance of another cadet, and that if he did consider it, it would not have affected his ultimate recommendation.  What the General fails to say is that the erroneous record displaced much more favorable information regarding Berardi, who eventually graduated from the Academy *summa cum laude*

Fourth, the Dallager Declaration candidly admits that the erroneous entry about Berardi and athletic probation would have been a small factor in his disenrollment decision, but that it was somehow all right because, "…this error would not have been seen by the members of the MRC or the Academy Board…."  However, earlier in his Declaration, the General noted that the disenrollment file was numbered with page numbers AB#1 through AB#176, and that he read every page.  Apparently, the General overlooked page AB#176 (Supplemental Declaration of Christopher W. Berardi, Ex. 1 at Attach. A), which erroneously reflects that Berardi was on Athletic Probation. According to Major General Dallager's own Declaration (Docs. # 27, 28, Ex. B) that page would have been seen by all agencies reviewing Berardi's case, <u>including the MRC and Academy Board</u>.  In addition, while Major General Dallager says that the athletic probation would not have been important, in fact, he underlined that specific language on the Staff Summary Sheet that recommended disenrollment (Berardi Decl., Doc. #22, Attach. 8, p.1).  It should also be noted that while the Dallager Declaration only refers to two Staff Summary Sheets (Docs. # 27, 28, Ex. B), there were actually three, all of which contain the same error. (Berardi Decl., Doc. # 22, Attach. 8).

Finally, the Dallager Declaration is most significant for what it does not say. First, it does not say that errors in the file were corrected as required by the Privacy Act. This meant that a highly inaccurate and prejudicial file went forward to the Secretary of the Air Force for final decision when it could have easily been corrected. Second, it does not say that he was personally aware of the errors in the file at the time he reviewed it and chose to overlook them and leave them uncorrected. Third, it does not say that only the Secretary of the Air Force had the authority to disenroll Berardi, 10 U.S.C. § 9348, and what impact all of the uncorrected errors had on the Secretary and his decision in the case. Apparently their impact was significant because the Secretary's own AFBCMR reversed his decision, with his subsequent concurrence (Doc. # 17, Ex. 5).

For all of the foregoing reasons, the Dallager Declaration does not correct the errors in Berardi's file or explain how they failed to contribute to his disenrollment. In fact, the General's declaration is based on misinformation and supposition that is unsupported by the conclusions of the AFBCMR decision that reinstated Berardi. As stated in *Byrd*, *supra*., and *Physicians*, *supra*. the failure to release information can cause injuries that extend far beyond statutory noncompliance. In fact, injury can result from the tardy release of information and the inability of the requester to take action in response to it, including seeking the correction of those records through judicial enforcement if necessary. In this case, Air Force's consistent policy of statutory and regulatory noncompliance contributed to his disenrollment and delayed the correction of his military record. For the Air Force to argue now that it has clean hands—essentially a "no harm, no foul" approach to FOIA and the Privacy Act is disingenuous in the extreme and overlooks over two and a half years of illegal conduct.

**D.      Privacy Act Violations Were Intentional and Willful, and Are Continuing**

As the preceding discussion clearly shows, the Berardi disenrollment process was permeated with obvious errors that should have been caught and corrected. Berardi tried to correct the record and was told that it could not be done (Berardi Decl., Doc. # 22, Attach. 2), even though the Academy admitted at the time that it was important to do so (Berardi Decl., Doc. # 22, Attachs. 14 and 15). Major General Dallager was told about the errors (Berardi Decl., Doc. #22, Attachs. 5 and 6) but decided they were unimportant (Doc. # 17, Attach. 15). The Secretary of the Air Force was aware of the errors but apparently chose to believe his subordinates and the official record (Berardi Decl., Doc. #22, Attach. 7). Defendant has conceded all of these facts by failing to oppose Berardi's Statement of Material Facts Not in Genuine Dispute.

Air Force's own documents reveal that this violation of Berardi's Privacy Act rights is a continuing to this day. Attachment 17 to the Air Force's February 19, 2006 discretionary release refers to an "Incident Report Summary" dated December 20, 2005—one day before Berardi graduated from the Academy and long after the AFBCMR directed the Academy to correct his records and reinstate him. (Supplemental Declaration of Christopher W. Berardi, Ex. 1 at para. 4 and Ex. 1 at Attach. D). That summary contains information that the AFBCMR specifically directed to be removed from Berardi's records and repeats erroneous information from the Academy MRC file. (Supplemental Declaration of Christopher W. Berardi, Ex. 1 at para. 4 and Ex. 1 at Attach. D). For example, it erroneously reports that Berardi was involved in a disorderly conduct offense and failed to obey an order, even when the Academy's own documents refute both claims (Supplemental Declaration of Christopher W. Berardi, Ex. 1 at Attach. E, p.8). The summary also reflects that Berardi was involved in the consumption of alcohol but that his alcohol test results were "0." *Id.* Finally, the summary reports that Berardi was apprehended on 19 October 2001, but that the offense occurred on 19 October 2002. *Id.* Over three years after

the incident in question, the record is still uncorrected and Berardi is not certain how that information is being used, although it is obviously derogatory in nature.  Thus the Privacy Act violation in this case is not only flagrant—it is continuing—and fully supports Berardi's Motion for Summary Judgment and his claims for relief herein.

At every level of review, the errors in Berardi's record remained uncorrected until the AFBCMR took action and noted the errors and injustice in his file.  Errors persist today.  The AFBCMR even commented on the perception of impropriety on the part of "key officials" in Berardi's leadership chain leading to too many instances of <u>errant</u> or poorly justified actions by those charged with the responsibility under Air Force regulations and the Privacy Act to do better.  In the final analysis, this Circuit said it best:

> [The Privacy Act] imposes liability only when the agency acts in violation of the Act in a willful or intentional manner, either by committing the act without grounds for believing it to be lawful, *or by flagrantly disregarding others' rights under the Act.  Albright v. U.S.*, 732 F.2d 181, 189 (D.C. Cir. 1984).  (Emphasis added.)

Thus, the term "willful and intentional" includes exactly the conduct engaged in by the Academy and Air Force in this case.  As stated previously, Defendant has conceded that there were errors in the record and that those errors remained uncorrected in spite of Berardi's requests and in violation of the Privacy Act.  Air Force was on notice of the errors and "passed them up the chain" until they landed on the Secretary's desk.  Unfortunately the Secretary was the recipient of staff work that flagrantly disregarded Berardi's rights, were ordered to be corrected by his own AFBCMR, yet remained uncorrected.

### E.    Privacy Act Violations Caused Damage to Berardi

Finally, Air Force argues that the AFBCMR decision was based on injustice and not error and therefore there was no Privacy Act violation and no entitlement of damages under the facts

of this case.  However, 5 U.S.C. § 552a(g)(1)(C) is clear in its creation of a civil remedy in this

case.  The Act specifically provides a remedy for agency action that:

> fails to maintain any record concerning any individual with such
> accuracy, relevance, timeliness, and completeness as is necessary
> to assure *fairness* in any determination relating to the
> qualifications, character, rights, or *opportunities* of, or benefits to
> the individual that may be made on the basis of such record, and
> consequently a determination is made which is adverse to the
> individual; (emphasis added).

Clearly, Berardi's record was not maintained with such accuracy so as to assure *fairness*

in the disenrollment action taken against him.  Just as clear, Berardi was denied an *opportunity* to

graduate from the Academy until the AFBCMR's statutory determination that an error had

occurred.  Defendant has simply misstated Berardi's position in this regard, since the Privacy Act

has created the cause of action and Berardi is not making an entitlement claim or a request for a

retroactive promotion.  It is up to this Court to fashion an appropriate remedy and assess

damages.  As noted above, the Privacy Act violations in this case are continuing in nature and

cry out for judicial intervention.

## IV.    Conclusion

At end of day, the question that is before this Court is whether the Air Force has met its

obligations under FOIA and the Privacy Act.  An equally important question is why Berardi had

to file suit to force the Air Force to comply with the laws.  Air Force has conceded that after

twenty-seven FOIA requests and six FOIA appeals, this lawsuit was the catalyst that led to the

release of additional records in this case.  Air Force has conceded that the records release is still

incomplete, but essentially argues that it is "close enough for government work."  Air Force has

also conceded that it was aware of the errors in the record and failed to correct them after

receiving proper notice under the Privacy Act.  In fact, the AFBCMR threatened to put Berardi's

case on hold because of the Air Force failure to produce pertinent records.  As noted above,

Berardi has discovered that these violations are continuing in nature—even to the present day as seen in the highly inaccurate "Incident Report Summary" prepared one day before Berardi graduated from the Academy with honors and was commissioned as a Second Lieutenant.

The violations of FOIA and the Privacy Act by Defendant in this case have been clear and unexcused and are continuing in nature. For this reason, Berardi asks this Court to do what Air Force has refused to do: find that a monumental break down has occurred in FOIA and Privacy Act compliance at an institution that prides itself on integrity first, service before self, and excellence in all it does. Berardi respectfully requests that summary judgment be entered in his favor.

Respectfully submitted this 24th day of May, 2006.

HOLLAND & HART LLP

By: _____/s/_____

William G. Myers III, for the firm
D.C. Bar #408573

_____/s/_____

Charles R. Lucy, for the firm
Appearing *Pro Hac Vice*

HOLLAND & HART LLP
Suite 1400, U. S. Bank Plaza
101 South Capitol Boulevard
Post Office Box 2527
Boise, Idaho  83701
Telephone:   (208) 342-5000
Facsimile:    (208) 343-8869
E-mail:  wmyers@hollandhart.com

Attorneys for Plaintiff Christopher Berardi

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Karen L. Melnik
Assistant United States Attorney
555 4th Street, N.,W., Room E-4112
Washington, DC  20530
karen.melnik@usdoj.gov

____/s/ William G. Myers III____
for Holland & Hart LLP

3551390_6.DOC

BERARDI'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT - 22