**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHRISTOPHER W. BERARDI,           :
                                  :
          Plaintiff,              :
                                  :
     v.                           :    Civil Action No. 05-2269 (JR)
                                  :
U.S. DEPARTMENT OF THE AIR        :
FORCE,                            :
                                  :
          Defendant.              :

**MEMORANDUM ORDER**

          Christopher Berardi seeks declaratory and injunctive

relief against the United States Department of the Air Force

under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, the

Administrative Procedures Act, 5 U.S.C. § 701 et seq., and the

Privacy Act, 5 U.S.C. § 552a.  He also seeks money damages and

attorneys fees under FOIA and the Privacy Act.  The Air Force has

moved for dismissal and the parties have submitted cross-motions

for summary judgment.  For the reasons set forth below,

defendant's motion to dismiss [13] is **granted in part and denied

in part**: Counts 1-6 (the FOIA claims), Count 7 (the first Privacy

Act claim), and Count 9 (the APA claim) are dismissed; both

parties' motions for summary judgment on Count 8 (the second

Privacy Act claim) [13, 15] are **denied.**

1.        **Background**

          The United States Air Force Academy formally

disenrolled then cadet Christopher Berardi on June 2, 2003, at

the close of his junior year.  The Academy cited a deficient

military performance average, excessive demerits, and failed
conduct and aptitude probation as factors contributing to its
decision to disenroll. Dkt. #17-1 at 6. On June 25, 2003,
Berardi was ordered to serve two years of active duty as an
enlisted member of the United States Air Force. Dkt. #16-1 at 6.

Berardi immediately questioned the fairness of the
process utilized and the validity of the materials the Academy
had relied upon. He objected to the Academy's consideration of
assertedly inaccurate information regarding his involvement in an
underage drinking incident at a football game, to his unusually
harsh punishment for losing his identification card, and to
several other allegedly inappropriate actions taken by the
Academy in the period leading up to his disenrollment. A year
later, after receiving multiple submissions from both Berardi and
the Academy, the Air Force Board for Correction of Military
Records reviewed the disenrollment process. On June 24, 2004,
finding "too many instances of errant or poorly justified actions
in the overall disenrollment process, giving the appearance of
injustice," the Board recommended Berardi's re-enrollment. Dkt.
#13-4 at 10. In addition, the Board recommended changes in
Berardi's record indicating (1) that Berardi was not disenrolled
but instead placed in excess leave status on June 2, 2003, and
(2) that any documentation relating to his disenrollment and
other specified violations be declared void and removed from his

records.  Dkt. #13-3 at 11.  Berardi returned to class on
August 4, 2004, and, on December 21, 2005, graduated with honors,
receiving a commission.

        Berardi has filed twenty-seven FOIA requests and six
FOIA appeals seeking the release of Air Force Academy records
relevant to the disenrollment process.  Dkt. # 31-1 at 2.[1]  He
has filed numerous Privacy Act requests seeking the correction of
records allegedly relied upon by the Academy in the disenrollment
process.  Dissatisfied with the Air Force's responses, he filed
this lawsuit on November 23, 2005.

2.    **<u>Analysis</u>**

        A.    <u>Freedom of Information Act</u>

        The Air Force contends that Berardi's FOIA claims
should be dismissed as moot since, as of February 19, 2006, all
requested records have been released.  Dkt. #13-1 at 3.  Berardi
objects (1) that specific responsive documents referred to in
various Air Force communications have yet to be disclosed;
(2) that the Air Force's scattershot method of releasing
materials renders it impossible to determine what, if any, other
responsive documents have not been released; and (3) that even if
plaintiff's FOIA claims would otherwise be moot, the Air Force's

_____

        [1]  When I was in the Navy nearly fifty years ago, behavior
like that would have guaranteed me a set of orders to shore duty
in Washington – as a FOIA officer.

delayed and incomplete responses are wrongs capable of repetition yet evading review.  Dkt. #17-1, 13-18.

Standard of review:  The mootness doctrine limits the jurisdiction of federal courts to cases involving "actual, ongoing controversies."  Honig v. Doe, 484 U.S. 305, 317 (1988), National Black Police Officers Association v. District of Columbia, 108 F.3d 346, 349 (D.C. Cir. 1997).  This requirement persists throughout the various stages of litigation.  Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990).  If at any point the facts or law change such that the court's decision will not affect the rights of the litigants before it, the court must dismiss the case as moot.  DeFunis v. Odegaard, 416 U.S. 312, 316 (1974)(quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)).

On a motion to dismiss pursuant to 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction.  District of Columbia Retirement Bd. v. United States, 657 F.Supp. 428, 431 (D.D.C. 1987).  When considering a defendant's 12(b)(1) motion, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), but need not accept unsupported factual inferences or legal conclusions masquerading as facts. Rann v. Chao, 154 F.Supp.2d 61, 64 (D.D.C. 2001), aff'd 346 F.3d 192 (D.C. Cir. 2003), cert. denied, 125 S. Ct. 35 (2004).  Courts

- 4 -

considering 12(b)(1) motions may look beyond the pleadings and consider extrinsic evidence such as affidavits, undisputed facts, or the court's own resolution of disputed facts.  <u>Coalition for Underground Expansion v. Mineta</u>, 333 F.3d 193, 198 (D.C. Cir. 2003), quoting <u>Herbert v. Nat'l Academy of Sciences</u>, 974 F.2d 192, 197 (D.C. Cir. 1992).

The Air Force has submitted sworn statements that all responsive documents have now been released.  Dkt. #13-1 at 1. If that proposition is established, the case is moot and will be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).  If it is disputed, however, I must first resolve the dispute and provide an "explicit explanation of [my] findings." <u>Herbert</u>, 974 F.2d at 197.  In the Rubik's Cube world of FOIA litigation, the question of whether all responsive documents have been released begins with an inquiry as to whether the agency's FOIA searches were adequately designed to uncover responsive material.  The first step of my Rule 12(b)(1) dismissal analysis thus resembles a typical Rule 56 summary judgment analysis.

The adequacy of an agency's search under FOIA is "measured by a 'standard of reasonableness,'" <u>Weisberg v. United States Dep't of Justice</u>, 705 F.2d 1344, 1351 (D.C. Cir. 1983), which varies with the facts of each case.  <u>Id.</u>  The reasonableness inquiry focuses on "the appropriateness of the methods used to carry out the search."  <u>Iturralde v. Comptroller</u>

of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003). The
fundamental question is not "whether there might exist any other
documents possibly responsive to the request, but rather whether
the search for those documents was adequate." Steinberg v.
United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir.
1994).

        At the summary judgment stage, the agency is entitled
to prevail if it shows "beyond material doubt [] that it has
conducted a search reasonably calculated to uncover all
documents." Weisberg, 705 F.2d at 1351. To meet its burden, the
agency must proffer affidavits or declarations that shed
sufficient light on "the scope and method of the search conducted
by the agency," Perry v. Block, 684 F.2d 121, 127 (D.C. Cir.
1982). The statements must be [1] "'relatively detailed' and
[2] nonconclusory and must [3] be submitted in good faith."
Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978). Because
agency affidavits enjoy a presumption of good faith, Ground
Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981),
usually it is only the first two factors that are at issue.

        Once the agency has successfully satisfied its prima
facie obligation, the requester may rebut by presenting
countervailing evidence, including evidence of bad faith.
Meeropol v. Meese, 790 F.2d 942, 958 (D.C. Cir. 1986). However,
even in situations where the agency acknowledges that a requested

- 6 -

document still exists or once existed, "the failure to turn up this document does not alone render the search inadequate." Nation Magazine, Washington Bureau v. United States Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).

The Academy's detailed account of its FOIA searches: On October 17, 2005, Berardi submitted a FOIA request "renewing all previous FOIA requests that he had submitted to the Academy seeking all information or documentation related to his disenrollment from the Academy during his third academic year and subsequent reinstatement by the Air Force Board for the Correction of Military Records." Dkt. #13-7, Declaration of Major Paul Maraian, ¶ 3 ("Maraian Decl."). According to the Academy, in response to these requests, it released all responsive documents that had been previously withheld. Dkt. #28-1 at 10. In several affidavits, Air Force personnel provide detailed, non-conclusory accounts of the method and scope of their FOIA searches. Dkt. #13, exhibits 1, 3-5. After receiving Berardi's October 15 FOIA request, Major Maraian and Colonel Philipkosky reviewed all twenty-seven files in the Academy's FOIA office corresponding to Berardi's twenty-seven FOIA requests, searched all paper and electronic files in the IG's Office, and directed those Academy Offices most likely to possess responsive documents to conduct additional searches. Maraian Decl. ¶ 4. Previously unreleased, responsive electronic materials were discovered in the USAFA Legal Office and the Offices of the 10th

- 7 -

Security Forces Squadron.  <u>Id.</u>  The Academy now asserts that the only responsive text redacted from documents produced to Berardi is identifying information about other cadets, for which the Air Force invokes FOIA Exemption (6).[2]  Dkt. #28-1 at 5-6.

Berardi bases his challenge to the reasonableness of the Air Force's search on the Air Force's belated release of responsive material once said not to exist, its continuing failure to respond to certain FOIA requests, and its failure to release allegedly responsive documents.  Dkt. #31-1 at 3-6.  These objections do not undermine the reasonableness of the final FOIA searches.

<u>Allegations of bad faith - late disclosures</u>:  The late releases of documents once said not to exist does not suggest bad faith.  When a second search turns up new responsive documents, "[t]he discovery of additional documents is evidence that the [original] search was not thorough, [but] such discovery is not conclusive of bad faith," <u>Miller v. United States Dep't of State</u>, 799 F.3d 1378, 1386 (D.C. Cir. 1985), quoting <u>Goland v. Central</u>

---

[2]  Under FOIA Exemption 6, the government may withhold information about individuals contained in personnel and similar files when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Berardi makes a generalized request for a <u>Vaughn</u> index, but a <u>Vaughn</u> index is not required where the nature of the withheld information or documents is otherwise clearly explained, as it has been here.  Berardi has not challenged the substance of the Exemption 6 redactions.

<u>Intelligence Agency</u>, 607 F.2d 339, 367, 370 (D.C. Cir. 1979)
(internal quotation marks omitted).

     <u>Allegations of incomplete FOIA searches, not reasonably
calculated to uncover responsive materials:</u>  Berardi next claims
that, because the Air Force failed to acknowledge earlier FOIA
requests, its searches are therefore incomplete.  I find that the
Air Force's comprehensive search in response to Berardi's
October 17, 2005 FOIA request renewing his previous requests
satisfied the agency's prior response obligations.  Initial
delays have no bearing on the ultimate completeness of the
Academy's search.

     In further support of his contention that the agency
has yet to complete its FOIA search, Berardi notes a reference in
released documents to other materials – materials once stored in
a "double secret locked file" in the Office of the Staff Judge
Advocate (SJA), Dkt. #31-1 at 5 – that he thinks are responsive
but that were not released.  The Air Force states that this file
contained documents that were declared void and ordered purged
from Berardi's record when he was officially reinstated.  Dkt.
#27-1, Declaration of Sandie Q. Miles, ¶ 6, 7 ("Miles Decl.").
The documents were stored separately so as not to be
inadvertently mixed in with Berardi's official records.  <u>Id.</u>  The
Air Force does not exactly state that this file no longer exists,
or that it has been destroyed.  See Miles Decl. ¶ 6 ("Col.
McAntee did not <u>want</u> the information destroyed," emphasis added).

- 9 -

Instead, the Air Force implies that the materials in this file
have been released to Berardi by noting that (1) all Berardi
files in the SJA's office were turned over to the IG's office and
(2) all responsive files in the IG's office have now been
disclosed to Berardi.  Dkt. #28-1, 5-6.  Unless the materials in
the "double secret locked file" were lost or destroyed in one of
the two offices, Berardi must have received them.  In any event,
it is not incumbent upon the agency to account for the fate of
these materials.

          The failure to disclose documents once in an agency's
possession does not render a search incomplete, nor does it
support a claim of improper withholding.  The fact that
responsive documents once existed does not without more suggest
that the records remain in the agency's custody.  Miller v.
United States Dep't of State, 779 F.2d 1378, 1385 (D.C. Cir.
1985).  Agencies are not required to account for the whereabouts
of documents identified by the FOIA requester if a diligent
search has been conducted in the locations where such documents
might exist.  Id.  Nothing in Berardi's pleadings contradicts the
Academy's assertion that all areas likely to contain documents,
such as those in the "double secret locked file," have been
searched, or that all located documents responsive to Berardi's
FOIA requests have been released as of February 19, 2006.
Declaration of John M. Pellett, Dkt. #13-3 ("Pellett Decl.").

<u>The Academy has satisfied its FOIA obligations and
Berardi's FOIA claims are accordingly moot</u>:  The Academy has
submitted affidavits that are "relatively detailed and
nonconclusory," describing extensive searches for responsive
materials in locations where they might be expected to be found.
<u>Goland</u>, 607 F.2d at 352.  I therefore find that the Air Force's
searches in response to Berardi's October 17, 2005 FOIA request
were reasonable and that its disclosures were sufficiently
complete.  In this circuit, once an agency releases all requested
FOIA records, "the substance of the controversy disappears and
becomes moot since the disclosure which the suit seeks has
already been made."  <u>Crooker v. United States State Department</u>,
628 F.2d 9, 10 (D.C. Cir. 1980).  Indeed, "however fitful or
delayed the release of information under the FOIA may be, once
all requested records are surrendered, federal courts have no
further statutory duty to perform."  <u>Perry</u>, 684 F.2d at 125.

Berardi attempts to characterize his FOIA-related
claims, even if otherwise moot, as 'capable of repetition yet
evading review.'  Dkt. #16-1 at 13, citing <u>Payne Enterprises v.
United States</u>, 837 F.2d 486 (D.C. Cir. 1988).  The attempt fails.
To fall under the exception for wrongs capable of repetition yet
evading review, "there must be a reasonable expectation or
demonstrated probability that the same controversy will recur
involving the same complaining party."  <u>Spirit of the Sage
Council v. Norton</u>, 411 F.3d 225, 229-30 (D.C. Cir. 2005) (quoting

- 11 -

Murphy v. Hunt, 455 U.S. 478, 482 (internal quotation marks omitted). The Air Force has now released all documents it has been able to locate that are relevant to the time period of concern to Berardi, so there can be no "reasonable expectation" that the same controversy will occur between these two parties. I therefore find that the Air Force has provided the relief Berardi has sought under FOIA,[3] and that the FOIA requests are accordingly moot.

        B.   The Privacy Act Claims

        Under the Privacy Act, agencies maintaining systems of records must allow individuals to access, view, and copy their records and those records pertaining to them. 5 U.S.C. § 552a(d)(1). If an agency fails to comply with an individuals' request for records the agency possesses regarding that individual, the Privacy Act allows the requestor to bring a civil action to compel compliance. 5 U.S.C. § 552a(g)(1)(B). The Privacy Act also provides for a civil action if the agency fails to maintain adequate records and makes a consequent determination that is adverse to the individual. 5 U.S.C. § 552a(g)(1)(C).

        The first of Berardi's two Privacy Act claims – that the Air Force violated the Privacy Act when it prevented him from

---

[3]  See note 2, supra. Berardi's demand for attorney's fees will have to contend with Buckhannon Board and Home Care, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 604-05 (2001), but it has no place in a mootness determination in any event.

- 12 -

accessing records concerning his involvement in the football game
drinking incident and his subsequent disenrollment, Dkt. #1,
Claim 7 – is not mentioned by either party after the initial
pleadings and appears to have been abandoned after the release of
hundreds of pages to Berardi in February 2006.  It will be
treated as moot, or dismissed for want of prosecution.

        The second Privacy Act claim, that the Academy relied
on erroneous records in its original disenrollment decision,
Dkt. #1, Claim 8, is not so easily disposed of.  The D.C.
Circuit's Deters tests guides the analysis.  Under this test, a
plaintiff must prove that (1) he has been adversely affected by
an agency determination; (2) the agency failed to maintain
records in a manner necessary for a fair determination; (3) the
agency's reliance on the records proximately caused the adverse
determination; and (4) the agency's failure to maintain accurate
records was willful, Deters v. United States Parole Commission,
85 F.3d 655, 657 (D.C. Cir. 1996).  In the present case, the
first two elements are easily satisfied.  Disenrollment surely
qualifies as an adverse agency determination, and while the
defense claims that Berardi has not "identif[ied] any record that
was inaccurately maintained by the agency," Dkt. #13-1 at 27,
retired Superintendent John Dallager acknowledged that four
inaccurate records were in the file he reviewed before
recommending Berardi's disenrollment to the Secretary of the Air

- 13 -

Force.[4]  Dkt. #28-2 ¶ 4, Declaration of John R. Dallager.  While the parties have addressed the final two elements in their pleadings and affidavits, unresolved material facts persist regarding the agency's possible reliance on inaccurate records and allegedly willful failure to correct the records. Accordingly, summary judgment is not appropriate on the surviving Privacy Act claim.

> C.   The APA Claims

Berardi claims that he is entitled to an order declaring the Air Force to be in violation of the APA, an injunction ordering the Air Force to produce withheld records, and the award of attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. §§ 2412 et seq.

The Administrative Procedures Act permits reviewing courts "to compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  However, the plaintiff is not entitled to relief under the APA when another statute provides an adequate remedy.  See Bowen v. Massachusetts, 487 U.S. 879, 903, (1988); Women's Equity Action League v. Cavazos, 906 F.2d 742, 750 (D.C. Cir. 1990); Council of and for

---

[4]  Retired Major General Dallager identified the following four inaccurate documents included in the file he reviewed: (1) an inaccurate police report describing Berardi as drunk and belligerent at the Air Force football game, (2) a handwritten note overstating Berardi's career demerits, (3) a document containing information on another cadet's academic performance, (4) two staff summary sheets mistakenly indicating that Berardi had been on athletic probation.  Id.

the Blind of Delaware Cty. Valley, Inc. v. Regan, 709 F.2d 1521,

1531 (D.C. Cir. 1983).  Under FOIA and the Privacy Act, Berardi

may move the court (as he has done) to compel the Air Force's

response to Plaintiff's FOIA requests.  See 5 U.S.C.

§ 552(a)(4)(B) (district courts may enjoin the agency from

withholding records and order production of agency records

improperly withheld).[5]  Since Berardi does not identify any

inadequacies with the FOIA and Privacy Act remedies, he may not

pursue a separate, identical action under the APA, and his APA

claim must be dismissed.


                                   JAMES ROBERTSON
                              United States District Judge

---

[5]Note that even if the availability of FOIA and Privacy Act
remedies did not prevent Berardi from pursuing his APA claim, his
APA claim would fail for the same reason his FOIA claims fail: he
has already received the disclosures he seeks to compel, so his
claims are moot.

- 15 -